**CHRISTENSEN JAMES & MARTIN, CHTD.**
Wesley J. Smith (11871)
Kevin B. Archibald (13817)
Dylan J. Lawter (15947)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Email: wes@cjmlv.com, kba@cjmlv.com, djl@cjmlv.com
*Attorneys for Plaintiffs Board of Trustees of the Employee Painters' Trust, et al.*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE EMPLOYEE PAINTERS' TRUST; BOARD OF TRUSTEES OF THE DISTRICT COUNCIL 16 NORTHERN CALIFORNIA JOURNEYMAN AND APPRENTICE TRAINING TRUST FUND; BOARD OF TRUSTEES OF THE SOUTHERN NEVADA PAINTERS AND DECORATORS AND GLAZIERS LABOR-MANAGEMENT COOPERATION COMMITTEE TRUST; BOARD OF TRUSTEES OF THE SOUTHERN NEVADA AND CALIFORNIA GLAZIERS, FABRICATORS, PAINTERS AND FLOORCOVERERS PENSION TRUST FUND; BOARD OF TRUSTEES OF THE INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND; BOARD OF TRUSTEES OF THE PAINTERS AND ALLIED TRADES LABOR MANAGEMENT COOPERATION INITIATIVE; BOARD OF TRUSTEES OF THE FINISHING TRADES INSTITUTE; IUPAT POLITICAL ACTION TOGETHER FUND; STAR PROGRAM, INC.; SOUTHERN NEVADA PDCA/FCA INDUSTRY PROMOTION FUND, | CASE NO.: 24-cv-01023<br><br>**COMPLAINT** |
| Plaintiffs, | |
| vs. | |
| OLYMPUS CONSTRUCTION LV, INC., a Nevada corporation; HOSPITALITY RENOVATION SERVICES, LLC, a Nevada limited liability company; PHILIP GLEN FRIEDBERG, an individual; MARIE JAN BOWER, an individual; WESTERN NATIONAL MUTUAL INSURANCE | |

-1-

COMPANY, a Minnesota corporation; GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation; DOES I-X and ROES I-X,

Defendants.

The above-captioned Plaintiffs (collectively the "Plaintiffs"), by and through their attorneys, Christensen James & Martin, Chtd., hereby complain, allege, and assert as follows:

## JURISDICTION & VENUE

1. This Court has jurisdiction of this case pursuant to Section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(e)(1), which grants the United States District Courts exclusive jurisdiction over civil actions brought by a fiduciary pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2. This Court has jurisdiction of this case pursuant to Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a), which grants the United States District Courts original jurisdiction over suits for violation of contracts between an employer and labor organization in an industry affecting commerce, without respect to the amount in controversy or the citizenship of the parties.

3. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), in that this is the Judicial District in which the Plaintiffs are administered, where the breach took place, and where the employer defendants reside or may be found.

## PARTIES

5. The Employee Painters' Trust, District Council 16 Northern California

Journeyman and Apprentice Training Trust Fund, Southern Nevada Painters and Decorators and Glaziers Labor-Management Cooperation Committee Trust, Southern Nevada and California Glaziers, Fabricators, Painters and Floorcoverers Pension Trust Fund, International Painters and Allied Trades Industry Pension Fund, Painters and Allied Trades Labor-Management Cooperation Initiative, and Finishing Trades Institute (collectively "Trusts") are each express trusts and/or committees created pursuant to written declarations of trust ("Trust Agreements"), consistent with § 302(c) of the LRMA [29 U.S.C. § 186(c)].

6. The Trusts exist to provide employee benefits to participants under a "multiemployer plan," "employee benefit plan," "employee benefit pension plan," and/or "employee welfare benefit plan," as the case may be, within the meaning of ERISA, 29 U.S.C. § 1002, to which the Defendants are required to make monetary contributions pursuant to the terms of the CBAs, defined below.

7. The Board of Trustees and the individual Trustees of each of the Trusts is a "named fiduciary" within the meaning of 29 U.S.C. § 1102(a), a "plan sponsor" within the meaning of 29 U.S.C. § 1002(16), and a "fiduciary" within the meaning of 29 U.S.C. § 1002(21), with respect to collection of contributions due to the Trusts, provision of benefits to Trust beneficiaries, and related matters.

8. Star Program, Inc. is a California nonprofit mutual benefit corporation organized for the purpose of providing job training in the glazing, painting, drywall finishing and floor covering crafts, consistent with those established under 29 U.S.C. § 186(c), and to which the Defendants are required to make monetary contributions pursuant to the terms of the CBAs.

9. Southern Nevada PDCA/FCA Industry Promotion Fund and the IUPAT Political Action Together Fund are additional funds, associations, or entities to which Defendants are required to make monetary contributions pursuant to the terms of the CBAs.

10. One or more of the Plaintiffs are jointly administered in Las Vegas, Nevada.

11. Defendant Olympus Construction LV, Inc. ("OCLV") is a Nevada corporation with its current principal place of business address at 7055 Windy Street, Suite B, Las Vegas,

Nevada 89119, and doing business as a contractor in the State of Nevada under Nevada State Contractors Board License Nos. 0073721 (B General Building), 0081378 (C-4 Painting & Decorating), and 0081379 (C-3 Carpentry) ("OCLV Licenses"). OCLV previously maintained its principal place of business address at 7650 Dean Martin Dr., Suite 105, Las Vegas, Nevada 89139.

12. Defendant Hospitality Renovation Services, LLC ("HRS") is a Nevada limited liability company with its principal place of business address at 7055 Windy Street, Suite C, Las Vegas, Nevada 89119, and doing business as a contractor in the State of Nevada under Nevada State Contractors Board License Nos. 0074518 (B General Building), 0081370 (C-4 Painting & Decorating), and 0081371 (C-3 Carpentry) ("HRS Licenses"). HRS previously maintained its principal place of business address at 7650 Dean Martin Dr., Suite 104, Las Vegas, Nevada 89139.

13. When OCLV and HRS were co-located at 7650 Dean Martin Dr., they operated from adjacent suites and shared office and/or warehouse space. OCLV and HRS jointly moved their operation to 7055 Windy Street in 2022, and now continue to operate from adjacent "suites" within the same building at that address, sharing office and/or warehouse space.

14. OCLV and HRS are employers in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2), (6) and (7), 1002(5), (11) and (12).

15. Defendant Philip Glen Friedberg ("Friedberg") is an individual believed to be residing in Clark County, Nevada and according to public records is the sole owner and officer of OCLV and a former owner, manager, and/or indemnitor of HRS. Based upon information and belief, Friedberg continues to exert control over the management and operations of HRS.

16. Defendant Marie Jan Bower ("Bower") is an individual believed to be residing in Clark County, Nevada, and according to public records is the sole owner and manager of HRS.

17. Defendant Western National Mutual Insurance Company ("Western National") is a Minnesota corporation authorized to act as a surety in the State of Nevada and issued all

-4-

contractors license bonds for the OCLV Licenses and HRS Licenses through the same insurance broker and/or agent.

18.     Defendant Great American Insurance Company ("Great American") is an Ohio corporation authorized to act as a surety in the State of Nevada and issued an employee benefit surety bond to OCLV for the purpose of securing the payment of fringe benefit contributions to the Plaintiffs.

19.     OCLV and HRS, individually and jointly, are a single employer, joint employer, and/or alter-ego of each other, or otherwise acting on behalf of each other, and in doing the things herein alleged, were acting within the course and scope of said agency, partnership or relation, with the permission and consent of each of them, and that each was working as a single entity, employer and business in fact.

20.     Each of the Defendants are in some manner responsible for the acts and omissions herein alleged and the damages caused to the Plaintiffs, and are jointly and severally liable for the damages set forth herein.

21.     The true names and capacities, whether partnership, individual, corporate, company, associate or otherwise of John Does I-X, inclusive, and Roe Corporations I-X, inclusive, are unknown to the Plaintiffs at this time and are therefore sued by fictitious names. The Plaintiffs reserve the right to amend the Complaint to insert additional charging allegations, together with the true identities and capacities, when the same have been ascertained.

## GENERAL ALLEGATIONS

22.     In April 2012, OCLV, through its agent Friedberg, signed the Southern Nevada Painting, Wallcovering & Drywall Finishing Master Agreement ("Painters CBA"), Floorcoverers Local 1512 Master Agreement ("FC CBA"), and Southern Nevada Glaziers Master Agreement ("Glaziers CBA") (Painters CBA, FC CBA, and Glaziers CBA may be collectively referred to as the "Collective Bargaining Agreements" or "CBAs") with the International Union of Painters and Allied Trades District Council 16 (formerly District

Council 15) ("Union").

23. In August 2017, HRS, through its agent Bower, signed the Painters CBA with the Union.

24. By signing the CBAs and by having their employees perform Covered Work (as defined below), OCLV and HRS became bound to the terms and provisions of the CBAs, the written Trust Agreements governing the Trusts, and the written policies and procedures adopted by the Boards of Trustees ("Policies").

25. At all times material herein, the Union has been a "labor organization" representing employees in the painting, drywall finishing, floor covering, and glazing industries in Nevada and a labor organization representing employees in an industry affecting commerce within the meaning of § 301(a) of the LMRA [29 U.S.C. § 185(a)].

26. At all times material herein, the Union has been an "employee organization" existing for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, within the meaning of ERISA, 29 U.S.C. § 1002(4).

27. OCLV and HRS are "employers" as that term is understood and defined in the CBAs and Trust Agreements.

28. OCLV and HRS are "employers" as that term is used in Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

29. OCLV and HRS are "employers" engaged in "commerce" in an "industry affecting commerce," as those terms are defined and used in Sections 501(1) and 501(3) of the LMRA, 29 U.S.C. § 142(1) and (3), and within the meaning and use of Section 301(a) of the LMRA, 209 U.S.C. § 185(a).

30. The CBAs and Trust Agreements cover and apply to all painting, drywall finishing, floor covering, glazing, and related work performed by employees of OCLV and HRS ("Covered Work"), as more particularly described in each of the CBAs signed by OCLV and/or HRS, and thus Covered Work is defined by type of work performed and not titles, classifications, or union membership. All employees of OCLV and HRS are covered by the

respective CBAs if they perform the type of work described therein, regardless of affiliation or non-affiliation with any union and regardless of any title given to the employee by OCLV and/or HRS.

31. The CBAs each state that to protect and preserve all Covered Work, and to prevent any devise or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work of the type covered by the CBA, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of the CBA shall be applicable to all such work.

32. The CBAs also state that OCLV and HRS agreed to not contract, subcontract, or sublet work covered under the scope of the CBAs to anyone not signatory to the CBA covering the work to be performed.

33. Piecework, contracting or subcontracting to journeymen and apprentices is also not be permitted by the CBAs.

34. At all times material herein, OCLV and HRS have been obligated by the terms of the CBAs and the Trust Agreements to timely submit monthly written reports to the Plaintiffs at their administrative office showing all hours of Covered Work performed by their employees.

35. At all times material herein, OCLV and HRS have been obligated by the terms of the CBAs and Trust Agreements to timely and properly pay fringe benefit contributions, dues, deductions, and withholdings (collectively "contributions") to the Plaintiffs at their administrative office on a monthly basis and at specified rates for each and every hour of Covered Work performed by their employees.

36. The CBAs also state that whenever an employee performs any Covered Work and also performs other work that is not covered by the CBAs, contributions shall be paid to the

Plaintiffs for such other work.

37. As a result of the reporting and payment obligations imposed by the CBAs, the Plaintiffs are intended beneficiaries of the CBAs, and OCLV and HRS are "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145.

38. If OCLV and/or HRS fail to timely remit reports and contributions to the Plaintiffs at their administrative office, the CBAs, Trust Agreements, and Policies require OCLV and HRS to pay, in addition to the contributions due, interest and liquidated damages to the Plaintiffs at rates determined by the Boards of Trustees.

39. The CBAs, Trust Agreements, and Policies also require OCLV and HRS to reimburse the Plaintiffs for any attorney's fees and costs incurred as a result of their late payment or delinquencies.

40. HRS has not submitted any reports or contributions to the Plaintiffs since signing the Painters CBA in 2017.

41. OCLV and HRS have the obligation under the CBAs, Trust Agreements, Policies, and applicable law (ERISA, 29 U.S.C. § 1059) to keep and maintain timecards, payroll, wage, compensation, and other relevant records for work performed by their employees that will allow the Plaintiffs to efficiently evaluate whether the company reported and paid contributions accurately and to determine the benefits due, or which may become due, to such employees under the terms of the employee benefit plans offered by the Trusts.

42. If OCLV and/or HRS do not keep and maintain records adequate and sufficient to readily identify all types and hours of work performed by all of their employees, then the CBAs state that they are required to pay fringe benefit contributions as if any sums paid to their employees were wages for work covered by this Agreement. In addition, there shall be a rebuttable presumption, at the option of the Trusts, that any employee who worked in a given week for whom complete, signed, time cards or time records, were not made available for review by the Auditor, shall be deemed to have performed Covered Work for a minimum of

eight (8) hours per day, totaling forty (40) hours for that week.

43. The Trust Agreements and/or Policies further provide that a rebuttable presumption shall arise that all hours worked by any of their employees, concerning whom adequate and sufficient records are not kept or maintained, were work hours covered by the CBAs requiring contributions to the Plaintiffs.

44. The Trust Agreements and/or Policies also state that in the event that OCLV and/or HRS fail to cooperate with an audit or fail to maintain or make available for inspection their records, such that the Auditor is unable to determine the amount of covered hours worked by the employer's employees (in total and on a per-job basis), determine the amount of contributions owed to the Plaintiffs (in total and on a per-job basis), or determine the benefits due or which may become due to such employees under the terms of the employee benefit plans offered by the Trusts, the average annual contributions to the Plaintiffs for the previous three (3) years, or $100,000, whichever is greater, shall be deemed owed to the Plaintiffs as unremitted contributions for each year covered by the audit period.

45. If an audit reveals an underpayment or deficiency in reporting or payment of contributions, the CBAs, Trust Agreements, and Policies require the employer to pay to the Plaintiffs the underpaid contributions, plus accrued interest, liquidated damages, audit fees, attorney's fees, and costs.

46. Plaintiffs engaged a professional accounting firm, Berry & Co., CPAs ("Auditor"), which routinely handles employer payroll audits for the Plaintiffs, to conduct a payroll compliance review ("Audit") of OCLV's records for the period of January 1, 2019 to March 31, 2023, and an audit of HRS's records for the period of August 10, 2017 to March 31, 2023 (collectively, the "Audited Periods").

47. The Auditor compared the employee hours reported on the monthly remittance reports submitted to the Plaintiffs with OCLV's and HRS's payroll and related records to verify if all employees performing, and all hours of, Covered Work were reported to the Plaintiffs.

48. The Auditor identified hours of Covered Work that were not reported and/or contributions that were not paid to the Plaintiffs for both OCLV and HRS and calculated unpaid contributions due to the Plaintiffs in the total amount of $6,090,476.02 as a result of the hours of Covered Work performed by their employees that were not reported and/or paid to the Plaintiffs, which must be paid by the Defendants pursuant to the CBAs, Trust Agreements, Policies, 29 U.S.C. § 1132(g)(2), and governing law.

49. Based on the rates set by the Boards of Trustees and the Plaintiffs' governing documents, the Auditor also calculated interest in the total amount of $955,856.60 and liquidated damages in the total amount of $1,202,403.77 as of July 31, 2023, which must also be paid by the Defendants pursuant to the CBAs, Trust Agreements, Policies, 29 U.S.C. § 1132(g)(2), and governing law.

50. Interest and liquidated damages will continue to accrue on the unpaid contributions until the contributions are paid.

51. The Plaintiffs have incurred audit fees in the total amount of $21,447.00, which must also be paid by the Defendants pursuant to the CBAs, Trust Agreements, Policies, 29 U.S.C. § 1132(g)(2), and governing law.

52. Plaintiffs have engaged the law firm of Christensen James & Martin, Chtd. to enforce the obligations identified herein and have incurred attorneys' fees and costs in the amount of at least $7,500.00 because of Defendants' breaches and failures described herein, which must be paid by Defendants pursuant to the CBAs, Trust Agreements, Policies, 29 U.S.C. § 1132(g)(2), and governing law.

53. Plaintiffs have demanded payment of the amounts set forth above, but the contributions have not been paid.

54. OCLV and HRS are engaged in a substantially similar business performing Covered Work.

55. OCLV and HRS are owned, managed, and controlled by Friedberg and/or Bower.

-10-

56. Friedberg and/or Bower exercised control over the management, operations, and labor relations of OCLV and HRS.

57. At all times material herein, Friedberg and/or Bower were controlling stockholders, shareholders, members, managers, directors, officers, principals, agents and/or key employees of OCLV and HRS, whose duties required decision making regarding the operations of each of the entities, procurement and negotiation of contracts, hiring/firing of work force, directing labor relations, project management, keeping corporate records and company books, managing financial affairs, payment of expenses and accounts payable, tracking employee hours, preparing and processing payroll and remitting reports, contributions and payments to the Plaintiffs for each hour of Covered Work performed.

58. OCLV and HRS have shared facilities, equipment, supplies, business contacts, personnel, administration, labor, and other tangible and intangible assets.

59. OCLV and HRS have shared projects, contracts, and Covered Work between and amongst each other.

60. OCLV and HRS have subcontracted Covered Work to each other.

61. OCLV and HRS have shared management and supervisory employees who direct and control employees performing Covered Work for both OCLV and HRS.

62. OCLV and HRS have shared employees performing Covered Work for both OCLV and HRS.

63. OCLV and HRS have had common ownership, common management, interrelation of operations, and centralized control of labor relations.

64. OCLV and HRS are alter-egos of each other, such that they are a single entity, employer, and business in fact.

65. OCLV, HRS, Friedberg, and Bower have used HRS in a sham effort to avoid the obligations of the CBAs.

66. As a result of the breaches and delinquencies described herein, OCLV and HRS are currently jointly and severally indebted to the Plaintiffs pursuant to the express terms of the

CBAs, Trust Agreements, Policies, and ERISA (29 U.S.C. § 1132(g)(2)) in the amount of at least $8,277,683.39, plus such other additional interest, liquidated damages, audit fees, attorney's fees, and costs that may accrue or be incurred until all contributions are paid in full.

67. Plaintiffs are entitled to and seek the Court's Order for these outstanding amounts owed in addition to any additional amounts that may accrue, including additional unpaid contributions, whether reported or discovered by audit, while this case is pending.

68. Plaintiffs have not yet conducted a payroll compliance review of OCLV's or HRS's records for the period of April 1, 2023 through the present date ("Unaudited Period").

69. Based on the Auditor's findings for the Audit Period, the Plaintiffs have reason to believe additional amounts are owed for the Unaudited Period, in an amount to be determined by further audit.

70. Plaintiffs are entitled to and seek the Court's Order requiring OCLV and HRS to submit their records for an audit of the Unaudited Period and for payment of any and all amounts determined to be owed to the Plaintiffs as a result of the audit.

71. Plaintiffs are entitled to and seek the Court's Judgment requiring OCLV and HRS to pay all future contributions that become owed as a result of their obligations under the CBAs and Trust Agreements along with any interest, liquidated damages, audit fees, attorneys' fees, court costs and other contract damages that are subsequently determined to be owed prior to judgment.

72. As a condition of maintaining its contractors licenses, OCLV and HRS sought and obtained license surety bonds for the purpose of securing payment for, among other things, claims for labor such as unpaid fringe benefit contributions, as set forth in NRS 624.273, including but not limited to the following bonds (collectively the "License Bonds"):

    a. Western National issued NSCB License Bond No. 20929 to OCLV in the amount of $50,000.00, effective August 13, 2014;

    b. Western National issued NSCB License Bond No. 31635 to OCLV in the amount of $30,000.00, effective June 30, 2016;

    c.   Western National issued NSCB License Bond No. 31634 to OCLV in the amount of $30,000.00, effective June 28, 2016;

    d.   Western National issued NSCB License Bond No. 31639 to HRS in the amount of $50,000.00, effective June 30, 2016;

    e.   Western National issued NSCB License Bond No. 31638 to HRS in the amount of $30,000.00, effective June 30, 2016;

    f.   Western National issued NSCB License Bond No. 31636 to HRS in the amount of $30,000.00, effective June 30, 2016; and

    g.   Such other bonds that may be later identified.

73. At the request of OCLV, and in accordance with the bonding provisions of the CBAs, Defendant Great American issued Employer Surety Bond No. 5086330 ("Benefit Bond") in the amount of $30,000.00 with OCLV as principal, for the purpose of paying unpaid fringe benefits owed by OCLV to the Plaintiffs under the CBAs.

74. By agreeing to the terms and conditions of the CBAs, Friedberg and Bower (collectively "Principals") agreed to the express terms of the Trust Agreement for the Employee Painters' Trust ("EPT"), under which persons occupying positions akin to those of corporate officers, like the Principals, are personally liable for contributions and related damages owed to EPT, as follows:

> In recognition that individuals have responsibilities in a corporation which is a participating Employer in a Trust, and that contributions are for the welfare of covered employees, the responsible individuals in a corporation which is a participating Employer shall be individually liable for payment of contributions and other charges owing under this Article VIII. Therefore, in the event any corporate Participating Employer which is obligated to make contributions to the Trust fails to make such contributions, the President, the Treasurer, and any other corporate officer who is responsible for payment of contributions by the corporation to the Trust fund shall be each individually liable for the payment of contributions and any other amount due under this Article VIII, and under applicable Federal law, 29 U.S.C. Section 1132(g).

75. Whereas Principals are the primary owners, stockholders, shareholders, directors, officers, members, managers, governing persons, principals and/or key employees of

-13-

OCLV and HRS, they are responsible for payment of contributions and related damages owed to EPT.

76. Each of the Defendants are in some manner responsible for the actions, acts and omissions herein alleged and the damages caused to the Plaintiffs, and are therefore jointly and severally liable for the damages set forth herein.

## FIRST CAUSE OF ACTION

[Breach of Contract – OCLV and HRS]

77. The Plaintiffs herein restate and reallege the above allegations.

78. Under the Preservation of Work Clause of the CBAs, the terms of the CBAs are applicable to all work performed by employees of OCLV and HRS because each entity is managed, controlled and owned by the officers, directors, managers, partners, owners, stockholders, and/or shareholders of OCLV and/or HRS and the work performed by the employees is the kind of work described in the CBAs.

79. At all times material herein, OCLV and HRS were and are the alter egos and or guarantors of each other and are jointly and severally liable to the Plaintiffs for any and all obligations owed under the CBAs.

80. At all times material herein, OCLV and HRS, individually and jointly, were the owner, agent, partner, representative, employee and/or alter-ego of each other, and in doing the things herein alleged, were acting within the course and scope of said agency, partnership or relation, with the permission and consent of all the Defendants, and that each was working as a single entity, employer and business in fact.

81. The terms of the CBAs are applicable to all employees of OCLV and HRS performing Covered Work because they are alter-egos of each other, such that they are a single entity, employer and business in fact.

82. By the terms of the CBAs, Trust Agreements, and Policies, OCLV and HRS were required to timely and accurately remit reports and contributions to the Plaintiffs for each hour of work performed by their employees.

83. Pursuant to the CBAs, Trust Agreements, and Policies, OCLV and HRS agreed that in the event of late or non-payment of contributions, they would pay, in addition to the delinquent contributions: (i) interest thereon at the rates established by the Plaintiffs, or at the legal rate, whichever is greater; (ii) liquidated damages thereon in an amount set by the CBAs, Trust Agreements or as otherwise provided by law; and (iii) all audit fees, legal fees and costs in connection with enforcement of the CBAs, Trust Agreements, and Policies, whether incurred before or after litigation is commenced.

84. OCLV and HRS breached the CBAs, Trust Agreements, and Policies by failing to comply with the terms and conditions described herein, including but not limited to failure to timely and accurately report Covered Work and submit contributions and related damages when due.

85. It has been necessary for the Plaintiffs to engage the law firm of Christensen James & Martin, Chtd. to enforce the contractual obligations owed to the Plaintiffs and collect any and all amounts due.

86. Pursuant to the CBAs, Trust Agreements, and Policies, OCLV and HRS owe the Plaintiffs contributions calculated or measured by all hours of Covered Work performed by their employees, plus interest at the contractual rate on all unpaid contributions from the dates the sums were originally due through the date of judgment, liquidated damages, and reasonable attorney's fees, collection costs, and auditing costs incurred by the Plaintiffs as a result of the breaches described herein.

87. Pursuant to the terms of the CBAs, Trust Agreements, and Policies, the Plaintiffs are entitled to an Order compelling OCLV and HRS to abide by the terms of the CBAs, Trust Agreements, and Policies, including, but not limited to, timely delivering to the Plaintiffs monthly remittance reports accurately detailing all Covered Work performed and timely and fully paying accurate monthly contribution remittance reports and contribution amounts to the Plaintiffs, as they become due.

88. Pursuant to the terms of the CBAs, Trust Agreements, and Policies, the

Plaintiffs are entitled to an Order requiring OCLV and HRS to submit their records for a payroll compliance review of the Unaudited Period and for payment of any amounts determined to be due.

89. Pursuant to the terms of the CBAs, Trust Agreements, and Policies, the Plaintiffs are entitled to an Order requiring OCLV and HRS to reimburse the Plaintiffs for attorney's fees and costs incurred to enforce compliance with the CBAs, Trust Agreements, and Policies.

90. Upon entry of judgment, the Plaintiffs are entitled to post-judgment interest at the rates set forth in their Trust Agreements and Policies or as may be allowed by law, whichever is higher. The amount of such interest will be established by proof at trial.

## SECOND CAUSE OF ACTION

[Violation of ERISA – 29 U.S.C. § 1145 – OCLV and HRS]

91. The Plaintiffs herein restate and reallege the above allegations.

92. By failing to timely and accurately report and/or pay contributions and contract damages to the Plaintiffs in accordance with the CBAs, Trust Agreements, and Policies, OCLV and HRS have violated Section 515 of ERISA [29 U.S.C. § 1145]. In accordance with the terms of those agreements, and pursuant to Sections 502(g)(2) and 515 of ERISA [29 U.S.C. §§ 1132(g)(2) and 1145], the Plaintiffs are entitled to payment of all contributions determined to be due, as well as liquidated damages, interest, audit fees, attorneys' fees, and costs incurred in enforcing the terms of the CBAs, Trust Agreements, Policies, and such other legal and equitable relief as the Court deems appropriate.

93. Under 29 U.S.C. § 1132(g)(2)(C), in addition to the interest owed under 29 U.S.C. § 1132(g)(2)(B), the Plaintiffs are entitled to an amount equal to the interest or liquidated damages calculated according to the terms of the governing agreements, whichever is greater.

94. Pursuant to 29 U.S.C. § 1132(g)(2)(E), the Trusts are entitled to such other equitable relief as the Court deems appropriate.

95. The contract breaches and violations of ERISA identified above harm the Plaintiffs and place at risk the Plaintiffs' ability to provide required employee benefits to their beneficiaries.

96. The Plaintiffs' remedies at law are not sufficient to adequately compensate the Plaintiffs or their beneficiaries for past harm caused by said violations, or to protect them from the harm or threat of harm caused by similar future violations.

97. The Plaintiffs are likely to prevail on the merits of their claims.

98. The Plaintiffs are entitled to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and 1132(g)(2)(E) and other applicable law affirmatively compelling OCLV and HRS to timely submit all monthly remittance reports, pay all contribution amounts and related damages to the Plaintiffs, and submit to an audit of the Unaudited Period in compliance with its obligations under the CBAs, Trust Agreements, and Policies.

99. The Plaintiffs are entitled to all remedies provided by ERISA as and for compensation for the Defendants' violations.

### THIRD CAUSE OF ACTION

[Breach of Written Trust Agreements – Friedberg and Bower]

100. The Plaintiffs herein restate and reallege the above allegations.

101. The CBAs incorporate the terms of the EPT Trust Agreement.

102. The Trust Agreement for EPT contains an express provision imposing personal liability for unpaid contributions and related damages on the President, Treasurer, or other corporate officer of the employer responsible for payment of contributions.

103. OCLV and HRS owe contributions, interest, liquidated damages, audit fees, attorney's fees and costs to EPT for their violations of the CBAs and EPT Trust Agreement.

104. At all times material herein, Defendants Friedberg and Bower, as owners and officers of OCLV and HRS, were responsible for making payment of contributions to the Plaintiffs, and acted as OCLV and HRS' agents by causing them to become bound to the CBAs and Trust Agreements, which made Friedberg and Bower personally and individually liable to

EPT pursuant to the express terms of the EPT Trust Agreement for the contributions and related damages owed to EPT by OCLV and HRS.

105. EPT is entitled to judgment against Defendants Friedberg and Bower for all contributions, interest, liquidated damages, audit fees, attorney's fees and costs owed by OCLV and HRS to EPT pursuant to the terms of the CBAs and EPT Trust Agreement.

## FOURTH CAUSE OF ACTION

[Demand for Relief on the License Bonds Pursuant to NRS 624.273 – Western National]

106. The Plaintiffs herein restate and reallege the above allegations.

107. Defendant Western National issued the License Bonds as described herein as a condition for OCLV and HRS to obtain and maintain their Contractor's Licenses.

108. The Plaintiffs are intended third-party beneficiaries under the License Bonds.

109. The delinquencies asserted herein owed by OCLV and HRS are properly payable out of the proceeds of the License Bonds.

110. The proceeds of the License Bonds must be paid to the Plaintiffs in full or partial satisfaction, as the case may be, of OCLV and HRS' obligations owed to the Plaintiffs or as damages caused by OCLV and HRS' failure to properly act in accordance with the CBAs, Trust Agreements, Policies and/or the law, subject only to any penal limit on the License Bonds.

## FIFTH CAUSE OF ACTION

[Demand for Relief on Benefit Bond – Great American]

111. The Plaintiffs herein restate and reallege the above allegations.

112. Great American issued the Benefit Bond for the purpose of paying unpaid fringe benefits owed by OCLV's to the Plaintiffs under the CBAs.

113. The Plaintiffs are intended third-party beneficiaries under the Benefit Bond.

114. The delinquencies asserted herein owed by OCLV to the Plaintiffs are properly payable out of the proceeds of the Benefit Bond pursuant to the express terms of any Bond Agreement.

115. The proceeds of the Benefit Bond must be paid to the Plaintiffs in full or partial satisfaction, as the case may be, of OCLV's obligations owed to the Plaintiffs or as damages caused by OCLV's failure to properly act in accordance with the CBAs, Trust Agreements, Policies and/or the law, subject only to any penal limit on the Benefit Bond.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray for Judgment, as follows:

1. For the Court's Order compelling OCLV and HRS to submit all information and documents necessary to permit the Plaintiffs' auditors to perform a payroll compliance audit of the Unaudited Period;

2. For the Court's Order enjoining OCLV and HRS from failing to timely and accurately pay to the Plaintiffs delinquent amounts, including those amounts discovered by audit or as otherwise incurred in the normal course of business;

3. For the Court's Order compelling OCLV and HRS to deliver to the Plaintiffs monthly remittance reports on a timely basis accurately detailing all Covered Work performed;

4. For the Court's Order affirmatively compelling OCLV and HRS to abide by the terms of the CBAs and the Trust Agreements, including, but not limited to, timely submitting and paying accurate monthly contribution remittance reports and contribution amounts to the Plaintiffs;

5. For the Court's Order enjoining OCLV and HRS from failing to timely and accurately pay the Plaintiffs future contribution amounts, as they become due;

6. For unpaid fringe benefit contributions in amounts to be proven at trial;

7. For damages for breach of contract and violation of ERISA in an amount to be proven at trial;

8. For accrued interest on all unpaid contributions and damages from their due dates until paid, in an amount to be proven at trial;

9. For an amount equal to the greater of the interest owed on the unpaid contributions or liquidated damages, in amounts to be proven at trial;

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

10. For Plaintiffs' reasonable attorney's fees, in an amount to be proven at trial;

11. For any reasonable audit fees incurred by Plaintiffs, in an amount to be proven at trial;

12. For the Plaintiffs' costs of suit;

13. For relief against the License Bonds and Benefit Bond;

14. For such additional relief as may be provided for by 29 U.S.C. § 1132; and

15. For such additional relief as this Court may deem just and proper.

Dated this 31st day of May 2024.

CHRISTENSEN JAMES & MARTIN, CHTD.

By: */s/ Wesley J. Smith*
Wesley J. Smith, Esq.
Nevada Bar No. 11871
Email: wes@cjmlv.com
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Ph: (702) 255-1718
*Attorneys for Plaintiffs Board of Trustees of the Employee Painters' Trust, et al.*

-20-