**CHRISTENSEN JAMES & MARTIN, CHTD.**
Daryl E. Martin (6735)
Wesley J. Smith (11871)
Dylan J. Lawter (15947)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Email: dem@cjmlv.com, wes@cjmlv.com, djl@cjmlv.com
*Attorneys for Plaintiffs Board of Trustees of the*
*Employee Painters' Trust, et al.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

BOARD OF TRUSTEES OF THE
EMPLOYEE PAINTERS' TRUST; BOARD
OF TRUSTEES OF THE DISTRICT
COUNCIL 16 NORTHERN CALIFORNIA
JOURNEYMAN AND APPRENTICE
TRAINING TRUST FUND; BOARD OF
TRUSTEES OF THE SOUTHERN NEVADA
PAINTERS AND DECORATORS AND
GLAZIERS LABOR-MANAGEMENT
COOPERATION COMMITTEE TRUST;
BOARD OF TRUSTEES OF THE
SOUTHERN NEVADA AND CALIFORNIA
GLAZIERS, FABRICATORS, PAINTERS
AND FLOORCOVERERS PENSION TRUST
FUND; BOARD OF TRUSTEES OF THE
INTERNATIONAL PAINTERS AND
ALLIED TRADES INDUSTRY PENSION
FUND; BOARD OF TRUSTEES OF THE
PAINTERS AND ALLIED TRADES LABOR
MANAGEMENT COOPERATION
INITIATIVE; BOARD OF TRUSTEES OF
THE FINISHING TRADES INSTITUTE;
IUPAT POLITICAL ACTION TOGETHER
FUND; STAR PROGRAM, INC.; SOUTHERN
NEVADA PDCA/FCA INDUSTRY
PROMOTION FUND,

                    Plaintiffs,

vs.

OLYMPUS CONSTRUCTION LV, INC., a
Nevada corporation; HOSPITALITY
RENOVATION SERVICES, LLC, a Nevada
limited liability company; PHILIP GLEN
FRIEDBERG, an individual; MARIE JAN
BOWER, an individual; WESTERN

CASE NO.: 2:24-cv-01023-APG-NJK

**MOTION TO DISMISS
COUNTERCLAIMS**

ORAL ARGUMENT REQUESTED
(Junior Attorney)

*sidebar:* CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

-1-

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

NATIONAL MUTUAL INSURANCE
COMPANY, a Minnesota corporation; GREAT
AMERICAN INSURANCE COMPANY, an
Ohio corporation; DOES I-X and ROES I-X,

Defendants.

OLYMPUS CONSTRUCTION LV, INC.;
HOSPITALITY RENOVATION SERVICES,
LLC; PHILIP GLEN FRIEDBERG; MARIE
JAN BOWER,

Counterclaimants,

vs.

BOARD OF TRUSTEES OF THE
EMPLOYEE PAINTERS' TRUST; BOARD
OF TRUSTEES OF THE DISTRICT
COUNCIL 16 NORTHERN CALIFORNIA
JOURNEYMAN AND APPRENTICE
TRAINING TRUST FUND; BOARD OF
TRUSTEES OF THE SOUTHERN NEVADA
PAINTERS AND DECORATORS AND
GLAZIERS LABOR-MANAGEMENT
COOPERATION COMMITTEE TRUST;
BOARD OF TRUSTEES OF THE
SOUTHERN NEVADA AND CALIFORNIA
GLAZIERS, FABRICATORS, PAINTERS
AND FLOORCOVERERS PENSION TRUST
FUND; BOARD OF TRUSTEES OF THE
INTERNATIONAL PAINTERS AND
ALLIED TRADES INDUSTRY PENSION
FUND; BOARD OF TRUSTEES OF THE
PAINTERS AND ALLIED TRADES LABOR
MANAGEMENT COOPERATION
INITIATIVE; BOARD OF TRUSTEES OF
THE FINISHING TRADES INSTITUTE;
IUPAT POLITICAL ACTION TOGETHER
FUND; STAR PROGRAM, INC.; SOUTHERN
NEVADA PDCA/FCA INDUSTRY
PROMOTION FUND,

Counterdefendants.

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

The Trustees of the Employee Painters' Trust, *et al.* (collectively, the "Trust Funds," "Plaintiffs" or "Counterclaim-Defendants"), acting by and through their attorneys, Christensen James & Martin, Chtd., pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submit this Motion to Dismiss the Counterclaims filed by Olympus Construction LV, Inc. ("OCLV"), Philip Glen Friedberg ("Friedberg"), Hospitality Renovation Services, LLC ("HRS"), and Marie Jan Bower ("Bower") (Olympus, Friedberg, HRS, and Bower are collectively referred to herein as "Defendants" or "Counterclaimants"). This Motion is made and based on the pleadings and papers on file, the following Memorandum of Points and Authorities, the exhibits attached hereto, and any oral argument heard by the Court.

Dated this 24th day of September, 2024.

CHRISTENSEN JAMES & MARTIN

By: _/s/ Dylan J. Lawter_
Dylan J. Lawter, Esq.
Nevada Bar No. 15947
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Ph: (702) 255-1718
Email: djl@cjmlv.com
*Attorneys for the Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Trust Funds filed this action under the Employee Retirement Income Security Act ("ERISA") to recover unpaid fringe benefit contributions owed pursuant to various written labor agreements. The Trust Funds allege that OCLV and HRS failed to pay contributions owed in connection with hours of painting work performed by their employees, in violation of the terms of the Southern Nevada Painting, Wallcovering & Drywall Finishing Master Agreement (the "Painters CBA").[1] OCLV signed the Painters CBA in 2012 and HRS signed it

---

[1] A copy of the same agreement covering an earlier period of time was entitled "Painters & Decorators Master Labor Agreement."

in 2017. *See* OCLV Answer [ECF No. 11] at ¶ 10 and HRS Answer [ECF No. 13] at ¶ 11 admitting the allegations of ¶ 22 of the Complaint [ECF No. 1]. Because OCLV and HRS both signed the Painters CBA, the Trust Funds do not intend to use the alter ego doctrine to show that they are bound by the terms of the Painters CBA.

The Trust Funds also allege that HRS has failed to pay contributions owed for floorcovering work under the terms of Floorcoverers Local 1512 Master Agreement ("FC CBA"). OCLV signed the FC CBA in 2012. *See* OCLV Answer [ECF No. 11] at ¶ 10 admitting the allegations of ¶ 22 of the Complaint [ECF No. 1]. The Trust Funds have not alleged that HRS signed the FC CBA. Rather, the Trust Funds allege that OCLV and HRS are liable for unpaid contributions on floorcovering work under the anti-subcontracting provisions of the FC CBA (as OCLV's subcontractor) and/or as alter egos. The Trust Funds also allege that Friedberg and Bower, as officers of OCLV and HRS, are liable for certain of the debts of their companies under the terms of trust agreements incorporated by reference in the Painters CBA and the FC CBA.

In responding to the Complaint, the Defendants filed Answers with Counterclaims that are contrary to entire lines of federal case law under several statutes regarding alter egos, including but not limited to ERISA and the Labor Management Relations Act ("LMRA"). In paragraph 11 of all four Defendants' Counterclaims, they make their purpose explicit—to rid federal law of the joint-employer theory of liability. *See* ECF Nos. 11 and 13 at 13:15–19.[2] All of the Counterclaims hinge on (*i.e.*, expressly reference) the first—the alleged breach of a 2017 Settlement Agreement entered into between certain Trust Funds and the Defendants ("2017 Trust SA"). But as shown herein, the first Counterclaim is contrary to (*i.e.*, preempted by) federal law and cannot be relied upon to accomplish the Defendants' goals. The Defendants claim that a provision of the 2017 Trust SA effectively waived the Trust Funds' right to assert

---

[2] The Counterclaims of OCLV and Friedberg in ECF No. 11 and those of HRS and Bower in ECF No. 13 are identical.

future claims which had not even arisen at the time the 2017 Trust SA was signed. Because various legal authorities prohibit this, the Defendants' Counterclaims must be dismissed.

## II.

## STATEMENT OF FACTS

**A.    The Trust Funds asserted claims against the Defendants.**

The Trust Funds are Taft-Hartley multiemployer employee benefit trust funds whose affairs are governed by ERISA. Complaint ¶¶ 5-7.[3] The Trust Funds' Complaint alleges that OCLV is signatory to three labor agreements requiring contributions to the Plaintiffs: the Painters CBA, the FC CBA, and the Southern Nevada Glaziers Master Agreement ("Glaziers CBA"). *Id.* at ¶ 22. The Complaint further alleges that HRS is signatory to the Painters CBA. *Id.* at ¶ 23. These facts were admitted by the Defendants in their Answers, and alleged as facts in their Counterclaims. *See* ECF Nos. 11 and 13 at Answer ¶¶ 10-11, Counterclaim ¶¶ 3, 5.

The Complaint alleges that under the terms of the CBAs, OCLV and HRS had certain reporting and payment obligations to the Plaintiffs for work covered ("Covered Work") by those CBAs. Complaint at ¶¶ 30-39. It further alleges that despite signing the Painters CBA, HRS has never submitted a report or a contribution payment to the Trust Funds. *Id.* at ¶ 40.

The Trust Funds engaged an auditor to conduct a payroll compliance review ("Audit") of OCLV's records for the period of January 1, 2019 to March 31, 2023, and an audit of HRS's records for the period of August 10, 2017 to March 31, 2023 (collectively, the "Audited Periods"). *Id.* at ¶ 46. The Auditor compared the employee hours reported on the monthly remittance reports submitted to the Plaintiffs with OCLV's and HRS's payroll and related records to verify if all employees performing, and all hours of, Covered Work were reported to the Plaintiffs. *Id.* at ¶ 47. The Auditor identified hours of Covered Work that were not reported

---

[3] The facts asserted in the Complaint, as well as the facts asserted in the Counterclaims, must be taken as true for purposes of this Motion, because it is undisputed that but for the allegations made in the Complaint (particularly with regard to alter ego), the Counterclaims would not have been asserted.

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

and/or contributions that were not paid to the Plaintiffs by both OCLV and HRS, and calculated unpaid contributions due to the Plaintiffs in the total amount of $6,090,476.02. *Id.* at ¶ 48. The Trust Funds alleged that OCLV and HRS must pay contributions to the Trust Funds for the unpaid Covered Work found by the Auditor under the terms of the CBAs, Trust Agreements, and ERISA. *Id.* Thus, the Trust Funds' claims are limited to events and occurrences that happened during the Audited Periods or later, and do not pertain to prior time periods.

Following these straightforward ERISA allegations, the Trust Funds further alleged that OCLV and HRS are engaged in a substantially similar business performing Covered Work; are owned, managed, and controlled by Friedberg and/or Bower; have shared facilities, equipment, supplies, business contacts, personnel, administration, labor, and other tangible and intangible assets; have shared projects, contracts, and Covered Work between and amongst each other; have subcontracted Covered Work to each other; have shared management and supervisory employees who direct and control employees performing Covered Work for both OCLV and HRS; have shared employees performing Covered Work for both OCLV and HRS; have had common ownership, common management, interrelation of operations, and centralized control of labor relations; are alter-egos of each other, such that they are a single entity, employer, and business in fact; and have used HRS in a sham effort to avoid the obligations of the CBAs. *Id.* at ¶¶ 54-65. Based on these facts, the Trust Funds alleged that OCLV and HRS are jointly and severally indebted to the Plaintiffs pursuant to the express terms of the CBAs, Trust Agreements, Policies, and ERISA (29 U.S.C. § 1132(g)(2)). The Complaint asserts three causes of action relevant to this Motion: (1) Breach of Contract (against OCLV and HRS), (2) Violation of ERISA – 29 U.S.C. § 1145 (against OCLV and HRS), and (3) Breach of written trust agreements (against Friedberg and Bower). *Id.* at 14-18. Again, these allegations are based on facts occurring during the Audited Periods.

**B.    The Defendants asserted Counterclaims against the Trust Funds.**

In addition to filing answers, the Counterclaimants have asserted four Counterclaims, the first three against certain Trust Funds and a fourth against all of the Trust Funds: (1) Breach

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

of Contract, (2) Breach of the Duty of Good Faith and Fair Dealing, (3) Civil Conspiracy, and (4) Abuse of Process. These Counterclaims are based on two settlement agreements entered by OCLV and HRS in 2017, the first (the "2017 Union SA") resolved a grievance asserted by the International Union of Painters and Allied Trades District Council 16, Local Union 159 (formerly District Council 15) (the "Union") (*see* ECF Nos. 11 and 13 at Counterclaim ¶¶ 16-24), and the second ("2017 Trust SA") resolved audit and contribution claims asserted by certain of the Trust Funds (*see* ECF Nos. 11 and 13 at Counterclaim ¶¶ 25-27).

Because the Painters CBA, FC CBA, 2017 Union SA, and 2017 Trust SA are expressly referenced in the Complaint and Counterclaims, it is proper for the Court to consider these documents in connection with this Motion to Dismiss.[4] This is critical because the allegations of the Counterclaims are not consistent with the clear and express language of the documents they refer to and upon which they rely.

In the 2017 Union SA, HRS agreed to, *inter alia*, sign the Painters CBA. *See* Exhibit A at 2, ¶ 8; *see also* ECF Nos. 11 and 13 at 14-16, ¶¶ 16, 20-24. Prior to entering into the 2017 Union SA, the Union filed a grievance alleging that HRS and OCLV were related companies. *See* Exhibit A at ¶ 3. The Defendants and the Union demonstrated their "desire to reach a resolution of the Grievance," and therefore signed the 2017 Union SA. *Id.* at ¶ 6. The 2017 Union SA does not state that the Trust Funds released any claims. *See generally id.*

The 2017 Trust SA was entered into by the Defendants and certain of the Trust Funds.[5] *See* Exhibit B; *see also* ECF Nos. 11 and 13 at 17, ¶ 27. The Defendants and the Trust Funds

---

[4] *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) explaining that "…incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken — or doom — their claims. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006) (observing 'the policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based')."
[5] Viewing the Complaint and 2017 Trust SA on their face, it is clear that the names of the Counterclaim-Defendants in this case and the names of the parties to the 2017 Trust SA are not

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

demonstrated their "desire to reach a resolution related to the Audit," based upon the allegation that HRS was a "'possible closely related company' to [OCLV]." Exhibit B at ¶¶ 6 and 4, respectively. The 2017 Trust SA clearly states that the Trust Funds "release[d] and forever discharge[d]" the Defendants "of and from all claims…arising out of, or relating in any way to, the facts alleged in the Audit." *Id.* at ¶ 11. The Audit Period was defined in the 2017 Trust SA as a records review limited to the period January 1, 2016 through June 30, 2016. *Id.* at ¶ 4.

The 2017 <u>Union</u> SA was referenced in the 2017 Trust SA to show that HRS had made a promise to the Union to sign the Painters CBA (referred to in the 2017 Trust SA as the "MLA" or "Master Agreement"). *Id.* at ¶ 7. The Painters CBA incorporates promises to pay fringe benefit contributions to the Trust Funds (as third-party beneficiaries) for each hour of work it describes. *See* Exhibit C at Article 13, pages 19–20. Paragraph 14 of the 2017 <u>Trust</u> SA states: "This Agreement is not intended to be a modification of the MLA, Master Agreement or any Trust Agreement, and *the parties expressly acknowledge that the terms of the MLA, Master Agreement or any Trust Agreement shall be controlling in the event of any conflict with this Agreement*." Exhibit B at 3-4, ¶ 14 (emphasis added). There is no dispute that the Painters CBA continued in force after the 2017 Trust SA was signed.

The Painters CBA is referred to in the Trusts' Complaint and the Defendants' Counterclaims, and is attached hereto as Exhibit C. *See* ECF No. 1 at ¶¶ 22-23 and ECF Nos. 11 and 13 at 12, ¶¶ 3, 5. The FC CBA is also referred to in the Trusts' Complaint and the Defendants' Counterclaims, and is attached hereto as Exhibit D. *See* ECF No. 1 at ¶ 22 and ECF Nos. 11 and 13 at 12, ¶ 3. Article 15 of the Painters CBA and Article 25 of the FC CBA contain clauses governing the "Preservation of Work" which was not altered by the 2017 Trust SA, and which makes the Painters CBA and FC CBA applicable to all Covered Work

identical. While some of the differences are due to name changes of the Trust Funds, the Southern Nevada Painters and Decorators and Glaziers Labor-Management Cooperation Committee Trust ("LMCC") was not a party to the 2017 Trust SA. The Counterclaims against the LMCC must therefore be dismissed.

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

-8-

performed by the employees of all companies under the same ownership or control as the signatory employer:

> To protect and preserve, for the employees covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work of the type covered by this agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, owners or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

Exhibit C, Art. 15, pages 21–22; Exhibit D, Art. 25(4), page 24.[6]

The Defendants' Counterclaims are premised on their mistaken belief that the language from Paragraph 12 of the 2017 Trust SA prohibits the Trusts from ever asserting that HRS and OCLV are related companies. *See* ECF Nos. 11 and 13 at 17, ¶ 27. Even if the Defendants' reading of that provision were reasonable (which the Trusts deny), it would still have to yield in the face of any contrary language found in the Painters CBA. Exhibit B at 3-4, ¶ 14.

Each of the Counterclaims challenged by this Motion depends on the demonstrably false notion that by entering into the 2017 Trust SA, the Trust Funds released not only the claims they possessed at the time, but also all future claims against OCLV and HRS that might arise after the effective date of the 2017 Trust SA, including claims arising under the FC CBA that is not mentioned in, or the subject of, the 2017 Trust SA. For example, paragraph 6 of the 2017 Trust SA expressly states the parties' mutual intention: "[T]he parties desire by this Agreement to fully, completely, and finally resolve their disputes, claims and disagreements arising from or **relating to the Audit**" which was focused exclusively on hours of painting work under the Painters CBA. Exhibit B at 1 (emphasis added).

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

---

[6] The only variation between this clause in the Painters CBA and the FC CBA is the capitalization of the word "Agreement." Otherwise, they are identical provisions.

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

According to the Counterclaimants, the 2017 Trust SA flatly prohibits the Trust Funds from ever making claims against HRS and OCLV based on their alleged alter ego status as a joint/single employer. In support of this position, they use cherry-picked language from the 2017 Trust SA in their Counterclaims in the hopes that the remainder of the agreement will be ignored. This is improper. *See supra* Footnote 4. Other parts of the 2017 Trust SA are highly relevant, including various sections which prove that the Counterclaimants are misreading it. For example, paragraph 7 of the agreement states, "The parties further agree that the terms and conditions of this Agreement, or performance of the same, *are **not** to be construed as the admission by the Trusts of a lack of a joint or single employer relationship between Employer and HRS.*" Exhibit B at 2 (emphasis added).

Paragraph 11 of the 2017 Trust SA contains all of the provisions related to the Trust Funds' *release of claims*. *See id.* at 3. Nothing in Paragraph 11 indicates the Trust Funds released claims that OCLV and HRS are joint/single employers or alter egos of one another. *See id.* The language upon which the Counterclaimants rely to support their Counterclaims is found in Paragraph 12, which is a *reservation of rights* clause. *Compare id. with* ECF Nos. 11 and 13 at 17, ¶ 27 (quoting partially from Paragraph 12 of the 2017 Trust SA). In other words, the Counterclaims hinge on the notion that Paragraph 12 of the 2017 Trust SA, which was clearly intended to reserve rights, operated instead to waive or release claims, by allegedly expanding the language found in Paragraph 11. According to the Defendants' erroneous and baseless reading of the 2017 Trust SA, Paragraph 12 acted to release and bar claims forever and always, even for events and circumstances that had not yet occurred.

Again, the Trust Funds' alter ego claims under ERISA are based on the FC CBA, which also contains a Preservation of Work Clause as shown above. The 2017 Trust SA does not mention the FC CBA at all, let alone release claims that arose under the FC CBA. It is categorically impossible to breach the 2017 Trust SA by asserting claims under a labor agreement that was not the subject of, or even mentioned in, the 2017 Trust SA.

Furthermore, to the extent that the Trust Funds' alter ego claims under ERISA here are based on the Painters CBA (which is referred to in the 2017 Trust SA as the "MLA,"), the 2017 Trust SA could not and did not release such claims. The Counterclaimants argue that by asserting ERISA claims under the CBAs, the Trust Funds are violating the terms of the 2017 Trust SA. This amounts to a claim that in the event that they conflict, the 2017 Trust SA controls and limits the Trust Funds' rights under the CBAs. This kind of alteration of the CBA terms was expressly rejected by the parties. Exhibit B at 3-4, ¶ 14 ("...the parties expressly acknowledge that the terms of the MLA, Master Agreement or any Trust Agreement shall be controlling in the event of any conflict with this Agreement.").

In summary, the Trusts' claims are based on the CBAs or on trust agreements. The Defendants' Counterclaims depend on the 2017 Trust SA controlling in the event it conflicts with those CBAs or trust agreements. But OCLV and HRS both expressly agreed that it is the 2017 Trust SA that must be ignored in the event of a conflict, and that CBAs and trust agreements will be enforced.

## III.

## GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a claim must be dismissed when it does not allege facts sufficient to state a claim for relief that is "plausible" within the four corners of the complaint. *Bell Atl. Corp. v. Twombly*, 550 US 544 (2007). A pleading need not contain detailed allegations, but it must allege sufficient facts "to raise a right to relief above the speculative level." *Id*. "A Complaint does not allege sufficient facts to raise a right to relief above the speculative level if it contains nothing more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Rather, "a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Id.*

Well-pleaded factual allegations are presumed true when considering a Rule 12(b)(6) motion, but legal conclusions are not. *Id*. Factually unsupported conclusory statements do not

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

suffice. *Id*. A claim is facially plausible when a complaint alleges facts that allow the court to draw a reasonable inference that a defendant is liable for the alleged misconduct. *Id*. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the claims must be dismissed. *Twombly*, 550 U.S. at 570. A claimant must plead facts showing that a violation is plausible, not just possible, and a court "must dismiss" relevant causes of action when the plaintiff fails to do so. *Bartley v. Wells Fargo Bank*, No. 2:12-cv-02169-GMN-CWH, 2014 U.S. Dist. LEXIS 20458, at *5-6 (D. Nev. Feb. 18, 2014). In evaluating whether a complaint states a plausible claim for relief, a court must use "judicial experience and common sense" to determine whether the factual allegations, which are assumed to be true, plausibly give rise to an entitlement to relief. *Landers v. Quality Communs., Inc.*, 771 F.3d 638 (9th Cir. 2015).

Independent of the fact-based plausibility analysis required by *Twombly*, a Rule 12(b)(6) motion may separately test the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may "be based on…the lack of a cognizable legal theory…" *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Where the relief sought by the plaintiff is unavailable as a matter of law, dismissal is appropriate. *Schweiker v. Chilicky*, 487 U.S. 412, 429, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988). Courts routinely dismiss counterclaims lodged against trust funds that fail to state a claim or that are preempted by ERISA. *See, e.g.*, *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Archie*, 2:12-CV-225 JCM (VCF), 2013 U.S. Dist. LEXIS 99776 at *17 (D. Nev. July 17, 2013) (considering the "merits of the motion to dismiss" and ordering dismissal of counterclaims for racial discrimination, claims asserting alter ego, breach of covenant of good faith and fair dealing, harassment, retaliation, intentional infliction with contractual relations, breach of ERISA fiduciary responsibility, and "most favored nation").

**CHRISTENSEN JAMES & MARTIN, CHTD.**
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CHRISTENSEN JAMES & MARTIN, CHTD.**
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

**IV.**

**ARGUMENT**

**A.      ERISA preempts the Counterclaims.**

        In ERISA cases, the U.S. Supreme Court and Ninth Circuit have discussed preemption in terms of "express preemption" and "conflict preemption." The following excerpt from the Ninth Circuit gives a general sense of both:

> "There are two strands of ERISA preemption:" Express preemption, under 29 U.S.C. § 1144(a), and conflict preemption, under 29 U.S.C. § 1132(a). *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) (quoting *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)). Express preemption applies to "[s]tate laws insofar as they . . . relate to any employee benefit plan" but contains a saving clause that exempts state laws that *regulate* insurance. 29 U.S.C. § 1144(a), (b)(2)(A). Conflict preemption applies when a state law's enforcement mechanism conflicts with ERISA's "comprehensive scheme of civil remedies." *Cleghorn*, 408 F.3d at 1225. If a state-law claim is preempted by § 1132's conflict preemption, it cannot be brought, "even if those causes of action would not necessarily be preempted by [§ 1144's express preemption]." *Ibid.*

*Meyer v. United Healthcare*, 840 F. App'x 174, 176 (9th Cir. 2021).

        The Defendants lodged Counterclaims that are based on state law causes of action. *See* ECF Nos. 11 and 13 at 11, ¶ 1 (claiming that the Court has supplemental jurisdiction under 28 U.S.C. § 1367).[7] Federal "[c]ourts determine whether to exercise supplemental jurisdiction over state-law claims using the framework established by 28 U.S.C. § 1367." *Mendez v. MCSS Rest. Corp.*, 2019 U.S. Dist. LEXIS 103032, at *16 (E.D.N.Y. June 14, 2019).

        Few, if any, state law claims may be asserted in ERISA actions because ERISA provides an exclusive enforcement scheme found in 29 U.S.C. § 1132. *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 631 (9th Cir. 1990) ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 95 L. Ed.

---

[7] The Defendants claim that their state-law Counterclaims present federal questions under 28 U.S.C. § 1331, but do not elaborate.

2d 39, 107 S. Ct. 1549 (1987)). Remedies available under ERISA cannot be "supplemented or supplanted by varying state laws." *Pilot Life*, 481 U.S. at 56. ERISA's enforcement scheme provides remedies for employers when employee benefit trust funds have brought claims that are not permitted. *See* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter…by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."); *Operating Eng'rs Pension Tr. v. Gilliam*, 737 F.2d 1501, 1505 (9th Cir. 1984) ("Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), gives district courts discretion to award attorney's fees to employers that successfully defend actions brought under ERISA section 515, 29 U.S.C. § 1145.").

Although the Defendants' Counterclaims are preempted by ERISA, as more fully described below, they are not left without a remedy. ERISA's exclusive enforcement scheme is always available to the Defendants, without the need to file counterclaims, should the Trust Funds fail to prove their claims asserted in the Complaint. In fact, the damages asserted by the Defendants—that they "have been forced to expend resources to hire counsel to defend against the improperly filed lawsuit"—are exactly the remedy provided by 29 U.S.C. § 1132(g)(1). *See* ECF Nos. 11 and 13 at 14, ¶ 14.

Each of the Defendants' Counterclaims is preempted by ERISA. ERISA preempts state laws and common law causes of action that "relate to" or have a "connection with" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983) (interpreting 29 U.S.C. § 1144 and holding that "a law 'relates to' a benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."); *see also Abraham v. Norcal Waste Sys.*, 265 F.3d 811, 820 (9th Cir. 2001).

"In determining whether a common law claim has 'reference to' an ERISA plan, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival." *Oregon Teamster Emps. Tr. v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1156 (9th Cir. 2015) (citation omitted) (internal quotation marks omitted). In evaluating whether a common law claim has a

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

"connection with" an ERISA plan, the focus is on whether the claim involves "a central matter of plan administration" or "interferes with nationally uniform plan administration." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320, 136 S. Ct. 936, 943 (2016).

The Ninth Circuit has consistently held that "a core factor leading to the conclusion that a state law claim is preempted is that the claim bears on an ERISA-regulated relationship." *Abraham v. Norcal Waste Sys.*, 265 F.3d 811, 820-21 (9th Cir. 2001) (citing *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1219 (9th Cir. 2000)). In evaluating the "relationship" test, the Court must look to "whether the state law encroaches on relationships regulated by ERISA, such as between…plan and employer…." *Id.* (citing *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999)). Here, the facts alleged in the Complaint and in Defendants' Answers clearly show that the Counterclaims "bear[] on an ERISA-regulated relationship."

ERISA preempts Defendants' state law claims for breach of contract. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S. Ct. 1549, 1553 (1987). Defendants have lodged Counterclaims for breach of the 2017 Trust SA entered into between ERISA Trust Funds and employers that participate in those plans. But for the ERISA-regulated relationship between OCLV and the Trust Funds, the 2017 Trust SA would never have come into being. Further, the Defendants' Counterclaims assert that the Trust Funds are barred from bringing claims related to HRS as an alter ego of OCLV under the 2017 Trust SA. *See* ECF Nos. 11 and 13 at 17, ¶ 27. Defendants' claims fly in the face of the "purpose of the alter ego doctrine in the ERISA context," which is meant to "prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" *Ret. Plan of the Unite Here Nat'l Ret. Fund v. Kombassan Holdings A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) (quoting *Newspaper Guild of N.Y. v. NLRB*, 261 F.3d 291, 298 (2d Cir. 2001)). This purported promise barring alter ego claims clearly "relates to" or has a "connection with" an ERISA benefit plan, and is therefore expressly preempted.

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

ERISA also preempts Defendants' claims for breach of the duty of good faith and fair dealing. Defendants made it clear that their claims arise under Nevada law. *See* ECF Nos. 11 and 13 at 20, ¶ 37 ("In every contract under Nevada law…"). In Nevada, a quasi-contractual duty of good faith and fair dealing is implied in every contract. *Sands Aviation, Ltd. Liab. Co. v. AIS-International, Ltd.*, 135 Nev. 711, 437 P.3d 1052 (2019). But in ERISA collection actions, such claims are preempted. *See Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016) (dismissing state law good faith and fair dealing claims because they "relate to the Plan and are preempted by ERISA"). ERISA preempts the Counterclaims for breach of contract and breach of the duty of good faith and fair dealing.

ERISA also preempts Defendants' civil conspiracy claims. The civil conspiracy claim is explicitly brought in connection with the breach of contract claim. *See* ECF Nos. 11 and 13 at 21, ¶ 43 ("[Trust Funds] conspired together…in furtherance of the intentional breach of contract…"). Because it is connected to the breach of contract claim, the civil conspiracy Counterclaim must be dismissed. The Defendants do not otherwise specify the legal source of a claim for conspiracy. However, even if it were brought on its own terms (*i.e.*, with no connection to an otherwise ERISA preempted claim as a state law cause of action) it would still fail under ERISA. Because ERISA has "occupied the field" and omits a cause of action for conspiracy, Nevada law cannot fill the void. *See Teamsters Local Union No. 705 v. Burlington Northern Santa Fe, LLC*, 741 F.3d 819, 825 (7th Cir. 2014) (affirming dismissal of a conspiracy claim because ERISA does not provide a cause of action for conspiracy and is therefore preempted by 29 U.S.C. 1132(a) and 1144(a)). Congress intended ERISA's civil enforcement scheme to be exclusive, and was not to be supplemented by other laws. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52, 107 S. Ct. 1549, 1555 (1987). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

(2004). The conspiracy claim is preempted. But the Defendants may seek the remedies afforded to them under ERISA's exclusive enforcement scheme.

ERISA also preempts Defendants' claims for abuse of process. The abuse of process claim is also explicitly brought in connection with the breach of contract claim, and must therefore be dismissed. *See* ECF Nos. 11 and 13 at 22, ¶ 50 ("The [Trust Funds] filed this Lawsuit against [Counterclaimants] despite the…express agreement that [HRS] and [OCLV] were not be considered alter ego, single, or joint employers."). But even if the abuse of process claim were not connected to the breach of contract claim, ERISA would still preempt it. The court in *Boilermaker-Blacksmith Nat'l Pension Tr. v. Elite Mech. & Welding*, No. 5:20-cv-06021-SRB, 2020 U.S. Dist. LEXIS 95374 (W.D. Mo. June 1, 2020) addressed counterclaims "rooted in the propriety of [p]laintiffs' conduct in commencing [a] suit for delinquent contributions." *Id.* at *7. In holding that abuse of process claims are preempted by ERISA under 29 U.S.C. § 1144, the court noted that such counterclaims "relate to" an employee benefit plan because they are "directly connected" to the "administration of those benefits plans" and "the methods employed by the plans in seeking to enforce employer contributions." *Id.* The abuse of process claim asserted in this Case is preempted for the same reasons.

Based on the foregoing, all of the Defendants' Counterclaims are preempted by ERISA and must be dismissed. Because the Counterclaims are due to be dismissed, the Defendants' jury demand must also be stricken or dismissed, because "[t]here is no right to a jury trial under ERISA." *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 996 (9th Cir. 2000) (quoting *Langlie v. Onan Corp.*, 192 F.3d 1137, 1141 (8th Cir. 1999), cert. denied, 529 U.S. 1087, 146 L. Ed. 2d 641, 120 S. Ct. 1719 (2000)).

**B.      The Defendants' Counterclaims are preempted by the LMRA.**

Defendants' Counterclaims for breach of contract and breach of the covenant of good faith and fair dealing are preempted by the LMRA. "Section 301 of the LMRA preempts state law claims based directly on rights created by a collective bargaining agreement, and also preempts claims that are substantially dependent on an interpretation of a collective bargaining

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

agreement." *Trs. of the Nev. Resort Ass'n v. Harrah's Las Vegas, LLC*, No. 2:13-cv-00040-APG-PAL, 2014 U.S. Dist. LEXIS 74210, at *9 (D. Nev. May 28, 2014) (citing *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1014 (9th Cir. 2000)). The Defendants' Counterclaims require the Court to interpret the collective bargaining agreements between the parties. In the 2017 Trust SA, the parties expressly acknowledged that the Painters CBA or any Trust Agreement "shall be controlling in the event of any conflict" with the 2017 Trust SA. Exhibit B at 4, ¶ 14. Thus, the 2017 Trust SA must be viewed through the lens of the Painters CBA entered into by OCLV and HRS. Therefore, the LMRA preempts the Counterclaims.

Defendants' Counterclaims for civil conspiracy and abuse of process rely upon the Court adopting the Defendants' interpretation of the 2017 Trust SA's "related company" provision. *See* ECF Nos. 11 and 13 at 21, ¶ 43 ("Counterclaim-Defendants conspired together…in furtherance of the intentional breach of contract…") and ECF No. 22 at ¶ 50 ("Counterclaim-Defendants filed this Lawsuit...despite the fact that [they had an]…express agreement that [HRS] and [OCLV] were not to be considered alter ego, single, or joint employers."). Under the rule set forth in *Harrah's Las Vegas*, these Counterclaims must be dismissed because they hinge on the interpretation of a collective bargaining agreement.

## C.    Punitive damages are not available in this action.

Just like their Counterclaims, the Defendants' Prayer for Relief seeking an award of punitive damages must be dismissed. The Supreme Court has held that punitive damages are not available in ERISA cases under 29 U.S.C. § 1132(a). "Moreover, we declined to find an implied cause of action for punitive damages in that section, noting that the presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S. Ct. 1549, 1556 (1987) (citation and internal quotation marks omitted). "The [ ] carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate

expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S. Ct. 3085, 3092 (1985) (emphasis in original). ERISA's civil enforcement scheme does not allow for an award of punitive damages. Whether through their Counterclaims or otherwise, the Defendants' demand for an award of punitive damages must be rejected and dismissed.

**D.    Counterclaims asserted against any union must be dismissed.**

To the extent the Counterclaimants have lodged Counterclaims regarding any union, no such claims are permitted. No union has been named as a party in this case, either by the Trust Funds or the Counterclaimants. Unions are not representatives or agents of the Trust Funds. "As a matter of federal law, a union and its representatives are not agents of a trust fund created by a collective bargaining agreement…Trust authorities…have long been held to constitute a distinct and independent entity separate from the union…." *Waggoner v. Dallaire*, 649 F.2d 1362, 1364 (9th Cir. 1981). The Court must dismiss any Counterclaims asserted by the Counterclaimants against any union.

**E.    The Defendants' Counterclaims must be dismissed for failure to state a claim upon which relief can be granted.**

To the extent any Counterclaims survive the foregoing ERISA of LMRA preemption analysis, they must be rejected because the provisions of the 2017 Trust SA that Defendants rely upon do not support the Counterclaims. All Counterclaims asserted in this Case hinge on whether the Trust Funds breached the 2017 Union SA or the 2017 Trust SA. The Trust Funds are not parties to the 2017 Union SA, and the Union has not been named as a party in this case. Thus, the Trust Funds owed no duty to the Counterclaimants under the 2017 Union SA, and the Trust Funds could not have breached it. The Counterclaimants are bound by the 2017 Union SA, but the Trust Funds are not. The Counterclaimants' deceitfully broad interpretation of a single clause in the 2017 Trust SA is also wrong as a matter of law.

**1.    The 2017 Trust SA did not release any relevant claims.**

The claims asserted in the Complaint on file in this Case relate to events that occurred between August 10, 2017 and March 31, 2023 (the "Audited Periods") and potential unknown

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

claims for April 1, 2023 through the present date (the "Unaudited Period"). *See* Complaint ¶ 46 (defining Audited Periods) and ¶ 68 (defining Unaudited Period). The Counterclaims (which should be dismissed) are predicated on the mistaken belief that the 2017 Trust SA, signed by the Trust Funds on June 27, 2017, released all future claims that might arise out of events occurring after that date. This is wrong both factually and legally.

"Because settlement agreements are contracts, they are 'governed by principles of contract law.'" *Kahn v. Dodds (In re AMERCO Derivative Litig.)*, 127 Nev. 196, 211, 252 P.3d 681, 693 (2011) (quoting *Mack v. Estate of Mack*, 125 Nev. 80, 95, 206 P.3d 98, 108 (2009)). "Under contract law generally, when a release is unambiguous, we must construe it from the language contained within it." *Id.* (citing *Chwialkowski v. Sachs*, 108 Nev. 404, 406, 834 P.2d 405, 406 (1992)). In Nevada, when the parties' intent is not clearly expressed in the contractual language, the Court may also consider the circumstances surrounding the agreement. *Id.* (citing *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 487-88, 117 P.3d 219, 223-24 (2005)).

"Contractual release terms are only enforceable against claims contemplated at the time of the signing of the release and do not apply to future causes of action unless expressly contracted for by the parties." *Clark v. Columbia/HCA Info. Servs.*, 117 Nev. 468, 480–81, 25 P.3d 215, 223-24 (2001). In *Clark*, the Nevada Supreme Court found that a release did not apply to claims arising from events subsequent to the release. *Id.* The Court explained:

> Clark signed the release in 1988 and his claims arose in 1991; thus, Clark could not have anticipated when he signed the release that he would have his staff privileges terminated for whistleblowing that did not occur until 1991. We also conclude that to preclude Clark from raising his claims on whistleblowing activity would violate public policy. Hence, the release does not bar his claims.

*Clark v. Columbia/HCA Info. Servs.*, 117 Nev. 468, 480-81, 25 P.3d 215, 223-24 (2001); *see also Kahn v. Dodds (In re AMERCO Derivative Litig.)*, 127 Nev. 196, 212, 252 P.3d 681, 693 (2011) (finding that release language did not expressly release prospective claims). Thus, general rules of contract law demonstrate that waivers of future claims are very seldom enforceable.

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

Perhaps more importantly, waivers of prospective statutory federal rights are void. "A covenant not to sue and a release...is not effective as to unknown, future ERISA claims." *Reighard v. Limbach Co.*, 158 F. Supp. 2d 730, 732 (E.D. Va. 2001). In *Reighard*, an employee brought claims against his employer under ERISA, and the employer asserted a counterclaim for breach of a covenant not to sue contained in an employment contract. *Id.* at 730. The court granted the employee's motion to dismiss the counterclaim, which was based on contract language where the employee covenanted not to sue "for any sums for Involuntary Termination other than those…specified." *Id.* at 731. This presented the question of whether a waiver of future ERISA rights is valid. *Id.* The court reasoned that if waivers of statutory rights were allowed, they "would have the pernicious effect of tending to encourage violations by assuring the wrongdoers that they may act with impunity." *Id.* at 733. Where a covenant not to sue purports to prospectively waive any future rights or claims under ERISA, this would effectively grant an employer license to violate ERISA into perpetuity with impunity. *Id.* "ERISA rights are too important to permit this result." *Id.*

In asserting their Counterclaims in this Case, the Counterclaimants quote a portion of paragraph 12 of the 2017 Trust SA as the primary support for their theory that the Trust Funds released claims against the Counterclaimants prospectively. Paragraph 12 states:

> The Trust Funds *<u>expressly reserve</u>* the right to conduct a payroll compliance review and/or audit of Employer for the Post-Audit Period. Any liabilities to the Trust Funds that may arise out of such Post-Audit Period, including claims for subcontract violations under Article 14 of the MLA where HRS was hired to perform covered work under a subcontract to Employer, but excluding claims related to HRS as a related company, are expressly reserved, not waived, and *<u>not released</u>*.

(emphasis added). The Counterclaimants ask the Court to read this language as a waiver that insulates them from any alter ego claims for all time. But this is directly contrary to the parties' intentions. Paragraph 12 was included in the 2017 Trust SA to ensure that the Trust Funds would <u>retain</u> (*i.e.*, not relinquish) the right to assert later claims. Paragraph 12 clearly and unambiguously does not release anything. The only time the word release is used is to make clear that the reserved items are "expressly reserved, not waived, and *not released*."

-21-

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

The operative language of the 2017 Trust SA releasing claims (*i.e.*, an express release) is found in the immediately preceding paragraph, paragraph 11, which states:

> Except as expressly set forth in this Agreement, the Trust Funds *fully release and forever discharge* Employer, Phil Friedberg, HRS, Marie Jan Bower and their directors, shareholders, members, managers, officers, agents, employees attorneys, insurers, sureties, successors, and assigns, any parent, affiliate, and subsidiary companies, corporations, and business entities ("Releasees") of and from *all claims, demands, suits, debts, liabilities, judgments, obligations, delinquencies, liens, costs and/or expenses of every nature, known or unknown, asserted or not asserted, mature or to mature in the future*, the Trust Funds had, now have or claim to have against Releasees *arising out of or relating in any way to the facts alleged in the Audit.*"

(emphasis added). This release is also clear on its face that the Trust Funds intended to release only those claims that arose out of the "Audit"—a defined term specific to a payroll compliance review of OCLV and HRS for the six-month period of January 1, 2016 through June 30, 2016. The release language does not waive or release claims arising at any time thereafter, and certainly does not prospectively release claims in perpetuity. Paragraph 11 demonstrates that the Trust Funds knew how to release claims. There is no basis to read the subsequent reservation of rights in paragraph 12 as an expansion of the release found in paragraph 11. Paragraph 12 was clearly intended to support the expressly limited release found in paragraph 11 by reserving rights that belonged to the Trust Funds.

Unlike the Counterclaimants' tortured reading of the 2017 Trust SA, the Trust Funds' construction of paragraphs 11 and 12 is consistent with the other provisions of the agreement. For example, paragraph 13 (like paragraph 12) reserves rights to make it clear that the Trust Funds retained the ability to conduct an audit of HRS for "any period of time after [the] Pre-Settlement Period… [and] the right to seek payment from HRS for any contributions owed or accrued to the Trust Funds for any period of time after the Pre-Settlement Period." The Counterclaimants' intentional misreading of paragraph 12 would nullify paragraph 13. By including paragraph 13, the parties agreed that the Trust Funds could seek payment for "any contribution owed" and nothing in paragraph 12 can change this. The Trust Funds read the 2017 Trust SA reasonably, in a manner that gives proper effect to all its provisions. In contrast,

the Counterclaimants' reading of the agreement results in paragraph 12 directly contradicting the following paragraphs: (i) paragraph 7, which stated that the terms and conditions of the 2017 Trust SA Agreement are "not to be construed as the admission by the Trust Funds of a lack of a joint or single employer relationship between [OCLV] and HRS;" (ii) paragraph 11, which expressly defined what was "fully release[d];" (iii) paragraph 13, which specifically states that the Trust Funds retained the ability to seek payment for "any contribution owed;" and (iv) paragraph 14, which explained that the 2017 Trust SA should be construed in a manner consistent with the controlling terms of the Painters CBA in the event of a conflict. The Counterclaimants' interpretation of Paragraph 12 would make Paragraphs 7, 11, 13, and 14 meaningless, even though they were included to ensure that the Trust Funds could later assert claims for subsequent actions of the Defendants, which is precisely what the Trust Funds did by filing their Complaint.

The Defendants' Counterclaims all hinge on an impermissible construction of the 2017 Trust SA—a construction that necessarily makes different provisions within the agreement conflict, and which would effectively require the Court to permit an employer to violate ERISA. *See Reighard v. Limbach Co.*, 158 F. Supp. 2d 730, 732 (E.D. Va. 2001). The Counterclaimants are not entitled to the relief they seek, so their Counterclaims must be dismissed. *See Schweiker v. Chilicky*, 487 U.S. 412, 429, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988) (dismissing claim because "the relief sought" was "unavailable as a matter of law"); *see also* Fed. R. Civ. P. 12(b)(6) (authorizing motions based on the "failure to state a claim *upon which relief can be granted*") (emphasis added). A motion to dismiss "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Fisher v. United States*, 167 Fed. Cl. 535, 538 (2023). The Counterclaims must be dismissed.

**2.    The 2017 Trust SA was limited to claims arising under the Painters CBA.**

For the sake of argument, even if Paragraph 12 could be construed as a future release of trust fund claims (which the Trust Funds deny), such a release would be limited to claims arising under the Painters CBA asserting that OCLV and HRS are "related company[ies]" (*i.e.*,

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

alter egos). Paragraph 12 of the 2017 Trust SA references only the "MLA," which is defined previously as the Painters CBA signed by OCLV. As part of the 2017 Union SA, HRS agreed to also sign the Painters CBA. As noted above, the Trust Funds had no reason to assert that OCLV and HRS were alter egos for purposes of painting-related claims because both employers signed the Painters CBA. *See Trs. of Op'g Eng'rs Pension Tr. Fund v. G.C. Wallace, Inc.*, 859 F.2d 154 (Table) (9th Cir. 1988) ("Where evidence suffices to support an inference that the *non-signatory* company was formed to avoid a labor agreement, the alter ego finding will be upheld." (emphasis added)).[8] The Counterclaims, if successful, would preclude alter ego claims arising under the Painters CBA. But no such alter ego claims have been asserted in this Case. Because the alter ego claims in the Complaint are focused on avoidance of the FC CBA, the Counterclaims serve no purpose. The Counterclaims cannot change the outcome of this Case, and they should therefore be dismissed.

## IV.

## CONCLUSION

For the above reasons, the Court should promptly enter an order dismissing the Defendants' Counterclaims.

Dated this 24th day of September 2024.

CHRISTENSEN JAMES & MARTIN, CHTD.

By: _/s/ Dylan J. Lawter_____
    Dylan J. Lawter, Esq.
    Nevada Bar No. 15947
    7440 W. Sahara Avenue
    Las Vegas, Nevada 89117
    *Attorneys for Plaintiffs Board of*
    *Trustees of the Employee Painters'*
    *Trust, et al.*

---

[8] The alter ego allegations found in the Complaint relate to floorcovering-related hours of work under the FC CBA that only OCLV signed (Exhibit D). *See Ret. Plan of the Unite Here Nat'l Ret. Fund v. Kombassan Holdings A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) ("The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" (quoting *Newspaper Guild of N.Y. v. NLRB*, 261 F.3d 291, 298 (2d Cir. 2001)).

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

<u>CERTIFICATE OF SERVICE</u>

I am an employee of Christensen James & Martin. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒    ELECTRONIC SERVICE:    Pursuant to Local Rule LR IC 4-1 of the United States District Court for the District of Nevada, the above-referenced document was electronically filed and served on all appearing parties through the Notice of Electronic Filing automatically generated by the Court.

☐    UNITED STATES MAIL:    By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐    OVERNIGHT COURIER:    By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally-recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐    FACSIMILE: By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

**CHRISTENSEN JAMES & MARTIN**

By:    ___/s/ Natalie Saville_____

-25-