# EXHIBIT B

## 2017 Trust Settlement Agreement

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

1.  This Settlement Agreement and Release ("Agreement") is between Olympus Construction LV, Inc. ("Employer"), Hospitality Renovation Service, LLC ("HRS"), and the Employee Painters' Trust, Painters & Floorcoverers Joint Committee, Painters, Glaziers & Floorcoverers Joint Apprenticeship & Journeyman Training Trust, Painters, Glaziers & Floorcoverers Safety Training Trust Fund, Painters Organizing Fund, Southern Nevada PDCA/FCA Industry Promotion Fund, International Union of Painters & Allied Trades Industry Pension Fund, IUPAT Finishing Trades Institute, Painters & Allied Trades Labor Management Cooperation Initiative, and IUPAT Political Action Together Fund ("Painters Joint Trust Funds" or "Trust Funds").

### Background

2.  During the relevant time period, Employer and the International Union of Painters & Allied Trades District Council 15, Painters Local 159 ("Union") were signatories to the Painters and Decorators Master Labor Agreement ("MLA"), in which Employer agreed to abide by the trust agreements establishing the Trust Funds and any amendments thereto ("Trust Agreements"). Under the MLA and the Trust Agreements, Employer is obligated to pay certain contributions to the Trust Funds on behalf of Employer's bargaining unit employees represented by the Union.

3.  On or about September 15, 2016, the Union initiated a grievance against Employer alleging that HRS is a "sister company" to Employer and thereby a signatory to the MLA and obligated to the terms and conditions set forth therein ("Grievance").

4.  Additionally, on or about September 20, 2016, the Trust Funds initiated a payroll compliance audit of Employer ("Audit"). As part of the Audit, the Trust Funds sought records and documents pertaining to HRS, which they alleged was a "possible closely related company" to Employer. The Trust Funds completed an Audit of Employer for the period of January 1, 2016 through June 30, 2016 ("Audit Period"). The Trust Funds have not completed an audit of Employer for the period of time July 1, 2016 forward ("Post-Audit Period").

5.  Employer disputes that HRS is a "closely related company" or "sister company" to Employer. Specifically, Phillip Friedberg expressly states that he sold HRS on January 1, 2014, through an arm's length transaction for valuable consideration to Marie Jan Bower, with whom he has never had a familial relationship of any kind. Similarly, HRS denies that it is a "closely related company" or "sister company" to Employer.

6.  Employer, HRS, and Union are concurrently entering into a Settlement Agreement to resolve the Grievance. The Trust Funds and the Employer desire to reach a resolution related to the Audit. Additionally, HRS desires to bring a resolution to this issue to avoid being pulled into litigation due to the dispute between the Employer and Trust Funds. Accordingly, the parties desire by this Agreement to fully, completely, and finally resolve their disputes, claims and disagreements arising from or relating to the Audit.

## Agreement

7.    The parties agree that this Agreement is a compromise of disputed claims and that the terms and conditions of this Agreement, or performance of the same, are not to be construed as an admission of any liability, wrongdoing, or violation of any federal, state, or local law by any of the parties. The parties further agree that the terms and conditions of this Agreement, or performance of the same, are not to be construed as the admission by Employer and HRS of or creation of a joint or single employer relationship between Employer and HRS and such relationship is specifically disclaimed by Employer and HRS. The parties further agree that the terms and conditions of this Agreement, or performance of the same, are not to be construed as the admission by the Trust Funds of a lack of a joint or single employer relationship between Employer and HRS. The parties enter this Agreement to avoid the expense and uncertainty of litigation and to protect their respective interests.

8.    HRS, has agreed, by Settlement Agreement between Employer, HRS, and Union executed concurrently herewith, to be bound by all the terms and conditions of the *July 1, 2015 – June 30, 2019 Painters & Decorators Master Labor Agreement between the International Union of Painters and Allied Trades District Council #15, Local Union #159 and the Painting and Decorating Contractors of America Southern Nevada Chapter, Las Vegas, Nevada* ("Master Agreement"). This Master Agreement is in full force and effect and shall continue in accordance with its terms.

HRS will take the necessary steps to sign the necessary documents pertaining to the Master Agreement, as well as any corresponding Trust Fund documents, within ten (10) business days of all parties' execution of this Agreement and the Settlement Agreement between Employer, HRS, and Union, executed concurrently herewith.

HRS will provide to the Trust Funds a surety bond in the amount of $30,000 for the purpose of protecting the Trust Funds as required by Article 14, Section 1 of the Master Agreement, within ten (10) business days of all parties' execution of this Agreement and the Settlement Agreement between Employer, HRS, and Union, executed concurrently herewith.

9.    In consideration of this Agreement, the Trust Funds will withdraw their requests for any records, documents, or information pertaining to HRS for the period of time prior to the execution of this Agreement, the Master Agreement, and any corresponding Trust Fund documents by HRS ("Pre-Settlement Period"). The Trust Funds will not perform any audit of HRS nor seek any records for the Pre-Settlement Period. Furthermore, the Trust Funds will not seek, neither will HRS be liable for, any alleged contributions allegedly owed to the Trust Funds for work performed during the Pre-Settlement Period.

10.    In the event any employee of HRS, or their dependents, should assert any claim or demand for damages or benefits ("Employee Claim") from any or all of the Trust Funds, arising out of or related to: i) any labor performed by such employee for HRS during the Pre-Settlement Period; ii) any contributions allegedly owed or accrued to the Trust Funds

for work performed during the Pre-Settlement Period; iii) the Audit; or iv) the claims released herein, HRS shall indemnify, defend, hold harmless, pay and reimburse the Trust Funds, their Trustees, administrators, auditors, attorneys and agents from and against any and all claims, demands, causes of action, liabilities, obligations, judgments, damages, attorney's fees and court costs asserted by such employee(s) or their dependents. Upon receipt of any such Employee Claim, the Trust Funds shall provide HRS with written notice and a copy thereof, whereupon HRS shall immediately assume and pay for any defense, which shall be provided by legal counsel appointed by HRS and reasonably satisfactory to the Trust Funds. In the alternative, HRS shall have the right to negotiate a written resolution and pay any settlement amount related thereto not later than ninety (90) days after its receipt of an Employee Claim. In the event of HRS's failure to pay or defend the Trust Funds from any such Employee Claim, the Trust Funds shall have the right to petition the United States District Court for the District of Nevada ("U.S. District Court"), or court of competent jurisdiction, for a judgment enjoining HRS to forthwith pay the full amount of any such Employee Claim or, if previously satisfied by the Trust Funds, reimburse the Trust Funds the full amount of any related claims, demands, causes of action, liabilities, obligations, judgments, damages, attorney's fees and court costs paid, incurred or satisfied by the Trust Funds.

11.   Except as expressly set forth in this Agreement, the Trust Funds fully release and forever discharge Employer, Phil Friedberg, HRS, Marie Jan Bower and their directors, shareholders, members, managers, officers, agents, employees attorneys, insurers, sureties, successors, and assigns, any parent, affiliate, and subsidiary companies, corporations, and business entities ("Releasees") of and from all claims, demands, suits, debts, liabilities, judgments, obligations, delinquencies, liens, costs and/or expenses of every nature, known or unknown, asserted or not asserted, mature or to mature in the future, the Trust Funds had, now have or claim to have against Releasees arising out of, or relating in any way to, the facts alleged in the Audit.

12.   The Trust Funds expressly reserve the right to conduct a payroll compliance review and/or audit of Employer for the Post-Audit Period. Any liabilities to the Trust Funds that may arise out of such Post-Audit Period, including claims for subcontract violations under Article 14 of the MLA where HRS was hired to perform covered work under a subcontract to Employer, but excluding claims related to HRS as a related company, are expressly reserved, not waived, and not released.

13.   The Trust Funds expressly reserve the right conduct a payroll compliance review and/or audit of HRS for any period of time after Pre-Settlement Period. The Trust Funds further reserve the right to request any records, documents, or information pertaining to HRS necessary to perform such payroll compliance review and/or audit for any period of time after the Pre-Settlement Period. The Trust Funds further reserve the right to seek payment from HRS for any contributions owed or accrued to the Trust Funds for any period of time after the Pre-Settlement Period.

14.   This Agreement is not intended to be a modification of the MLA, Master Agreement or any Trust Agreement, and the parties expressly acknowledge that the terms of the MLA,

Master Agreement or any Trust Agreement shall be controlling in the event of any conflict with this Agreement.

15. <u>Confidentiality</u>. Subject to their obligations under all present and future laws applicable to employee benefits of the type(s) offered and administered by the Trust Funds, the Trust Funds agree to maintain the confidentiality of this Agreement and will not disclose in any fashion the existence, amount, terms and conditions of this Agreement to any person other than the Trust Funds' attorneys, sponsors, accountants, advisors, and auditors, upon those individuals agreeing to maintain this Agreement in strict confidence, or otherwise as required by law to respond to legal process and inquiries from administrative agencies. Neither the Trust Funds nor their counsel shall issue a press release relating to the settlement, discuss the settlement at any trade or union gathering, or otherwise publicly comment on the settlement.

**Signatures**

16. The parties signing this Agreement certify and warrant that they have full power and authority to sign this Agreement.

6|12|17
Date

By: _____
Phillip Friedberg, individually, and on behalf of Olympus Construction LV, Inc.

6|12|17
Date

By: _____
Marie Jan Bower, individually, and on behalf of Hospitality Renovation Services, LLC

PAINTERS JOINT TRUST FUNDS

6/27/17
Date

By: _____

Their: _____

By: _____

Their: _____

Date