# EXHIBIT D

February 1, 2010 - January 31, 2015
Floorcoverers
Master Agreement



**FLOORCOVERERS
MASTER AGREEMENT**

**FEBRUARY 1, 2010
Through
JANUARY 31, 2015**

**Between**

**International Union
of Painters & Allied Trades
District Council 15
&
Southern Nevada Painting and Decorating
Contractors of America/Finishing Contractors
Association**

# *Table of Contents*

| Subject | Article: | Page: |
|---|---|---|
| Administrative Fees Check-off | Article 16 | 16 |
| Duration of Agreement | Article 27 | 26 |
| Employers | Article 5 | 6 |
| Equality of Operation | Article 24 | 24 |
| Grievance and Arbitration, Joint Committee and Bonding | Article 17 | 17 |
| Hiring, Dispatching & Laying off of Workers | Article 3 | 4 |
| Holidays | Article 10 | 12 |
| Hours of Work and Overtime | Article 8 | 8 |
| Hotel Remodel Work | Appendix B | 30 |
| Industry Promotion Fund | Article 11 | 12 |
| Job Registration | Article 18 | 21 |
| Jurisdiction | Article 1 | 3 |
| Light Commercial/Market Recovery Agreement | Appendix A | 28 |
| Marking of Vehicles | Article 22 | 23 |
| No Lock-out or Strike Clause | Article 14 | 15 |
| Out of Area Work | Article 7 | 7 |
| Owner Members | Article 2 | 4 |
| Pay Day | Article 15 | 15 |
| Project Agreements | Article 23 | 23 |
| Safety Laws, Regulations & Requirements | Article 6 | 7 |
| Sale or Assignment of Business | Article 25 | 24 |
| Savings Clause | Article 26 | 25 |
| Stewards | Article 12 | 12 |
| Tools | Article 3 Section 9 | 5 |
| Transportation | Article 20 | 22 |
| Travel Time, Travel Expense & Subsistence | Article 21 | 22 |
| Trust Fund Contributions and Administration | Article 13 | 13 |
| Union Officials – Enforcement of Agreement | Article 19 | 21 |
| Union Recognition & Territorial Jurisdiction | Article 4 | 6 |
| Voluntary Deduction for Political Contributions | Exhibit A | 27 |
| Wages & Classifications | Article 9 | 9 |

## FLOORCOVERERS MASTER AGREEMENT
### February 1, 2010 through January 31, 2015

This Agreement, entered into this First Day of February, 2010 between **INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, DISTRICT COUNCIL 15** (hereinafter referred to as the Union) and the Southern Nevada Chapter of the Painting and Decorating Contractors of America/Finishing Contractors Association (hereinafter known as So. NV PDCA/FCA), Las Vegas, Nevada, for and on behalf of its present and future signatory members, as well as firms who have executed written authorizations for it to represent them in Labor Relations Matters of which are related to this Agreement and any independent employers who may affix their signature.

### WITNESSETH:

**WHEREAS**, The Employer is in contracting operations within the jurisdiction of District Council 15 of the International Union of Painters and Allied Trades; and whereas, in the performance of its present and future contracting operations, the Employer will employ floorcovering journeymen, apprentices and material handlers (hereafter referred to as floorcovering handlers); and whereas, it is the desire of the parties to establish uniform rates of pay, hours of employment and working conditions for the employees employed and to provide, establish and put into practice effective methods for the settlement of misunderstandings, disputes and grievances between the parties to the end that the Employer is assured of continuity of operation and industrial peace is maintained and the business of industry is efficiently increased. Now therefore, in consideration of the mutual promises herein contained, the parties do hereby agree as follows:

### ARTICLE 1
### JURISDICTION

1. By way of illustration and not limitation, the jurisdiction applies to all work including and related to:
   a) The installation of resilient floor, wall, ceiling and countertop materials commonly referred to as carpet, linoleum, vinyl, rubber, cork, asphalt, vinyl composites, synthetic grass, wood, epoxy, urethane, plastics, metal, and all similar materials in sheet, tile, or liquid form;
   b) Installation on floors, walls, ceilings, stairs, countertops, fixtures, furnishings, or exterior applications on structures, patios, pool perimeters, area ways, all other like or similar applications, whether permanent or temporary;
   c) Measuring, cutting, fabrication, packaging, pickup, delivery and handling of materials and tools that are used by the floorcovering industry;
   d) Preparatory removal of floorcovering, wallcovering, adhesive and underlayments. The sanding, patching, sealing, and priming of the installation surface;
   e) Installation of lining felt, carpet, pad, underlayment compositions, leveling compounds, or any material used as a base for the finished surface;
   f) Applications and fitting of fasteners, protective and decorative trim relating to the installation such as tackless, tape, nosing, top set or butt-to-base, cap, corner beads, edging, hinging, and all other accessories, and related sundries;
   g) Repair, finishing, coating, sculpturing, banding, insets, and such other processes relating to the industry;
   h) Installation of decorative moldings and accessories attached with adhesive such as those manufactured by Johnsonite and other manufacturers.
2. This Agreement shall also cover the loading, unloading and operation of work trucks utilized by employees classified herein. Such vehicles shall be defined to mean those that are driven from the shop to the job and from job-to-job and job-to-shop and which remain at the job site while the employees are engaged in the performance of work covered by the contract.

3. It shall further cover and apply to the stocking and handling of all material herein above listed after the first unloading by common carrier.

## ARTICLE 2
## OWNER MEMBERS

1. Owner Members are proprietors, partners or corporate owners or officers or anyone participating in the management of the Employer, but who also performs work pursuant to this agreement and who has applied for and been granted Owner Member status by the Union. There shall be only one Employer member for each Employer. The Employer shall pay fringe benefit contributions on all hours worked subject to the provisions of the appropriate trust documents, and the Owner Member shall be subject to the provisions of this Agreement.
2. Only one (1) Owner Member from each signatory Employer shall be permitted to work with the tools of the trade and only if such signatory Employer employs at least one (1) other employee covered under this Agreement.
3. Any workman or applicant for employment, who has or who obtains a Floor Covering Contractor's License, shall inactivate such license before seeking or accepting employment under the terms of this Agreement or he shall not work or be dispatched by the Union.
4. No Employer signatory to this Agreement shall be allowed to work for any other Employer as a workman on the payroll of such Employer. No workman shall be recognized as an Employer until he becomes signatory to this Agreement.

## ARTICLE 3
## HIRING, DISPATCHING AND LAYING OFF OF WORKERS

1. Employers shall secure employees in classifications covered by this Agreement from the Union hiring hall. The Union shall maintain a nondiscriminatory hiring hall and shall maintain accurate employee availability lists. There shall be no discrimination in hiring and/or promotion and/or any other aspects of employment because of race, creed, color, gender, national origin or age.
2. It is understood that prior to receiving their first dispatch, all new workers shall be referred to the Floor Coverers Joint Apprenticeship Training Committee (FC JATC) for skills evaluation. The Board of Trustees of the FC JATC shall develop uniform testing standards and any individual who is found to not be a Journeyman shall be placed in the Floor Covering Apprenticeship Program at the stage deemed appropriate by the FC JATC.
3. The Employer may request specific workmen by name and such workmen will be dispatched to such Employer provided such workmen are available for employment and are registered with the Union. The hiring of workers shall be on a three-to-one basis, with the Employer choosing the first three workmen regardless of his position on the out of work list, and the Union dispatching the next worker from the top of the out of work list. The intent of this clause is to create an equal opportunity for all qualified workers that are registered with the Union.
4. The Union shall hold jobcall every weekday morning at 8:00am at the Hall to dispatch qualified out of work members to fill any available calls.
5. If the Union is unable to supply qualified workers within twenty four (24) hours after request (excluding weekends and holidays), the Employer shall have the right to hire from any source, with the understanding that all wages, benefits and conditions of this agreement are applicable to such employee(s).
6. The Employer agrees that no worker hired will be allowed to work unless they have a referral from the Union. If a worker is hired under the provisions of Article 3 Section 4, the Employer shall provide to the Union the worker's name, social security number, address and phone number. If the worker does not report to the Union within 48 hours to complete necessary paperwork, the Employer shall remove the worker from the job.

7. Each written referral shall designate in which classification of the trade the workman is dispatched or may be employed.

8. In the event no specific workman is requested by name, the Union will dispatch workmen in the order in which they are registered on the out of work lists.

9. Every employee reporting for work within the scope of this agreement shall have the appropriate tools of the trade for the phase of the craft for which he is reporting. Each workman shall procure and maintain the required tools at his own expense. The listings of appropriate tools of the trade are as set forth below:

   **a) Employee Furnished:**

   ***Carpet Installers***: Knee Kicker, (25') Tape Measure, Knives, Sharpening Stone, Hammer, Chalk Line, Drive Bar, Straight Edge, Tin Snips, Top Knife, Loop Pile Cutter, Seaming Iron, Strip Cutters, Latex Bottle, Hand Trimmer, Hand Trowels, Hammer Gun, Electric Tacker and Pliers.

   ***Hard Surface Installers***: Torch, Hammer, Chalk Line, Knives, Sharpening Stone, Foxtail, (25') Tape Measure, Stair Tool, Straight Edge, Miter Box, Hacksaw, Awls, Screwdrivers, Dividers, Underscribes, Hand Trowels, Base Lifter, Tin Snips, Hand Rollers and Pliers.

   **b) Employer Furnished:** As applicable to specific job or trade, such as but not limited to:

   ***Safety Equipment***: Safety Glasses, Hard Hat and Ear Protection, etc.  After the Employer provides a hardhat, the employee will be responsible for maintaining that hardhat and will reimburse the Employer the actual cost of a replacement hardhat.  It is understood that normal wear and tear does occur and employees shall not be required to reimburse the Employer for a hardhat that is more than one (1) year old.  Should the employee claim that the loss was not due to his negligence, the Employer agrees to meet with the employee and the Business Representative to settle the dispute.

   ***Tools***: Air Nailer, Power Saws, Power Stretchers, Brooms, Lights (OSHA approved), extension cords, staplers, tile removers, floor sanders, edgers, etc.

   ***Customary Job Sundries & Expendable Supplies***: tack strip, latex, adhesives, seam tape, blades, metal mouldings, nails, caulk, brads, Reserve Butane Tanks, butane gas, screws, etc.

10. The Union agrees that the Employer is in no way bound to keep in his employ any mechanic who proves himself incompetent and/or unsatisfactory in the branch of trade for which he or she is hired.

    **a)** In order to improve the quality and qualifications of workers in the Floor Covering Industry, the Floor Covering Joint Apprenticeship Training Committee will develop and schedule 10 hours of health and safety training and craft specific upgrade training for all journeyman workers to be provided on an annual basis.

    **b)** When an employee is hired and is found to be incompetent or unsatisfactory, he or she, upon his or her discharge, shall be paid for the actual time worked.

    **c)** If the individual dispatched is not known in the industry and is determined to be less than qualified as a journeyman, that individual can be paid at no less than 60% of journeyman scale for a period of no more than 48 hours (two working days). If the Installer is found to be less than journeyman qualified, the evaluator(s) shall make a written report as to his findings and forward this to the Local Union.

    **d)** Should any person referred for employment be terminated for cause, his or her referral privileges shall be suspended for two weeks.  Should the same individual be terminated for cause a second time within a twenty-four (24) month period, his or her hiring hall privileges shall be suspended for two months.  Should the same individual be terminated for cause a third time within a twenty-four (24) month period, his or her referral privileges shall be suspended indefinitely.

    **e)** A termination shall not be considered as "for cause" for purpose of this provision if the person referred for employment has filed a grievance challenging the propriety of his or her termination, unless and until the grievance is resolved in a manner that affirms the termination for cause.  For the purpose of this provision, a decision of the Termination Review Committee and/or an arbitrator shall be final and binding.

    **f)** The provisions in subsections d) and e) notwithstanding, a Termination Review Committee, composed of two (2) members appointed by the Business Manager/Secretary Treasurer of the

District Council and two (2) members appointed by the Employer Association may, upon written request of the applicant, vacate or reduce the period of suspension should the Committee determine, following inquiry or investigation, in its sole and complete discretion, that equity requires such action.

g) Should an employee be terminated "for cause" for failure to perform quality work or work at a level of production that would normally be expected of a journeyman, that employee shall be referred to the Joint Apprenticeship Training Fund for evaluation.  The results of that evaluation shall be provided to the Committee for possible action.  If the Committee determines that the worker should enhance their skills through journeyman upgrade training, that employee shall be eligible for dispatch and remain eligible for dispatch provided that the employee is enrolled in (and actively participating in) the journeyman enhancement course mandated by the Committee.  If the Committee determines that the worker is capable of performing work as a qualified journeyman, the worker shall have their referral privileges restored immediately, if they haven't already been restored in accordance with section e) above.

h) The Floor Coverer's Joint Committee has the authority to establish rules and procedures that facilitate workers being able to restore their referral privileges in the event that workers are terminated "for cause" for reasons other than those outlined in section g) above.

11. No employee may be loaned or transferred by an Employer to another shop unless reported to the Union. It is understood that should employee(s) be loaned, the wages and benefits will continue to be paid by the first Employer until such time as a new dispatch is issued.

12. A lay–off slip will be faxed to the Union upon layoff and shall be given to the employee in an envelope with final payment of all hours worked to all employees whose services are no longer needed.

13. Any employees not being worked shall be returned to the Union to sign the out of work list to maintain a steady supply of workers for other Signatories and organizing our jurisdiction.

14. No contractor signatory hereto shall be permitted to hire Journeyman or Apprentices on a piece-work basis, i.e. work paid for at a rate based upon the amount of work performed rather than on the time employed. No worker can accept piece-work without violating this Agreement.

## ARTICLE 4
## UNION RECOGNITION & TERRITORIAL JURISDICTION

The Employer hereby recognizes the Union as the sole and exclusive bargaining agent of employees classified herein who are engaged to perform work covered by this Agreement in the area defined as Clark, Lincoln, Nye and Esmeralda Counties in the State of Nevada The Employer agrees that if a majority of its employees authorize the Union to represent them in collective bargaining, the Employer will recognize the Union as the NLRA Section 9(a) majority collective bargaining agent for all employees performing work within the jurisdiction of this Agreement. The Employer agrees furthermore upon demand by the Union to submit to a third party card check to determine the majority status of the Union. Any disputes concerning this provision shall be referred to the Floor Coverer's Joint Committee for possible resolution in accordance with the terms of Article 17 of this Agreement. If the Floor Coverer's Joint Committee cannot resolve the dispute, the issue shall be resolved by expedited arbitration under the terms of this Agreement.

## ARTICLE 5
## EMPLOYERS

1. As a condition precedent to qualifying as an Employer under this Agreement every Employer shall:
   a) Have a designated principle place of business located in a zone permissible for the operation of said business, as required by the laws or ordinances of the area in which said business is located;

    **b)** Have a business telephone and fax machine listed in the firm name of the signatory Employer with such telephone and fax installed at the principle place of business to facilitate contacting said Employer for the purpose of administering this Agreement;

    **c)** Have an appropriate State of Nevada Floorcovering Contractor's License, effectively in his possession to employ workmen under this Agreement and have fulfilled the requirements of all Federal, State, County, and City laws applicable to the operation of the Employer's business;

    **d)** Have adequate Unemployment Security and Workmen's Compensation Insurance, which insurance coverage shall be evidenced by a Certificate of Insurance, which the Employer shall keep current at his principle place of business.

    **e)** No job site shall be recognized as a principle place of business under any circumstances.

**2.** In the event the Employer subcontracts any work covered by the terms of this Agreement, it shall only be to contractors who are signatory to this Agreement.

**3.** The individual Employer will give written notice to the Union of any subcontract involving the performance of work covered by this Agreement prior to commencement of work by the subcontractor, and shall specify the name and address of the subcontractor, the name and address of the work and the start date of the work. If thereafter the subcontractor becomes delinquent in the payment of any wages, trust fund contributions, or other fringe benefit payments, the Union shall give written notice of the delinquency to the individual Employer and to the subcontractor. The notice shall specify the name(s) and amounts, if known, of the delinquency. When the notice of delinquency is received, the individual Employer shall pay the amount of the subcontractor's delinquency, which has occurred, on the individual Employer's specific job.

**4.** It is expressly understood that this Article shall apply to all present and subsequently acquired operations of the Employer and to all accretions to the bargaining unit, including, but not limited to, newly established or acquired operations.

## ARTICLE 6
## SAFETY LAWS, REGULATIONS AND REQUIREMENTS

The Employers recognize their obligation to complete and maintain statistical records on industrial accidents and injuries as currently outlined under the Occupational Safety and Health Act. It is the declared intent of the parties to this Agreement to minimize accidents and injuries, and in order to accomplish this goal, establishes the following safety regulations:

**1.** The Employer shall abide by, and require all employees to abide by, all Health & Safety Provisions, Rules and Regulations of any and all Municipal, State and Federal Agencies having issuing authority in the pertinent field of work being performed by the Employer signatory to this Agreement.

**2.** No employee shall be required to lift an unreasonable amount of weight without suitable assistance. Such suitable assistance may be either another person covered by this Agreement or appropriate equipment. This provision shall apply whether at the Employer's shop or at the area or job site where any material covered by this Agreement is to be installed.

**3.** The Employer will implement a Health & Safety program to include, but not limited to personal protective equipment usage. It is understood and agreed that all personal protective equipment (where required) will be provided by the Employer, with the exception of kneepads and boots.

## ARTICLE 7
## OUT-OF-AREA WORK

**Out-of-Area Employers**
When an individual Employer does any work outside of the area covered by this Agreement in a locality where a District Council or Local Union exists, not less than 50% of the employees on such work shall be residents of or employed by the greater percentage of their time in such locality; all others shall be employed form the geographical area where the Employer maintains his principal place of business.

**Out-of-Area Work**

1. When engaged in work outside of the geographic jurisdiction of the Union party to the agreement, the Employer shall comply with all of the lawful clauses of the collective bargaining agreement in effect in said other geographical jurisdiction and executed by the Employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievances set forth therein; provided however, that as to employees employed by such Employer from within the geographic jurisdiction of the Union party to this agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction whichever are more favorable to such employees, and fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents. This provision is enforceable by the District Council or Local Union in which whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable collective bargaining agreement and through the courts, and is also enforceable by the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts.

2. Training Trust Fund contributions shall be made to the Local Union or District Council in whose jurisdiction the work is being performed.

3. Apprentices are not allowed to travel out of Southern Nevada.

## ARTICLE 8
## HOURS OF WORK AND OVERTIME

There are special terms and conditions of employment for Light Commercial/Market Recovery Work and Hotel Remodel Work. Those terms and conditions are covered in Appendix A: Light Commercial/Market Recovery Work and Appendix B: Hotel Remodel work.

1. The Employer shall have the choice between two different workweek shifts. The Employer shall notify the Union prior to manning up the job to the shift that has been chosen for each project and that shift shall be for the duration of the project. A written shift work permit shall be secured from the Union prior to performing any shift job by the Employer or his representative.

2. The normal workweek for each employee will be forty (40) hours per week, Monday through Friday. The workday shall be eight (8) consecutive hours between 5:00 a.m. and 5:00 p.m. with two paid fifteen (15) minute breaks and one-half (½) hour without pay being allowed for lunch. Following the regular lunch break, no employee shall be required to work more than six hours without an additional thirty-minute lunch break. If more than six hours are required, the Employer agrees to provide no less than a thirty-minute lunch period without loss of time to the employees.

   a) The first three hours worked outside the regular eight (8) hour constituted day shift, Monday through Friday, shall be paid at one & one half (1½) times the straight time hourly rate.

   b) Hours worked beyond eleven (11) hours per shift, Monday through Friday shall be paid at the rate of two (2) times the straight time hourly rate.

   c) *Saturday* - Employees shall be employed for no less than four (4) hours. The first eight (8) hours worked on a Saturday day shift shall be paid at one and one half (1½) times the straight time hourly rate of pay. Hours worked beyond eight (8) hours shall be paid at two (2) times the straight time hourly rate.

3. d) *Sundays & Holidays* - Employees shall be employed for no less than four (4) hours. All hours worked shall be paid at the rate of two (2) times the straight time hourly rate.**Shift pay**: Regular shift work between the hours of *5pm to 11pm* will be paid at fifteen percent (15%) over the basic Wage Rate. Regular shift work between the hours of *11pm to 5am* will be paid at one & one half 1½ times the regular wage rates, with the exception of overtime hours. Overtime that falls between these hours will still be paid at the appropriate overtime rate.

4. **Four tens:** Four consecutive ten (10) hour days paid at the straight-time rate with two paid fifteen (15) minute breaks & one-half (½) hour without pay being allowed for lunch Monday through Friday shall be permitted with permission from the Union. If any hours are worked outside of the ten (10) hours allotted per day, all hours will be converted back to a regular eight (8) hour shift and all overtime provisions will apply. With concurrence of the employee(s) of an individual Employer, the starting time and quitting time may be varied upon prior approval of the Union. The intent of this article is to provide three (3) consecutive days off in exchange for what would otherwise fall under the provisions of overtime and or shift pay as detailed in Section 2 & 3 of this Article.

5. Participation of employees on shift work will be on a voluntary basis. No member shall be discriminated against by the Employer for refusing shift work.

6. Employees whom are requested to work on Designated Days Off, Saturdays, Sundays, and/or Holidays, shall be employed for not less than four (4) hours.

7. Any work performed on a Recognized Holiday shall be on a voluntary basis and no worker shall be penalized for choosing not to work said days.

8. Unless employees are given notice, individually, by the end of their regular shift, that their services are not required the following regular work day, all employees reporting for work, at the shop or job site, shall be paid two (2) hours, except when weather, natural conditions, or emergency situation beyond the control of the Employer prohibits the Employer from proceeding with work that day. The prior notice to the employee provided for in this Section may be given in person, in writing, or by telephone.

9. Workers may receive wages only for the actual time worked on the initial day of dispatch by the Union. Computation of hours worked shall be from the time the worker reports for work at Employer's designated place of business.

10. Workmen referred to the Employer's job site who arrive in an unfit condition for work, without proper tools or referrals, or who are not ready to go to work or who are not otherwise qualified, or who are workmen that the requesting Employer has notified the Union in writing of ineligibility for rehire, shall not be entitled to show up time, travel or subsistence, or any other form of compensation by the Employer.

11. **Breaks**: There shall be a fifteen (15) minute paid break for each four (4) hours worked.

12. All employees referred for pre-employment drug testing shall be paid two (2) hours wages and benefits at the regular straight time rate of pay.

**ARTICLE 9**
**WAGES AND CLASSIFICATIONS**

There are special terms and conditions of employment for Light Commercial/Market Recovery Work and Hotel Remodel Work. Those terms and conditions are covered in Appendix A: Light Commercial/Market Recovery Work and Appendix B: Hotel Remodel work.

There shall be four (4) classifications covered by this Agreement:

**Floorcovering Handlers, Apprentice, Maintenance Floorcoverer, Journeyman and Foreman**

There are additional classifications of employees that are contained in Appendix A: Light Commercial/Market Recovery Work.

The hourly minimum Total Package of Wages for each classification shall be as follows:

1. **Floorcovering Handlers:** ***Shall not work with the tools of the trade on any jobsite***. Floorcovering Handlers may pickup, handle and deliver tools & materials utilized by Employers (in a vehicle supplied by Company per Article 28), sweep floors, clean floorcoverings, demo (rip-up only), and remove debris after completion of installation, cut carpet in the warehouse and place materials on the job site. The hourly minimum rate of wages for Floorcovering Handlers shall be 35% of the Basic Wage Rate of a Journeyman. Floorcovering Handlers shall receive Pension contributions at $0.50 per hour and Health & Welfare benefits (limited to major medical only) paid effective August 1, 2005.

2. **Apprentice:** Apprentices shall be paid a progressive increasing scale of wages based on a percentage of Journeyman's Base Wage Rate as follows:

| | | |
|---|---|---|
| 1st **1000 hours: 45%** | 4th **1000 hours: 60%** | 7th **1000 hours: 85%** |
| 2nd **1000 hours: 50%** | 5th **1000 hours: 70%** | 8th **1000 hours: 95%** |
| 3rd **1000 hours: 55%** | 6th **1000 hours: 80%** | |

Apprentices shall receive full benefits including Pension contributions, which shall be based on their respective percentage (rounded to the nearest five cents $.05) of the Journeyman contributions.

   a) The employment of apprentices shall be in accordance with the following ratio: One apprentice to each three regularly employed journeymen or fraction thereof.  In the event of layoff, the ratio of remaining apprentices to journeymen shall not exceed the ratio as stipulated above.

   b) No apprentice shall be recognized as an Employer, nor shall he be allowed to work as a foreman or supervise any other workmen.  Where special conditions warrant, an apprentice in his last six (6) months of training may be allowed to work alone, providing his school and shop records are satisfactory and permission is granted by the Union.

3. **Journeyman:** The term Journeyman means a person who has served a bona fide apprenticeship and has an apprenticeship certificate or who is qualified by experience and ability to perform work with tools and machines as is necessary in the performance of skilled Floorcovering work.  The hourly minimum rate of wages and benefits for Journeymen shall be:

**New Construction and Prevailing Wage Work**

| | Pkg. inc. | Wage | H&W | Pens. | JATC | JC | LMCI | STAR | IP | Total Pkg. |
|---|---|---|---|---|---|---|---|---|---|---|
| 02-01-2010 | $0.62* | $32.78 | $5.40 | $3.82 | $0.40 | $0.05 | $0.05 | $0.05 | $0.25 | $42.80** |
| 02-01-2011 | $0.67 | $32.78 | $5.40 | $4.39 | $0.40 | $0.05 | $0.05 | $0.15 | $0.25 | $43.47** |

**02-01-2012 The parties agree to meet prior to 02-01-2012 to negotiate economic increases for contract years 2012-2014**

   ***Does not include new contribution to Industry Promotion, an Employer Association Fund.**
   **** Includes Industry Promotion Contribution.**

Any Journeyman may be permitted to work for less than journeyman scale while receiving retraining /upgrade training or whose physical condition debars them from earning the current rate of wages, but must first obtain permission from the Union. Permission may be granted only upon agreement of the Union, the Employer and the employee.

4. **Maintenance Floorcoverers:**  Maintenance Floorcoverers work primarily in a Hotel.  They shall maintain a minimum of 32 hours per week.  Recognized day shift hours shall be between 4:00 a.m. and 4:00 p.m. with a regular shift of eight (8) consecutive hours with  paid lunch and two fifteen (15) minute breaks.  A normal workweek shall consist of five (5) consecutive workdays with two (2) consecutive days off.  It is understood that all Holiday pay and Overtime provisions from Article 9 shall apply with the exception of Shift Pay.  Any regular shift work outside the recognized day shift hours shall be paid at ten percent (10%) above Maintenance Floorcoverer regular rate of pay.  Any regular shift work performed on a Saturday or on a Sunday shall be paid at twenty-five percent (25%) above Maintenance Floorcoverer regular rate of pay.

A Maintenance Floorcoverer's duties are hereby limited to patch work, small replacements, and other routine work required to keep the establishment operating. It is understood that under no circumstances is this classification to be used for remodel or construction work.

It is hereby agreed that if this classification is used in a Hotel where there is a current Maintenance Agreement in place the worker shall receive the wage and benefit package that pays the higher amount. The Employers hereby agree to notify the Union about all current Service Contracts and all workers currently performing maintenance work under a Service Contract.

**Wage and Benefit Schedule**

Effective February 1, 2010 the straight time wage rate for Maintenance Floorcoverers shall be $26.23 per hour paid. Maintenance Floorcoverers shall receive the same percentage increases on the same dates as increases provided to Journeymen. Maintenance Floorcoverers shall receive the same benefit contributions received by Journeymen.

No employee who is currently working under a Service Contract shall suffer a reduction in wages or benefits from the implementation of this Agreement.

**5.    Foreman:** When Five (5) or more employees covered under this Agreement are on a job for a five (5) day duration or more, the Employer shall designate one working Journeyman, in good standing with the union, as their Foreman, for the duration of the job. The definition of "Duration of the Job" is the primary contract and does not include change orders or call backs, providing that none of the exceptions require three (3) or more employees or more on each separate operation. All Foremen shall receive fifteen percent (15%) above the Journeyman Total Package Wage.

    **a)**  No worker shall be recognized as a Foreman unless dispatched as such.
    **b)**  Dispatched Foremen shall be paid no less than fifteen percent (15%) over Journeyman scale.
    **c)**  If a worker is no longer needed as a Foreman, a new dispatch will be required or the Foreman premium will still apply.
    **d)**  Foremen shall sign apprentice workbooks on a monthly basis.

No employee presently covered under this Agreement shall suffer a reduction in wages or benefits as a result of this Agreement whether retained by the same Employer or employed by a new Employer.

During the term of this Agreement the Union and/or Trustees may request in writing an increase or decrease in the contribution rates required to a particular benefit fund or funds and a corresponding reduction or increase in the minimum hourly wage rates set forth in this agreement. Such request shall be made in writing at least thirty (30) days prior to the proposed effective date of the change. The Employer will honor such request as of the effective date requested by the Union. As of such date the hourly minimum wage rates set forth in schedule A of this Agreement shall be reduced or increased in an amount equal to the increase or decrease required of the Employer to the particular benefit fund or funds. In any event the Employers Total Package Wage Rate shall not be more than those amounts set forth in this Agreement.

**ARTICLE 10**
**HOLIDAYS**

**1.**    Holidays are defined as follows:

| | | |
|---|---|---|
| **New Year's Day** | **Independence Day** | **Thanksgiving & the day after** |
| **President's Day** | **Labor Day** | **Christmas Day** |
| **Memorial Day** | **Veteran's Day** | |

2. If a Holiday falls on a Sunday, it shall be observed the following Monday. If a Holiday falls on a Saturday, it shall be observed on the preceding Friday. No work under any circumstances shall be permitted on Labor Day without prior approval from the Union. Any work performed on Holidays shall be on a voluntary basis and no worker shall be penalized for choosing not to work said days. All work performed on Holidays shall be paid at double time rates as stipulated in this agreement.

## ARTICLE 11
## INDUSTRY PROMOTION FUND

1. Effective February 1, 2010, all Employers who are signatory to this Agreement shall make contributions to the So. NV PDCA/FCA Industry Promotion Fund established July 1, 1973.
2. It is agreed that this fund is not to be used for any anti-labor activities.
3. Notwithstanding that a Chapter Signatory member may also be a member or proxy to another association of Employer's (a non-So. NV PDCA/FCA Association), the contributions required under this Article 13 shall be fully and exclusively paid to this Industry Promotion Fund, to be administered solely by the So. NV PDCA/FCA, and not prorated with or otherwise disbursed in whole or part to any other such Association.

## ARTICLE 12
## STEWARDS

1. Appointment: Stewards shall be designated on all jobs by the Union Business Representatives. The Employer shall make available to such designated Steward the names and locations of jobs in progress and the number and names of bargaining unit employees employed on such jobs. The intention of this article is to select a Steward from regular employees of the individual Employers. Stewards shall be selected from employees who have worked for the Employer for at least six (6) months. This rule does not apply to new signatory contractors, out of area contractors, or to contractors who have been found to be in violation of the CBA by the joint committee or an arbitrator within the last year.
2. Duties: The duties of the stewards shall be as follows:
   a) To see that the provisions of this agreements are observed;
   b) To receive and endeavor to adjust at the first step, all grievances which may be submitted to him/her;
   c) The Steward is to work with the tools of the trade.
   d) The Union Steward shall be allowed reasonable time per day or shift to carry on any activities necessary to discharge their duties. They shall have authority to check identification of men employed on the job performing work subject to this agreement. The Employer shall not dismiss or otherwise discipline any Steward for properly performing his or her duties, nor shall the Employer dismiss or otherwise discipline any employee for making a complaint to the Steward or giving evidence with respect to an alleged violation of this agreement. The Steward may be relieved of his or her duties at any time at the discretion of the Union. A Shop Steward shall be advised of all shifts.
3. Overtime: Stewards shall be offered first opportunity for all overtime worked for which they are qualified.
4. Layoff: The Steward shall be the last employee to be laid off or terminated (other than for just cause) excluding supervision. The Employer must notify the Union at least 24 hours (one business day) prior to layoff or termination of Steward.

## ARTICLE 13
## TRUST FUND CONTRIBUTIONS AND ADMINISTRATION

There are special terms and conditions of employment for Light Commercial/Market Recovery Work and Hotel Remodel Work. Those terms and conditions are covered in Appendix A: Light Commercial/Market Recovery Work and Appendix B: Hotel Remodel work.

1. For the duration of this Agreement, and any renewals or extensions thereof, the Employer(s) agree to make payments to the following trusted funds for each employee covered by this Agreement:
   a) International Union of Painters and Allied Trades Industry Pension Fund ("Pension Fund");
   b) Finishing Trades Institute ("FTI");
   c) The Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI");
   d) Employee Painters Trust ("Health & Welfare Fund") or designated Health and Welfare fund;
   e) Southern Nevada Floor Coverers Training Trust ("Training Trust");
   f) Floor Coverers Joint Committee ("Joint Committee");

2. **Contributions**:    Starting with the first hour of employment and for each hour or portion of an hour for which an employee receives pay, the Employer shall make contributions to the funds in the following amounts;

   a) **Pension Fund**          $3.82 for Journeymen/Maintenance Floorcoverers *
                                 $0.50 for Floorcovering Handlers
                                 prorated for Apprentices
                        * Increases to $4.39 effective 02/01/2011

   1.) Should a majority of the Journeymen, Foremen and Apprentices covered by this Agreement elect, by a majority vote to increase the pension contribution, the Employer(s) agree to increase the contribution rates as appropriate and to decrease the wage rate set forth in this Agreement by a corresponding amount. This provision does not apply to material handlers; their contribution rate shall stay the same for the duration of this Agreement

   b) **FTI**                   $0.05 for Journeymen/Maintenance /Apprentice Floorcoverers
                                 $0.00 for Floorcovering Handlers

   c) **LMCI**                  $0.05 for Journeymen/Maintenance /Apprentice Floorcoverers
                                 $0.00 for Floorcovering Handlers

   d) **Training Fund**         $0.35 for Journeymen/Maintenance /Apprentice Floorcoverers
                                 $0.00 for Floorcovering Handlers

   e) **Health & Welfare**      $5.30 for Journeymen/Maintenance /Apprentice Floorcoverers
                                 $3.44 for Floorcovering Handlers

   1.) Should the Board of Trustees of the Employee Painters Trust (or designated Health and Welfare Trust Fund) determine that the contribution rate(s) need to increase to maintain benefits, contribution rates shall be increased with a corresponding decrease in the wage rate set forth in this Agreement.

   f) **Joint Committee**       $0.05 for Journeymen/Maintenance /Apprentice Floorcoverers
                                 $0.00 for Floorcovering Handlers

   g) **Floor Coverers STAR**   $0.05 for all classifications except Floorcovering Handlers (no contribution) effective 02-01-2010. Effective 02-01-2011, the contribution increases to $0.15 for New Construction/Prevailing Wage only.

   h) **Industry Promotion Fund**   $0.25 for all classifications except Floorcovering Handlers (no contribution effective 02-01-2010. This is an Employer managed

Fund and is not Jointly Trusted. As such, the provisions of Sections 4,5 and 6 of this Article do not apply.

(Contributions must be made for each hour paid by the Employer, except that, when overtime rates apply, a contribution need be made for only the actual hour(s) worked.)

3.  The payments to the Funds described above shall be made separately to each respective Fund or as otherwise set forth in written instructions that the Employer shall receive from the Administrator(s) of each respective Fund. The Employer hereby understands, accepts, and agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust that has been adopted by the parties to each of the respective Funds identified above, including all amendments and modifications made thereto, and the Employer hereby agrees to be bound by and to said Agreements and Declarations of Trust as though it had actually signed the same.

4.  The Employer shall, with respect to any and all contributions or other amounts that may be due and owing to the Funds stated above (and any and all other affiliated International, Regional or District Council organizations as may be created or established in the future and to which the Employer agrees to contribute), upon receipt of a written directive to do so by the affiliated Funds and organizations, make all required payments, either directly or through an intermediate body, to the "Central Collections" Unit of the International Union and its affiliated Funds and organizations. Such contributions shall be submitted on appropriate forms, in such format and with such information as may be required by Central Collections.

5.  **Locally Administered Trust Funds:** There are multiple Trust funds that have been established by the parties. Administration of those Trust Funds shall be consistent with the terms of Article 17 Sections 2 through 5 of this Agreement. The Purpose, Powers and Duties of said locally administered Trust Funds are contained in their individual Trust Documents.

6.  **Employer Trustees:** The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the Funds listed above such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors, as provided for in the aforesaid trust indentures.

7.  **Union Trustees:** The Union hereby irrevocably designates as its representatives on the Board of Trustees of the Funds listed above such Trustees as are now serving, or who will in the future serve, as Union Trustees, together with their successors, as provided for in the aforesaid trust indentures.

8.  All contributions to the Funds described in Section 1 hereof which are made from hours worked, shall be deemed due and payable on the 15th day of the month following the month in which the hours were worked. The Trustees of each respective Fund may require, and the Trustees shall have the authority to have a certified public accountant audit the payroll, wage, and other relevant records of the Employer for the purpose of determining the accuracy of contributions to each respective Fund.

9.  If the Employer fails to make contributions to any of the Funds described in Section 1 hereof within thirty (30) days after the date required by the Trustees, such failure shall be deemed a violation of this Agreement and the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collecting the payments due, together with the attorneys' fees and such penalties as may be assessed by the Trustees of each respective Fund. The Employer's liability for payment under this provision shall not be subject to or covered by any "no-strike" clause which may be provided or set forth elsewhere in this Agreement and such provisions shall not apply in the event of a violation of this clause. It is understood that Employer shall not be assessed liquidated damages until the expiration of the 30-day period referred to in this paragraph 8.

10. Each of the respective Funds described in paragraph 1 hereof shall, at all times conform with the requirements of the Internal Revenue Code and other applicable laws and regulations so as to enable the Employer, at all times, to treat contributions to them as a deduction for income tax purposes.

11. During the course of negotiations for the 2010-2015 Master Agreement, the parties agreed to create a Safety Training Awards & Recognition Fund. The purpose of this fund is to create additional

incentive for workers to participate in additional Health, Safety and craft specific Upgrade/Enhancement training. Funding for this program shall be in accordance with Article 13, Section 2 g) above.

**a)** The payments to the STAR Fund required above shall be made at the same time and in the same manner as other Trust Fund Contributions included in this Agreement. The Board of Trustees shall administer the STAR Program in accordance with the terms of an Agreement and Declaration of Trust.

**b)** The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

**c)** The Board of Trustees of the STAR Fund shall work with the Board of Trustees of the Joint Apprenticeship and Training Committee (the entity providing training) to coordinate required training to establish eligibility for annual STAR events.

**d)** When the STAR Program is funded to the point where Award Events can be instituted, only workers who have met the required training as outlined in this Agreement shall be eligible to participate in the STAR Program.

## ARTICLE 14
## NO LOCK-OUT OR STRIKE CLAUSE

1. During the term of this Agreement, the Union shall not call, engage in, sanction or assist in a strike against the Employer and the Employer shall not cause a lockout of the employees covered under the terms hereof.

2. All disputes and grievances involving the interpretation or application of the terms hereof shall be handled strictly in accordance with the procedure established under Article 17 (Grievance and Arbitration) of this Agreement.

3. Notwithstanding the above provisions, it is understood, that Employees covered by this Agreement shall have the right to respect any primary picket line validly established by any bona fide labor organization which is legally sanctioned by IUPAT District Council 15 and the Southern Nevada Building and Construction Trades Council.

4. It is mutually understood and agreed that neither the Employer(s) signatory to this Agreement nor IUPAT District Council 15 shall be liable for damages caused by the acts or conduct of any individual or group of individuals who are acting or conducting themselves without the authority of the respective parties provided such action or conduct has not been specifically authorized, participated in, fomented, or condoned by the Employer(s) or IUPAT District Council 15, as the case may be.

## ARTICLE 15
## PAY DAY

1. The Employer shall notify each new employee of the pay period, pay day, and method of payment. Employees shall be paid weekly and no more than three (3) business days may be held back. No Employee will be required to pick up his paycheck on a non-working day or outside of normal working hours.

2. Any employee who is fired or laid-off due to lack of work shall be paid immediately, and any employee who quits shall be paid at the office of the Employer on the next regular payday.

3. In the event of a strike, the unpaid wages of striking employees shall be due and payable in full the next regular pay day.

4. If an Employer does not have an office within the jurisdiction covered by this Agreement, the employee shall be paid at the office of the Local Union.

5. Each employee shall be provided a receipt or check stub indicating straight time hours, overtime hours, travel time, mileage and other reimbursements, amounts of vacation and holiday pay contributed to the trust funds and any and all deductions made from the employee's check each time the employee is paid. Each check stub or receipt is to display dates and pay period it covers.

6.  Any procedures for the payment of wages not set forth in this section shall be governed by the Nevada State Labor Code.

7.  It shall not be considered a violation of the no-strike clause of this Agreement for the Union to withdraw workmen from any Employer, if twenty-four (24) hours after demand has been made upon the Employer:
    a)  The Employer fails to make payment of undisputed wages due to workmen;
    b)  The Employer fails to make payment of fringe benefit contributions;
    c)  The Employer fails or refuses to file contribution report forms;
    d)  The Employer tenders a check in payment of wages or fringe benefit contributions due, and upon presentation for payment to the bank or depository on which it is drawn, payment is not made;
    e)  The Employer fails or refuses to acknowledge properly presented notice of violation.

8.  For employees requested to report to the job site, all paychecks will be delivered to the job site on payday.

9.  It is understood that the normal established payday is every Friday. The exception is if a recognized holiday falls on a Friday, payday will be on the day preceding the holiday.

### ARTICLE 16
### ADMINISTRATIVE FEES CHECK-OFF

1.  There currently exist procedures for deductions from employee paychecks in the following amounts for the following reasons:
    a)  Dues Check-Off      3% of wages
    b)  Organizing Fund     $0.25 per hour worked by Journeymen only

To the extent that an employee provides the Employer with appropriate forms authorizing the deduction of these funds the Employer will continue to deduct, for each such appropriate form, from such employee's wages the amount set forth above and remit it to the Union.  The Union agrees that the vacation money will be used solely to pay to the employee on whose behalf the money was deducted and forwarded to Union.

The Union will indemnify and save the Employer harmless against any and all claims, demands or other forms of liability which may arise out of, or by reason of, any action taken or not taken by the Employer, at the request of the Union, in accordance with the provisions of this article.

2.  When a signatory Employer performs a job within the jurisdiction of a Union affiliated with the IUPAT other than the Union signatory hereto and the bylaws of that other Union contain a provision for administrative dues or business representative "assessment," the Employer shall check-off from the wages of employees covered by this Agreement and employed on that job administrative dues or business representative "assessment" in the amount stated in that other Union's bylaws, and shall remit said amount to that other Union. In that event, that other Union shall be acting as agent of the signatory Union for other purpose of policing and administering this Agreement. In performing the check off, the procedure specified in Section 1 (a) - (c) will be followed, except that it shall be the responsibility of said other Union to notify the Employer in writing of the amount of administrative dues or business representative "assessment" specified in its bylaws, and to submit to the Employer a copy of the bylaws or the applicable bylaw provision. When the signatory Employer performs a job within the jurisdiction of Union affiliated with the IUPAT other than the Union signatory hereto, and the bylaws of that other Union contained no provision for administrative dues or business representative "assessment," the Employer shall continue to be bound by Section 1.
    a)  The obligations of the Employer under Sections 1 & 2 shall apply only to the employees who have voluntarily signed a valid dues deduction authorization card.

**b)** At the time of the employment of any employee, the Union will submit to each such employee for his voluntary signature on dues deduction authorization card in duplicate, one copy of which is retained by the Employer and the other, which is retained by the Union.

**c)** On or before the 10th day of each month, the Employer will submit to the Union a list of all employees covered by the Agreement who have not signed a dues deduction authorization card, together with the number of hours worked by each such employee during the month previous.

**d)** The Union shall indemnify the Employer against any and all liabilities that may arise out of actions taken or not taken pursuant to the provisions of this section or in reliance on any list, notice or assignment furnished to the Employer by the Union.

**e)** The Union shall be authorized, as a matter of convenience for its members, applicants and the Employers, to present to a signatory Employer, during the life of this Agreement, an authorization for any necessary deductions from an employee's earnings for the purpose of bringing an employee's account up-to-date with the Union. All employees shall properly sign or endorse such "payroll deduction" notice. The payroll deduction shall be for a minimum of $20.00 per day for journeymen, $10.00 for apprentices.

## ARTICLE 17
## GRIEVANCE AND ARBITRATION
## JOINT COMMITTEE AND BONDING

**1. Floorcovering Joint Committee Purpose and Business**

**a)** To promote, protect, foster and advance the rights and interests of those engaged in the business and profession of floorcovering and carpet laying in the community, whether as a journeyman, apprentice, or contractor; to improve the conditions under which the industry is carried on; to develop fair and just competitive methods, to perfect methods and rules for the peaceful and just settlement of disputes and misunderstandings in the profession and in the industry; and the profession as against unfair actions and discriminations; to collect and disseminate pertinent and constructive data and information relating to the industry and useful in the profession.

**b)** To promote greater harmony and unity of purpose in the industry as between Employer and employee, and as between both and the public; to establish equitable standards of business relations between the floorcovering craft and the community served; to advocate and encourage trade education and improvement, to establish and enforce rules and principles of conduct and codes of ethics for the government of its members and associates in the industry; to investigate, arbitrate, compromise, adjust and determine all organizations and local contractor associations in the industry, as shall be authorized from time to time by contracts or other existing agreements as between the Union and the Association; to sit as a Board of Arbitration under the terms and conditions of any such contracts or agreement; to receive complaints, hear evidence, make findings, and order and render and enforce decisions hereon; to make and enforce rulings there under and in accordance therewith, and with the findings of said board; and otherwise to perform and carry out all terms and conditions, intents and purposes of any such contract or agreement.

**c)** The foregoing clauses shall be constructed both as objects and powers, but no recital expression or declaration of specific or special powers or purposes herein enumerated shall be deemed to be exclusive; but it is hereby expressly declared that all other lawful purposes and powers not inconsistent with the Area Floorcoverers' Agreement.

**2. Membership and Alternate Members**

The affairs and management of the Joint Committee shall be under the control of six (6) members and six (6) alternate members. Three (3) of the regular and three (3) of the alternate members shall be journeymen members of, and selected by IUPAT District Council 15, and the remaining three (3) regular and three (3) alternate members shall be as follows: Three (3) of the regular and three (3) of the alternate members shall be contractors or contractor representatives who are members selected by the Southern Nevada

PDCA/FCA, this shall constitute the Employer's side of the Committee. Alternate members of the Committee shall be entitled to vote only in the event the regular member for whom he is an alternate is absent. The Joint Committee shall elect from among their members a President and a Secretary. The President and Secretary will have one vote each. The Committee shall not vote upon any subject unless at least two (2) journeymen members and at least two (2) contractor members are present and voting, and shall not vote upon matters of importance unless all six (6) members, or their respective alternates are present. Voting and meeting shall be subject to such further restrictions as shall be fixed from time to time by the Bylaws, or by agreement between District Council 15 and contractors.

**3.  Officers and Duties**

**a)**   The President shall be the executive officer of the Joint Committee and shall preside at all meetings of the Joint Committee and shall be a member ex-oficio of all Committees. He shall, at such times as he shall deem proper, communicate to the Joint Committee such subjects, and make such suggestions as may, in his opinion, tend to promote the welfare and increase the usefulness of the Joint Committee and shall perform such other duties as are necessarily incidental to the office, or as may be prescribed by the Joint Committee. He shall appoint a Committee. He shall sign all instruments that have first been approved by the Joint Committee.

**b)**   The Secretary shall perform the duties of the President in the event of his death or absence, and in the event of permanent termination of the services of the President from any cause, for the balance of his term of office, the Secretary shall be automatically designated as "Acting President". He shall act as assistant to the President with such duties as the Chairman may designate or assign.

**c)**   The Secretary shall give notice of and attend all meetings and keep a record of the proceedings. He shall conduct all correspondence and carry into execution all orders, votes and resolutions requiring communications. He shall have charge of all documents, records and papers, and shall keep them safely. At the discretion of the Joint Committee, he shall prepare an annual report of the transactions and conditions of the Joint Committee.

**d)**   A treasurer may be elected or appointed by the Joint Committee who shall keep an accurate record of all monies received and expended for the Joint Committee and shall make all disbursements authorized and approved by the Joint Committee. Funds shall be drawn only on the signature of the Treasurer and President and all bills must be approved by the endorsement thereon of the President. He shall have charge of the property and other cash funds set up by the Joint Committee for the transaction of current business and regularly occurring expenses. The funds, books, and vouchers in his hands shall at all times be subject to verification by the Joint Committee. At the expiration of his term of office, the Treasurer shall deliver to his successor, all books, monies and other property of the Committee, or in the absence of a Treasurer-elect, shall make delivery to the Chairman.

**e)**   The said officers shall perform such other duties as shall from time to time be imposed or required by the Joint Committee, or as may be prescribed by the Bylaws or within the jurisdictions the specific office.

**f)**   The officers shall be empowered to employ such additional persons as may be necessary to the functioning of the Joint Committee subject to the approval of the expenditure by the Joint Committee.

**g)**   The President of the Joint committee shall preside at all meetings. In the absence of the President, the Secretary shall act; otherwise the Joint Committee may elect a President from their own members.

**h)**   The Joint Committee shall hold regular monthly meetings at a place as designated at 2:00 p.m. on the first Thursday of each month, for the transaction of such business and reports as may properly come before the committee. The Committee shall meet at such other times as may be necessary at the call of the President, or by any three (3) Committee members.

**i)**   Failure of any member of the Committee to attend a meeting hereof shall be explained in writing by such absentee, said communication to be delivered to the Secretary prior to the convening of the meeting. Also when a member of the Committee is unable to attend a meeting,

he shall, as soon as possible, and prior to the holding of said meeting, advise his Alternate of the matter. Those members present shall determine in each instance the excuse for such absence and three consecutive inexcusable absences shall automatically vacate said membership.

**j)** IUPAT District Council 15 of Las Vegas Nevada, and the Southern Nevada PDCA/FCA, shall fill all vacancies of officers from their respective representatives on the Committee for the unexpired term thereof that may occur by reason of death, resignation or otherwise.

**k)** The Joint Committee shall elect from its membership an auditing committee each year to audit the books of the Joint Committee.

**l)** It shall be the duty of the Joint Committee to keep a complete record of all its meetings and acts; to supervise all acts of the officers, committees and employees of the Joint Committee; to act as a board of investigation and/or discipline, or to appoint a committee for such a purpose and impose fines or other penalties.

**m)** Notice of special meetings shall be mailed to each Joint Committee member not less than two (2) days prior to the meeting date and shall state the purpose, time and place of the meeting.

**4. Elections and Term of Office**

**a)** In the election of officers, if the President should be an Employer, then the Secretary must be a Journeyman or vice versa. At each annual election, the office of President and Secretary must alternate, (i.e. if the President is an Employer during the term of office then at the succeeding annual election, the President must be a Journeyman and the Secretary must be an Employer or vice versa.)

**b)** All officers of the Joint Committee shall be elected from official delegates to the Joint Committee.

**c)** Elections shall take place at the first regular Joint Committee meeting in July of each year and such officers shall serve for a term of one year, except as otherwise provided for under the terms of this Agreement.

**5. Procedure**

**a)** Robert's Rules of Order shall be the mode of procedure in the conducting of the meetings of the Joint Committee, governing all parliamentary action.

**b)** The order of business at all meetings of the Board of Directors or Committee shall be as follows:

**1)** Call to order
**2)** Roll Call
**3)** Reading of minutes
**4)** Reports of Officers, Chairman, Secretary, Treasurer (if elected or appointed)
**5)** Correspondence
**6)** Reports of committees
**7)** Unfinished business from previous minutes, officers reports, committee reports, floor
**8)** New business proposed by correspondence, committee, officers
**9)** Elections and Appointments and
**10)** Adjournment

**c)** The order of business may be altered by the Chairman or by vote of the members of the committee for any current meeting only.

**6. Powers and Duties**

**a)** The Committee is hereby vested with power to adjust all disputes and grievance that may arise out of the application or interpretation of this agreement and shall be empowered to interpret and make such rules and regulations as may be necessary to give force and effect the intent, purpose and meaning of this Agreement. The Committee is empowered to have access to all records pertaining to any case where violations of this Agreement are involved. The Committee shall have the power to require all parties to testify under oath, and such parties may be required to subscribe to a written statement of their testimony under oath. All decisions of the Joint Committee shall be final and binding upon both parties to this Agreement. The Committee is

hereby charged with overseeing the collection of contributions to various funds as outlined in this agreement.

**b)** The parties hereto and any party executing a counterpart hereof hereby agrees that any disputes and grievances that may arise under this Agreement or any question of interpretation of any clause of this Agreement shall establish such rules for procedure hereunder as it shall from time to time determine. The Joint Committee is not authorized to arbitrate disputes arising out of negotiations for a new contract of any changes in wage scales, hours of work or working conditions. To be valid and processed as a grievance it must be presented in writing to the party alleged to have violated this Agreement and the secretary of the Floor Coverer's Joint Committee within fifteen (15) days of the event giving rise to the grievance, or within fifteen (15) business days after the Union reasonably could have acquired knowledge of the event giving rise to the grievance

**c)** Contractors who are accused of violation of this agreement are subject to trails by the Joint Committee, with such Joint Committee having power to levy penalties in the way of monetary fines or recommending cancellation of said Employer's agreement to District Council 15. In the event the Joint Committee is required to use court action, to secure compliance with this agreement or to collect fines due, such Employer being sued shall pay, in addition to a court award, court costs and attorney fees incurred by the Joint Committee.

**d)** The Committee shall not have any authority in questions pertaining to renewal or negotiations of a new contract.

**e)** If a decision cannot be reached by the Joint Committee, either because of a tie vote with the committee, or if the Joint Committee fails to make a decision the grievance or the interpretation of the Contract shall be submitted to arbitration in the following manner:

   **1)** Within five days the Joint Committee shall meet and decide upon an arbitrator. The arbitrator shall be selected from seven (7) names, which have been submitted to the Joint Committee by the Board of Appeals in the State of Nevada.

   **2)** The arbitrator that is selected shall be notified and shall hear the case within twenty (20) days and make a decision in writing within twenty (20) days to all three (3) parties concerned.

   **3)** The decision of the arbitrator shall be final and binding.

   **4)** The costs of the arbitrator shall be borne by the Joint Committee totally.

   **5)** If any of the above procedures are not compiled with within the time limits, the Joint Committee shall be free to take whatever economic action they deem necessary in order to resolve this dispute.

   **6)** Union Economic or Legal Action. Such action shall be handled in the following manner:

   **i.)** In the event of a failure by the Employer to pay the wages or fringe benefits by this Agreement, and the Employer raises no question concerning the interpretation or operation of this Agreement, or concerning his obligation to pay, the Union may seek remedies as it sees fit with respect to the Employer and any economic action taken will not be considered a violation of this Agreement. However, the Union may, if so desires, utilize the provisions of this Section with respect to the Employer.

   **ii.)** Before resorting to any economic remedy as above permitted, the Union must give the Employer involved ten business days written notice of its intention to take such economic action. No economic action may be taken by the Union prior, if prior to concerning the interpretation or operation of this Agreement or concerning his obligation to pay wages or fringe benefits in dispute, and had deposited the full amount in dispute with the appropriate Trust Fund to be held by the Trust until the matter is resolved under the procedures set forth within.

**7. Charges and Trials**

   **a)** All charges of contract violation shall be filed with the Secretary of the Joint Committee in triplicate. Such charges shall set forth the section of the agreement, which was violated. The time and place of such violation shall be set forth in addition to a description of the violation.

**b)** Upon receipt of such charges, the Secretary of the Joint Committee shall notify the party being charged, of such charge, with a copy of such original charge enclosed. The Secretary shall advise the accused of a time and place of a Joint Committee hearing. Such hearing shall be not less than five (5) days nor more than ten (10) days after notification. The Secretary shall at the time notify all Joint Committee members of the date of such hearing.

**c)** The Joint Committee shall conduct a hearing on the charges, and if the accused is an employee, the Joint Committee shall refer the charges, along with the Joint Committee findings to District Council 15. District Council 15 shall process the charges and reach a conclusion within thirty (30) days after receipt of such charges. District Council 15 shall within five days after concluding the matter, notify the Joint Committee of the action taken by the Union.

**d)** All fines collected by the Joint Committee shall go into the general fund of such Committee.

**e)** If wages and/or benefits are awarded to a member, the funds shall be paid out of the Joint Committee to the individual once collected by the Joint Committee. In the event monies are recovered for benefits, the Joint Committee will forward said monies to the appropriate Fund(s) on behalf of said individual(s).

**8.   Funding**—The Floorcovering Joint Committee will be funded with a five-cent ($.05) Employer contribution per hour worked and/or paid, collected monthly in the same manner as the other funds, as per Article 16 of this Agreement.

**9.   Bonding -** Effective July 1, 2010, each Employer that is Signatory to this Agreement shall provide to the Floor Coverer's Joint Committee a surety bond in the amount of $25,000 to guarantee payment of Trust Fund obligations.

## ARTICLE 18
## JOB REGISTRATION

**1.   Job Registration -** The Employer shall register all competitively bid jobs with IUPAT District Council 15's office on mutually agreed upon forms. Said registration shall take place after the award of the project but in all cases prior to manning the job. The Employer need not register jobs that require less than 120 man-hours. The Union acknowledges that all information gathered through the job registry shall remain confidential and shall not be disseminated other than in general terms.

## ARTICLE 19
## UNION OFFICIALS - ENFORCEMENT OF AGREEMENT

**1.**  The Business Representative or duly authorized representative of the Union shall be allowed to visit the Employer's shop or jobs for the purpose of ascertaining whether or not this Agreement is being enforced. This right shall be exercised reasonably. The Company shall be notified at the commencement of a shop visit.

**2.**  The Company will provide space on bulletin boards for posting notices of Union business. Such notices must be submitted to the Company for approval before posting.

## ARTICLE 20
## TRANSPORTATION

**1.**  All Employers must furnish adequate transportation to all out-of-town jobs for their employees and where transportation is furnished by the Employer it shall be safe and adequate and shall conform to the requirements of the Nevada Motor Vehicle Department and applicable State Law.

2. Employees may be permitted to use vehicles owned or controlled by such employees for the purpose of transporting employees, provided prior authorization is obtained from the Union. Employer shall cover all employees with industrial accident insurance protection to the full extent provided by the Workmen's Compensation Laws of the State of Nevada, and shall carry public liability, fire, theft, and comprehensive and property damage automobile insurance covering the Employer and the employee owner of the vehicle for any accident occurring during the use of said vehicle. These provisions shall also apply where others use the vehicle owned by the employee in the course of the Employer's business.

3. It shall be optional with the employees whether they will use their own vehicle for such transportation, and the Employer will not discriminate against any employee who does not wish to use his vehicle. Employees will not be permitted to transport materials or shop supplied equipment to or from jobs. This does not apply to incidental sundries that may be kept in a workers toolbox or pouches.

4. All vehicles shall comply with the State safety regulations.

5. Employees operating a vehicle shall have a valid current operator's license applicable to such vehicle.

## ARTICLE 21
## TRAVEL TIME, TRAVEL EXPENSES & SUBSISTENCE

1. **Travel Time** –The established city limits of Las Vegas, North Las Vegas, Henderson, Stateline/Primm and Boulder City shall be travel "free zone".  Should the Employer perform projects in Laughlin or Mesquite that are five (5) days or less in duration, those projects shall be considered to be "free zone" projects.  If projects in Laughlin or Mesquite are greater than five (5) days in duration, those projects will not be considered "free zone" projects and the terms of this Section shall be applied.  It is also understood that the provisions of Section 2 of this Article shall apply to projects performed in Mesquite and Laughlin, regardless of project duration. The Employer is not responsible for any travel time or pay to employees reporting to a jobsite in a travel 'free zone'.

   a) On all other job-sites, travel time shall commence and shall be paid as follows:

      1) The current IRS reimbursement rate per mile (rate for 2010 is 58½ cents per mile) from downtown Las Vegas.

      2) All mileage fees are to be paid by separate check or shown as a separate item on a paycheck.

      3) The Employer agrees to provide full compensation for any employee's out-of-pocket expense incurred during the course of business for the Employer, i.e. parking, bridge tolls, mileage, etc.

      4) Travel time is not to be construed as working time and shall be shown as such on the check, not considered as work time.

      5) When an employee is hired or is currently working on a job-site where travel time is paid and the Employer, or a representative of the Employer, fails to properly notify said employee not to report to the job site, then travel time shall be paid even though the employee performs no work.

      6) If the construction job is classified as a subsistence job, the employee shall receive travel time to the job-site on the first day of hire and travel time at the end of the job or the termination of such employee.

         **i.)** Travel time on subsistence jobs will be determined by the amount of time actually spent driving from Las Vegas Boulevard and Fremont Streets, to the job-site at the legal rate of speed.

         **ii.)** The Joint Committee shall resolve any dispute involving travel pay.

2. **Subsistence**—All jobs located 60 miles or more from downtown Las Vegas shall pay subsistence. If food and lodging are not available at the job site, in addition to subsistence, the employee shall receive travel time as provided for in this agreement to the nearest location that food and lodging are available beyond a free zone of fifteen (15) miles from the job site.

    **a)** The Employer shall be required to provide furnished accommodations (if the employer provides an apartment versus hotel rooms, the employer will be required to provide adequate linens, pots, pans, dishes and cutlery).

    **b)** In addition to providing accommodations, the Employer shall be required to pay subsistence at the following rates: Work performed in Laughlin, Nevada: $25.00 per day that the employee is required to be out of town: Work performed in other jurisdictions: $35.00 per day that the employee is required to be out of town.

        **1)** If the Employer does not provide housing for days on which no work is performed, the Employer shall be required to either provide airline tickets or pay travel time (as defined in Section 1, above) back to Las Vegas.

        **2)** If the Employer does provide housing for days in which no work is being performed, the Employer shall be required to pay subsistence for those days. Furthermore, if the out-of-town work is to exceed one (1) month and the Employer is providing housing in accordance with this Section, the Employer shall provide each employee affected either airline tickets or pay travel time (as defined in Section 1, above) back to Las Vegas for one weekend each month or major portion thereof spent out of town (after the first month). Should the employee choose to travel back to Las Vegas more often than identified in this Section, he/she may do so at his/her own expense and on his own time.

**3.** The Employer shall not be required to pay subsistence for days where the Employer is providing airline tickets or is paying travel time, unless the actual travel includes an overnight layover or actual driving time is twelve (12) hours or more.

**ARTICLE 22**
**MARKING OF VEHICLES**

**1.** All Employers' production vehicles shall be identified with permanently affixed company identification, which shall be prominently displayed and readily visible from both sides of the vehicle. This will be the only acceptable vehicle from which a worker will be allowed to work.

**2.** It shall be the responsibility of the Employer to place and replace identification on all production vehicles. It shall be the Employer's responsibility to remove any identifying markings from vehicles no longer owned or used in the course of business.

**3.** Recognizing that conditions do occur when an Employer is temporarily in need of an extra vehicle, it is agreed that with prior notification to the Union, an Employer may use other vehicles owned by him or said firm or a commercially leased vehicle from recognized leasing agents such as Hertz, Avis, etc., for the transporting of workmen, tools, and materials.

**ARTICLE 23**
**PROJECT AGREEMENT**

There may be established Project Agreements to cover the installation and repair of floorcovering in connection with Building Trades Agreements, single- and multi-family units, and institutional agreements. This agreement will define the project's location, working conditions for the employees and their rate of pay for such project work. For the purposes of this Article, multi-family units are to be defined as structures that are less than three (3) stories above grade in height.

**ARTICLE 24**
**EQUALITY OF OPERATION**

1. Should the Union enter into a contract with any individual Employer, which is more favorable than this contract, then any Employer who establishes and operates in the same manner shall be eligible to apply for and receive the same contract. In the event a more favorable contract as above set forth is limited to a particular geographical area covered by this contract, then, and in that event, the Paragraph shall apply only to work being performed in said geographical area. This clause shall not be applicable to work under project agreements or with respect to work existing in newly organized shops at the time such shops are organized. All signatory Employers will be notified within 30 days in writing of any contracts signed.

2. For the purpose of organizing, District Council 15 may enter into an addendum to this Agreement using terms and conditions outside our Master Agreement allowing a new Employer to complete previously signed contracts or work in progress. Work in progress must comply with prevailing wage laws. Any agreement entered into between Building Trade Councils and property owners, builders and developers must comply with the existing Master Agreement. All new work and contracts entered into after initial signing of the Master Agreement or addendum must be installed under the full terms and conditions of the Master Agreement.

3. The above addendum shall have a duration period of no longer than eighteen (18) months and shall only be offered to Employers with a business address in the geographical area covered by the Union.

4. The above stated addendum shall be a "one time only" offer per Employer and shall be used exclusively for the purpose as stated above.

## ARTICLE 25
## SALE OR ASSIGNMENT OF BUSINESS

1. This Agreement, and any supplements or amendments thereto, hereinafter referred to collectively as "Agreement," shall be binding upon the parties hereto, their successors, administrators, executors, and assigns.

2. The Employer agrees that in the event the Employer's business, in whole or in part, is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceeding, such transferee business and operation shall expressly and in writing assume the terms and conditions of this Agreement for the life thereof.

3. It is understood by this provision that the parties hereto shall not use any leasing or other transfer device to a third party to evade this Agreement. It is further understood that the Employer will only transfer, assign, lease, etc. the business if the transferee agrees to accept and assume, in writing, the Agreement. The Employer shall give notice of the existence of this Agreement and this provision to any purchaser, transferee, lessee, assignee, etc. of the business and operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union, at the time the seller, transferor, or leaser, executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction, not including financial details.

4. To protect and preserve, for the employees covered by this agreement, all work they have performed and all work covered by this agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, owners, or stockholders exercises directly or indirectly (through family members or otherwise) management, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

5.  All charges of violations of Section 4 above shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of grievances and the final binding resolution of disputes. As a remedy for violations of this section, the Joint Trade Board or Arbitrator shall be able, at the request of the Union, to require an Employer to pay 1) to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages those employees have lost because of the violations, and 2) into the affected Joint Trust Funds to which this Agreement requires contributions any delinquent contributions that resulted from the violations. The Joint Trade Board or Arbitrator shall be able also to provide any other appropriate remedies, whether provided by law or this Agreement. The Union shall enforce a decision of the Joint Trade Board or Arbitrator under this section only through arbitral, judicial or governmental (for example, the National Labor Relations Board) channels.

6.  If, after an Employer has violated this Section, the Union and/or the Trustees of one or more Joint Trust Funds to which this Agreement requires contributions, institute legal action to enforce an award by an Arbitrator or the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the Employer shall pay any accountants' and or attorneys' fees incurred by the Union and/or Joint Trust Funds, plus the costs of litigation, that have resulted from such legal action. This Section does not affect other remedies, whether provided by law or this Section, which may be available to the Union and/or the Joint Trust Funds.

## ARTICLE 26
## SAVINGS CLAUSE

 In the event that any provision of this Agreement is finally held or determined to be illegal or void by any applicable judgment or decree of a court of competent jurisdiction as being in violation of any law, ruling or regulation of any governmental authority or agency having jurisdiction of the subject matter of this agreement, the remainder of the agreement shall remain in full force and effect unless the parts so found to be void or illegal are wholly inseparable from the remaining portions of this agreement. The Employer and the Union further agree that if and when any provision of this agreement is held or determined to be illegal or void, they will promptly enter into negotiations concerning the substance thereof.

**ARTICLE 27**
**DURATION OF AGREEMENT**

This Agreement shall be in full force and effective from February 1, 2010 through January 31, 2015 and shall continue thereafter from year to year unless either party serves written notice upon the other no less than sixty (60) days and no more than ninety (90) days prior to the expiration of this Agreement.

**WE HEREBY AGREE TO THE TERMS AND CONDITIONS STATED HEREIN:**

**For the Union**

IUPAT District Council 15

_____
Representative Signature

_____
Title

_____
Print Name

Dated: __ __ / __ __ / __ __

**For the Association**

Southern Nevada PDCA/FCA

_____
Representative Signature

_____
Title

_____
Print Name

Dated: __ __ / __ __ / __ __

**For the Employer**

_____Company Name

_____
Representative Signature

_____
Title

_____
Print Name

Dated: __ __ / __ __ / __ __

**EXHIBIT A**

**VOLUNTARY PAYROLL DEDUCTION
OF POLITICAL CONTRIBUTIONS**

Employers signatory to this Agreement hereby agree to honor authorizations for check-off of political contributions from employees who are union members in the following form, and to forward all contributions and reports on contributions for the previous work month to the District Council as per Article 16 of this Agreement.

AUTHORIZATION FORM FOR CHECK-OFF OF POLITICAL CONTRIBUTIONS

I hereby authorize and direct my Employer to deduct from my pay the sum of five cents (5¢) for each hour that I receive pay, as a contribution to the Political Action Together–Political Committee (PAT-PC) of the International Union of Painters and Allied Trades. I further authorize and direct the Employer to send to District Council 15 on or before the 15th of the month, in accordance with the benefit remittance procedure stipulated in the collective bargaining agreement, the contributions and report on contributions due for the previous work month. Checks shall be made payable to "PAT-PC" and mailed to District Council 15.  I further authorize and direct the Employer to honor any instruction that it may receive from a duly authorized representative of District Council 15 concerning a change in mailing or payment instructions relating to this contribution, should it occur.

This authorization is voluntarily made based on my specific understanding that the signing of this authorization card and the making of these voluntary contributions are not conditions of membership in the Union or of employment by my Employer; that I may refuse to contribute without reprisal; that the PAT-PC and the AFL-CIO COPE are engaged in joint fund raising and use the money they receive for political purposes, including but not limited to making contributions to and expenditures for candidates for federal, state and local offices and addressing political issues of public importance; and that the guideline amount indicated above is only a suggestion and I may contribute more or less and will not be favored or disadvantaged by the Union or my Employer for doing so.

This authorization shall remain in full force and effect until revoked in writing by me.

Name _____ Signature _____

Social Security Number _____

Authorized by International Union of Painters and Allied Trades and the AFL-CIO on behalf of PAT-PC and AFL-CIO COPE.

Contributions or gifts to PAT-PC or AFL-CIO COPE are not deductible as charitable contributions for federal income tax purposes.

# APPENDIX A
## LIGHT COMMERCIAL/MARKET RECOVERY AGREEMENT

The Unionized percentage of the construction industry has shrunk over the last three decades. This Appendix A to the Floor Coverers Master Agreement, intends to create an opportunity to recover lost market share. The parties agree that the following work is not traditional work covered by the Master Agreement: Non-gaming related light commercial construction outside of the resort corridor such as "tilt-up's", "strip malls", tenant improvements, individual units in strip malls, or individual free standing units less than five (5) stories in height. This Memorandum also covers construction of multi-family residential units that are less than five (5) stories in height that exist outside of the resort corridor. (Condominium towers are considered single construction projects and therefore if the construction is more than five stories in height, this Appendix does not apply to that construction.) This Appendix is not intended to give an economic advantage against another signatory contractor. This Appendix does not apply to Prevailing Wage projects, projects covered by a Project Labor/Workforce Stabilization Agreement, projects covered by National Construction Agreements or projects covered by Memorandums of Understanding between the Union and Owners/Developers that guarantee that a particular project will be performed 100% Union. This Appendix extends only to projects described herein on a project-by-project basis and the rates contained in this Appendix shall not apply until the Employer provides written notification to the Union as provided below.

Prior to submitting bids utilizing the rates contained in this Appendix, the Employer agrees that it shall submit to the Union notice in writing of its intent to do so and indicate the name and/or location of the project, name of general contractor and type of construction (ex: tilt-up, strip mall, etc..)

**Residential Work**
It is hereby agreed that all residential work is excluded from this agreement. Residential work, for the purposes of this agreement is defined as single or multi-family residential structures of two (2) stories or less. Both labor and management agree that when market conditions change in the future, we will meet to negotiate terms and conditions with the intention of incorporating this classification into this agreement.

**Light Commercial and Target Market Recovery Work:**

There shall be three classifications covered by this Memorandum:

Light Commercial Journeyman: The wage contained herein for Light Commercial Journeyman shall increase proportionately with wage increases for 70% Apprentice in the Master Agreement. Wages and Benefits for Light Commercial Journeymen are as follows:

**Light Commercial Journeyman**

| | Pkg. inc. | Wage | H&W | Pens. | JATC | JC | LMCI | STAR | IP | Total Pkg. |
|---|---|---|---|---|---|---|---|---|---|---|
| 02-01-2010 | | $22.95 | $5.40 | $0.56 | $0.10 | $0.01 | $0.05 | $0.01 | $0.25 | $29.33** |
| 02-01-2011 | $0.57 | $22.95 | $5.40 | $1.13 | $0.10 | $0.01 | $0.05 | $0.01 | $0.25 | $29.80** |

02-01-2012 **The parties agree to meet prior to 02-01-2012 to negotiate economic increases for contract years 2012-2014**
     **\*\* Includes Industry Promotion Contribution.**

Apprentices: shall receive the same benefits as a Light Commercial Journeyman; however their wages shall be the actual wages contained in the Master Agreement. It is understood that the Employer is not required to utilize Apprentices that are greater than 70% on work covered by this Appendix. The Employer may utilize a ratio of no more than one Apprentice for each LC Journeyman on a particular project.

Floor Covering Handlers: shall receive the same benefits as are outlined in the Floor Coverers Master Agreement. The Employer may utilize Material Handlers on projects covered by this Appendix as "Helpers". Utilization of Material Handlers as helpers on this project is not intended to displace Apprentices from the workforce and therefore, the Employer may utilize a ratio of no more than one Material Handler for each LC Journeyman and Apprentice on a particular project.

Withholdings for Dues Check Off: Dues Check Off shall be withheld from all classifications covered by this Memorandum at the rate of: 3% of Gross Wages in accordance with Article 16 of the Floor Coverers Master Agreement.

Benefit Contributions and Withholdings shall be remitted in the normal fashion with a separate remittance report, in accordance with Article 13 of the Floor Coverers Master Agreement.

Overtime and Shift Premiums for Light Commercial Work.

**Overtime:**  Hours worked Monday through Friday shall be paid at the straight time rate of pay, unless employees have worked in excess of forty (40) hours in a single work week. Hours worked Monday through Friday in excess of forty (40) within a single work week shall be paid at the rate of one and one half (1 ½) times the straight time rate of pay. When there is work performed on Saturday and workers have not worked 40 hours during that work week, any work performed up to the fortieth (40th) hour worked during that work week shall be paid at the straight time rate of pay. Work on Sundays and Holidays shall be paid at two times (2x) the straight time rate of pay.

**Shift Premiums:** Regular shift work between the hours of *5pm to 11pm* will be paid at fifteen percent (15%) over the basic Wage Rate. Regular shift work between the hours of *11pm to 5am* will be paid at thirty-five percent (35%) over the wage rates specific to the project, with the exception of overtime hours. Overtime that falls between these hours will still be paid at the appropriate overtime rate.

In the event that Employers want to pursue projects that are not specifically covered by this Appendix or the Master Agreement, the Employer and the Union shall meet to negotiate terms for those specific projects.

Any terms and conditions that are not covered by this Appendix A are covered by the Floor Coverers Master Agreement.

## APPENDIX B
## HOTEL REMODEL WORK

Due to encroachment of non-union Floor Covering Contractors in Hotel Remodel Work, the parties have agreed to create special terms and conditions for that work. The intent and purpose of this Appendix is to recover work that has been lost to non-union Contractors as well as protect work that is currently being performed by Union Floor Covering Contractors.

The Wage and Benefit Rates for each classification are as follows:

Journeyman:

| | Pkg. inc. | Wage | H&W | Pens. | JATC | JC | LMCI | STAR | IP | Total Pkg. |
|---|---|---|---|---|---|---|---|---|---|---|
| 02-01-2010 | | $27.72 | $5.40 | $3.82 | $0.40 | $0.01 | $0.05 | $0.05 | $0.25 | $37.70** |
| 02-01-2011 | $0.57 | $27.72 | $5.40 | $4.39 | $0.40 | $0.01 | $0.05 | $0.05 | $0.25 | $38.27** |

**02-01-2012 The parties agree to meet prior to 02-01-2012 to negotiate economic increases for contract years 2012-2014**

**\*\* Includes Industry Promotion Contribution.**

Apprentices: shall receive the same benefits as a Journeyman with Pension contributions consistent with the provisions of Article 13 Section 2 b) of the Floor Coverers Master Agreement; however their wages shall be the actual wages contained in the Master Agreement. It is understood that the Employer is not required to utilize Apprentices that are greater than 85% on work covered by this Appendix.

Floor Covering Handlers: shall receive the same benefits as are outlined in the Floor Coverers Master Agreement.

Withholdings for Dues Check Off: Dues Check Off shall be withheld from all classifications covered by this Memorandum at the rate of: 3% of Gross Wages in accordance with Article 16 of the Floor Coverers Master Agreement.

Benefit Contributions and Withholdings shall be remitted in the normal fashion with a separate remittance report, in accordance with Article 13 of the Floor Coverers Master Agreement.

Overtime and Shift Premiums for Hotel Remodel Work.

**Overtime:** Hours worked Monday through Friday shall be paid at the straight time rate of pay, unless employees have worked in excess of forty (40) hours in a single work week. Hours worked Monday through Friday in excess of forty (40) hours within a single work week shall be paid at the rate of one and one half (1 ½) times the straight time rate of pay. When there is work performed on Saturday and workers have not worked 40 hours during that work week, any work performed up to the fortieth (40th) hour worked during that work week shall be paid at the straight time rate of pay. Work on Sundays and Holidays shall be paid at two times (2x) the straight time rate of pay.

**Shift Premiums:** Regular shift work between the hours of *5pm to 11pm* will be paid at fifteen percent (15%) over the basic Wage Rate. Regular shift work between the hours of *11pm to 5am* will be paid at thirty-five percent (35%) over the wage rates specific to the project, with the exception of overtime hours. Overtime that falls between these hours will still be paid at the appropriate overtime rate.

Any terms and conditions that are not covered by this Appendix B are covered by the Floor Coverers Master Agreement.

By executing this Agreement, the undersigned employer(s) agrees to be bound to the Agreements described below and by any and all negotiated extensions, amendments, modifications, or changes to the those Agreements in effect at the execution date hereunder; and, said employer(s) further agrees to be bound to and by the terms and conditions of all successor Agreements, extensions, amendments, modifications or changes to those agreements; and, this Agreement(s) shall remain in full force and effect indefinitely unless notice is given strictly in accordance with the provisions of the agreements below or any successor Agreements, extensions, amendments, modifications or changes to those agreements mentioned below:

**(1)    FLOORCOVERERS MASTER AGREEMENT FEBRUARY 1, 2010 THROUGH JANUARY 31, 2015 BETWEEN  INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES DISTRICT COUNCIL 15 &  SOUTHERN NEVADA PAINTING AND DECORATING CONTRACTORS OF AMERICA/FINISHING CONTRACTORS ASSOCIATION (PDCA/FCA).**

**(2)    GLAZING INDUSTRY  MASTER LABOR AGREEMENT_BETWEEN INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES  DISTRICT COUNCIL 15  GLAZIERS LOCAL UNION 2001 FOR THE PERIOD JULY 1, 2007 – JUNE 30, 2011**
    Note: The Employer(s) agrees to be bound to the terms of this Agreement notwithstanding the termination of the agreement until such time as a successor Master Labor Agreement is negotiated. Should the District Council determine in its sole judgment that a successor agreement has not been negotiated or will not be negotiated it shall have the right upon 30 days written notice to terminate this Agreement and the parties shall negotiate a successor Agreement.

**(3)    PAINTERS & DECORATORS MASTER AGREEMENT JULY 1, 2007 THROUGH JUNE 30, 2011 BETWEEN INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL #15, LOCAL UNION #159 AND THE PAINTING AND DECORATING CONTRACTORS OF AMERICA SOUTHERN NEVADA CHAPTER LAS VEGAS, NEVADA**

    Note:  District Council 15 has agreed to 2 extension of said agreement, one for the period of July 1, 2010 through June 30, 2013 and a second extension for the period of July 1, 2013 through June 30, 2014. The employer hereby agrees to be bound to those extension agreements with WWCCA, Nevada Conference and the Southern Nevada PDCA/FCA which extend the above Agreement.

The employer(s) agree to execute a copy of each said Agreement referred to above.

**The Employer(s) acknowledge receipt of a copy of each agreement.**

**By executing this Agreement, the employer(s) specifically agrees that it is establishing or has established a collective bargaining relationship within the**



meaning of Section 9(a) of the National Labor Relations Act of 1947, as amended. The employer(s) agrees that the Union requested recognition as the Section 9(a) representative and either offered to prove majority support or did submit such proof to the employer(s) which is satisfied that the Union represents a majority of the employees.


Date: 4/13/12

**PHILIP GLEN FRIEDBERG**

For: Olympus Construction LV, Inc.