KAMER ZUCKER ABBOTT
Gregory J. Kamer #0270
R. Todd Creer #10016
Dare E. Heisterman #14060
6325 South Jones Boulevard, Suite 300
Las Vegas, Nevada 89118
Tel: (702) 259-8640
Fax: (702) 259-8646
gkamer@kzalaw.com
tcreer@kzalaw.com
dheisterman@kzalaw.com

Attorneys for Defendants/Counterclaim-Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE EMPLOYEE PAINTERS' TRUST, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> OLYMPUS CONSTRUCTION LV, INC., et al., <br><br> Defendants. <br><br> OLYMPUS CONSTRUCTION LV, INC., et al., <br><br> Counterclaim-Plaintiffs, <br><br> vs. <br><br> BOARD OF TRUSTEES OF THE EMPLOYEE PAINTERS' TRUST, et al., <br><br> Counterclaim-Defendants, | Case No. 2:24-cv-01023-APG-NJK <br><br> **COUNTERCLAIM-PLAINTIFFS OLYMPUS CONSTRUCTION LV, INC., PHILIP GLEN FRIEDBERG, HOSPITALITY RENOVATION SERVICES, LLC, AND MARIE JAN BOWER'S OPPOSITION TO COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS (ECF NO. 19)** |

Counterclaim-Plaintiffs Olympus Construction LV, Inc. ("OCLV"), Philip Glen Friedberg ("Friedberg"), Hospitality Renovation Services, LLC ("HRS"), and Marie Jan Bower ("Bower") (collectively "Employers/Owners"), by and through their counsel of record, the law firm of Kamer Zucker Abbott, oppose Counterclaim-Defendants' Motion to Dismiss Counterclaims (ECF No. 19).

1  This opposition is based upon the pleadings and papers on file herein, the attached memorandum of
2  points and authorities, and any argument the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION AND FACTUAL BACKGROUND.**

This is an action to hold Counterclaim-Defendants ("Trust Funds") accountable for a clear breach of contract that they entered into with "Employers/Owners," to combat an abusive scheme designed to force separately owned and operated business entities to operate as if they are subject to all of the same labor agreements, although factually that is untrue, and to prevent unlawful contributions from the same business entities. While the Trust Funds attempt to argue that their misconduct is somehow preempted by ERISA, such contention is misplaced. As courts have noted in other circumstances, 29 U.S.C. § 1145 may foreclose certain defenses based on the conduct of the parties who negotiated the writing upon which contributions are based (*i.e.*, the employer and the union); however, that statutory section does not prevent an inquiry into the conduct of the Trust Funds in asserting their rights. The Trust Funds may be held liable for their own misconduct in relation to other parties.

Notably, the settlement agreement applicable to the present matter is express and unequivocal in its limitation on the Trust Funds' ability to allege an alter ego/joint or single employer relationship among the Employers/Owners. Specifically, the settlement agreement provides, "[a]ny liabilities to the Trust Funds that may arise out of such Post-Audit Period, including claims for subcontract violations under Article 14 of the MLA where [HRS] was hired to perform covered work under a subcontract to [OCLV], **but EXCLUDING claims related to [HRS] as a related company**, are expressly reserved, not waived, and not released." [emphasis added].

The Trust Funds acted in concert through agents by inducing Employer/Owners to sign the settlement agreement, which required HRS to become a signatory to only the Southern Nevada

Painting, Wallcovering & Drywall Finishing Master Agreement, and agreeing to the limiting language set forth *supra*. Now, however, the Trust Funds intentionally breached the settlement agreement by alleging that HRS and OCLV are alter ego, single, or joint employers, and demanding contributions be paid jointly for work performed by employees of each separate entity.

Utilizing the threat of an otherwise legitimate process—an audit, the collection of trust fund contributions, and a lawsuit to collect the same—results in the extortion of the Employers/Owners to be obligated by agreements to which they are not signatories and/or to be responsible for the contribution obligations of distinct legal entities. Such action by the Trust Funds constitutes an obvious breach of contract, breach of the covenant of good faith and fair dealing, civil conspiracy, and abuse of process.

As a result of the foregoing, Employers/Owners have been damaged by the costs of the audit against them and have been forced to expend resources to hire counsel to defend against the improper lawsuit filed against them and to bring these counterclaims. Employers/Owners seek to remedy that harm through this action. Employers/Owners should be allowed to pursue their claims against the Trust Funds for violations that are separate and independent from any type of claim that would be preempted by ERISA. Dismissal of the counterclaims, especially at this early stage of the case, is wholly inappropriate. Accordingly, the Court should deny The Trust Funds' motion in its entirety.

## II.   STANDARDS FOR MOTIONS TO DISMISS.

A properly pleaded complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While a pleading generally need not contain detailed allegations, it must allege sufficient facts "to raise a right to relief above the speculative level." Id. A pleading will survive a motion to dismiss where "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not

akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). In reviewing a motion to dismiss, the court must accept the facts alleged by the non-moving party as true. Id. Thus, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679.

### III. FACTUAL BACKGROUND.

In view of the foregoing standard of review, the Court should assume the veracity of the following factual allegations made in support of the counterclaims set forth by Employers/Owners in their initial pleading [ECF Nos. 11 and 13]:

1. On or about September 15, 2016, the International Union of Painters & Allied Trades District Council 15, Painters Local 159 ("Union") initiated a grievance against OCLV, alleging that HRS, is a "sister company" to OCLV, and thereby a signatory to the master labor agreement and obligated to the terms and conditions set forth therein ("Grievance").

2. Thereafter, on or about September 20, 2016, the Employee Painters' Trust, Painters & Floorcoverers Joint Committee, Painters, Glaziers & Floorcoverers Joint Apprenticeship & Journeyman Training Trust, Painters, Glaziers & Floorcoverers Safety Training Trust Fund, Painters Organizing Fund, Southern Nevada PDCA/FCA Industry Promotion Fund, International Union of Painters & Allied Trades Industry Pension Fund, IUPAT Finishing Trades Institute, Painters & Allied Trades Labor Management Cooperation Initiative, and IUPAT Political Action Together Fund initiated a payroll compliance audit of OCLV ("Audit").

3. As part of the Audit, the Employee Painters' Trust, Painters & Floorcoverers Joint Committee, Painters, Glaziers & Floorcoverers Joint Apprenticeship & Journeyman Training Trust, Painters, Glaziers & Floorcoverers Safety Training Trust Fund, Painters Organizing Fund, Southern Nevada PDCA/FCA Industry Promotion Fund, International Union of Painters & Allied Trades

1    Industry Pension Fund, IUPAT Finishing Trades Institute, Painters & Allied Trades Labor
2    Management Cooperation Initiative, and IUPAT Political Action Together Fund sought records and
3    documents pertaining to HRS, which they alleged was a "possible closely related company" to OCLV.

4        4.      OCLV and HRS disputed that they had a "closely related company" or "sister
5    company" relationship. Indeed, Friedberg sold HRS on or about January 1, 2014, through an arm's
6    length transaction for valuable consideration to Bower, with whom he has never had a familial
7    relationship of any kind.

8        5      The Union, OCLV, and HRS eventually reached a resolution of their dispute and
9    entered into a settlement agreement executed by the parties therein in June 2017.

10      6.      As part of the settlement agreement among the Union, OCLV, and HRS, HRS agreed
11   to be bound by all the terms and conditions of the July 1, 2015 – June 30, 2019 Painters & Decorators
12   Master Labor Agreement between the International Union of Painters and Allied Trades District
13   Council #15, Local Union #159 and the Painting and Decorating Contractors of America Southern
14   Nevada Chapter, Las Vegas, Nevada ("Master Labor Agreement").

15      7.      HRS further agreed, and did in fact, take the necessary steps to sign the necessary
16   documents pertaining to the Master Agreement, as well as any corresponding Trust Fund documents.

17      8.      HRS is not a signatory to any other collective bargaining agreement.

18      9.      The Union, OCLV, and HRS expressly agreed as part of their settlement agreement
19   that terms and conditions of their settlement agreement, or performance of the same, must not be
20   construed as the admission of or creation of a joint or single employer relationship between OCLV
21   and HRS and that such relationship was specifically disclaimed by all of the parties.

22      10.     Concurrent to the settlement of the Grievance, OCLV and HRS entered into a
23   settlement agreement with the Employee Painters' Trust, Painters & Floorcoverers Joint Committee,
24   Painters, Glaziers & Floorcoverers Joint Apprenticeship & Journeyman Training Trust, Painters,

Glaziers & Floorcoverers Safety Training Trust Fund, Painters Organizing Fund, Southern Nevada PDCA/FCA Industry Promotion Fund, International Union of Painters & Allied Trades Industry Pension Fund, IUPAT Finishing Trades Institute, Painters & Allied Trades Labor Management Cooperation Initiative, and IUPAT Political Action Together Fund.

11. Per the terms of the settlement agreement, the Employee Painters' Trust, Painters & Floorcoverers Joint Committee, Painters, Glaziers & Floorcoverers Joint Apprenticeship & Journeyman Training Trust, Painters, Glaziers & Floorcoverers Safety Training Trust Fund, Painters Organizing Fund, Southern Nevada PDCA/FCA Industry Promotion Fund, International Union of Painters & Allied Trades Industry Pension Fund, IUPAT Finishing Trades Institute, Painters & Allied Trades Labor Management Cooperation Initiative, and IUPAT Political Action Together Fund expressly reserved the right to conduct a payroll compliance review and/or audit of OCLV for the post-Audit period.

12. However, per the express terms of the settlement agreement, "[a]ny liabilities to the Trust Funds that may arise out of such Post-Audit Period, including claims for subcontract violations under Article 14 of the MLA where [HRS] was hired to perform covered work under a subcontract to [OCLV], **but excluding claims related to [HRS] as a related company**, are expressly reserved, not waived, and not released." [emphasis added].

13. Despite the Union's disclaimer of any related entity status between OCLV and HRS, and the Employee Painters' Trust, Painters & Floorcoverers Joint Committee, Painters, Glaziers & Floorcoverers Joint Apprenticeship & Journeyman Training Trust, Painters, Glaziers & Floorcoverers Safety Training Trust Fund, Painters Organizing Fund, Southern Nevada PDCA/FCA Industry Promotion Fund, International Union of Painters & Allied Trades Industry Pension Fund, IUPAT Finishing Trades Institute, Painters & Allied Trades Labor Management Cooperation Initiative, and IUPAT Political Action Together Funds' express exclusion of HRS as a related company, the Trust

Funds have audited and brought the instant lawsuit against OCLV and HRS, alleging, among other things, that OCLV and HRS are a single employer, joint employers, or alter egos of each other.

14. The breach of the settlement agreement by the Employee Painters' Trust, Painters & Floorcoverers Joint Committee, Painters, Glaziers & Floorcoverers Joint Apprenticeship & Journeyman Training Trust, Painters, Glaziers & Floorcoverers Safety Training Trust Fund, Painters Organizing Fund, Southern Nevada PDCA/FCA Industry Promotion Fund, International Union of Painters & Allied Trades Industry Pension Fund, IUPAT Finishing Trades Institute, Painters & Allied Trades Labor Management Cooperation Initiative, and IUPAT Political Action Together Fund has been compounded by the overreaching of their agent, Berry & Company CPAs, LTD, in the wholesale misclassification of employees, descriptions of the work performed, and application of collective bargaining provisions to non-signatory employers, resulting in an exorbitant inflation of allegedly owed contributions.

15. Due to the breach of contract and bad faith conduct of the Trust Funds, Employers/Owners have been damaged and will continue to incur further damages during the course of this litigation. The acts of the Trust Funds alleged above were characterized by fraud, oppression, or malice, as well as a conscious disregard for the rights of the Owners/Employers, and Owners/Employers are therefore entitled to recover punitive damages.

IV. **LEGAL ARGUMENT**.

  A. ***The Trust Funds' View Of ERISA Preemption Sweeps Too Broadly.***

The Trust Funds argue that each of the Employers/Owners' counterclaims are preempted by ERISA which preempts state law and common law causes of action that "relate to" or have a "connection with" an employee benefit plan. [Motion at 14.] They contend that the focus of this analysis is "whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival." [Id.] However, ERISA does not preempt the

Employers/Owners' counterclaims because their counterclaims are clearly not premised on the existence of an ERISA plan and the existence of the plan is clearly not essential to the counterclaims' survival. Instead, the counterclaims are premised upon the existence of a *settlement agreement* between the parties that is *independent* of any ERISA plan.

The Ninth Circuit Court makes clear that when a claim is based upon a breach of a separate contract – instead of the terms of an ERISA plan – it is not preempted. Marin General Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941 (9th Cir. 2009) (finding claims based on a separate contractual agreement between the parties were not preempted and explaining that such claims did not rely on and were independent of any duty under an ERISA plan).

In Marin, a hospital sued in state court for breach of an implied contract, breach of an oral contract, negligent misrepresentation, quantum merit, and estoppel. These claims arose out of a telephone conversation in which one defendant allegedly agreed to pay 90% of a patient's hospital charges. The defendant paid the hospital part of the patient's charges as an assignee of the patient's rights under his ERISA plan. The hospital's lawsuit sought an additional payment, in an amount necessary to bring the total payment up to the promised 90%. The hospital did not contend that the additional amount was owed under the patient's ERISA plan; instead, it contended that the amount owed was based upon its oral contract with the defendant. The Ninth Circuit Court determined that the hospital's claims were not preempted by ERISA because they were based upon a *different* obligation than the plan – the alleged oral contract. "Since the state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they are based on 'other independent legal dut[ies].'" Id.

Similarly, in Kos v. Aetna Health, Inc., No. 3:17-cv-00217-RCJ-VPC, 2017 BL 202493, *3-4 (D. Nev. June 14, 2017), a plaintiff's claims of intentional and negligent misrepresentations were not preempted because they did not "arise under the Plan" and were "not based on the Plan at all."

1   Instead, these claims were based on statements made by insurance representatives prior to a patient's
2   treatment. Id. at *3. Additionally, the plaintiff's contract claims relating to an oral contract, as opposed
3   to the plan, were not preempted because they "would exist whether or not an obligation under an
4   ERISA plan existed." Id. at *4 (Judge Jones denying in part motion to dismiss).

5   Here, the Employers/Owners' counterclaims are based only upon a settlement agreement
6   between the parties that is independent of any ERISA covered plan. As such, the counterclaims for
7   breach of contract, breach of the covenant of good faith and fair dealing, civil conspiracy, and abuse
8   of process are not preempted. See AFL Hotel & Restaurant Workers Health & Welfare Trust Fund v.
9   Bosque, 132 P.3d 1229, 1235-36 (Haw. 2006) (finding state law claims not preempted where liability
10  is dependent on a contractual agreement which was independent of the rights and obligations
11  established by the plan and where the "sole issue is whether AFL is entitled to monetary damages
12  based on the breach of a contractual agreement."); Cedars-Sinai Med. Ctr. v. Nat'l League of
13  Postmasters of U.S., 497 F.3d 972, 978 (9th Cir. 2007) (reversing district court ruling that claims of
14  breach of contract and negligent misrepresentation were preempted by Federal Employee Health
15  Benefits Act where hospital was suing another party under an independent contractual obligation
16  between the parties, relying upon ERISA caselaw).

17  In adjudicating the Employers/Owners' counterclaims, this Court will not be called upon to
18  interpret ERISA law or any ERISA plan. Instead, the Court will be asked to interpret the language of
19  the parties' contractual promises to each other in the settlement agreement. Interpreting and enforcing
20  a settlement agreement clearly requires "applying principles of contract law as opposed to interpreting
21  [ERISA] statutory provisions." Bricklayers and Allied Craftworkers Local 2 v. DiBernardo Tile and
22  Marble Co., No. 1:08-CV-00044 (LEK/RFT), 2012 BL 207770, *3 (N.D.N.Y. Aug. 14, 2021) (finding
23  it lacked jurisdiction to hear a dispute over an ERISA settlement agreement and citing LaBarbera v.
24  Dasgowd, Inc., No. CV-03-1762, 2007 WL 1531895, at *2 (E.D.N.Y. May 22, 2007) (finding no

subject matter jurisdiction to enforce an ERISA settlement and noting that "[a]ctions to enforce settlement agreements are, in essence, contract actions which are governed by state law"); Bryant v. Emigrant Mortg. Co., No. 10-CV-0102, 2011 WL 3876978, at *6 (E.D.N.Y. Aug. 31, 2011) (stating that disputes over federal settlements, even those that resolve federal claims, are "quintessentially ... of contractual interpretation and performance and wholly governed by state law"); Stone v. Credit Solutions Corp., No. 09-CV-281A, 2011 WL 2747572, at *2 (W.D.N.Y. June 21, 2011) (finding jurisdiction lacking to enforce a settlement agreement when the underlying action involved a federal claim)).

**B.    The Counterclaims Are Not Preempted by the LMRA.**

The Employers/Owners counterclaims are also not preempted by the LMRA because they are not based on rights created by a collective bargaining agreement and are not substantially dependent on the interpretation of such an agreement. Instead, the counterclaims are specifically based upon and dependent upon an interpretation of a *settlement agreement* entered into by the parties. Brown v. Bechtel Nev. Corp., Case No. 2:12-cv-02129-GMN-NJK, 2013 BL 48658, at *4 (D. Nev. Feb. 21, 2013) ("separate agreements that do not rely on, or require interpretation of, the collective bargaining agreement are independent of the collective bargaining agreement and do not fall within the ambit of § 301").

In analyzing the counterclaims, the Court will not be called upon to interpret a CBA and will instead be called upon to determine what the parties meant by the settlement agreement's language: "[a]ny liabilities to the Trust Funds that may arise out of such Post-Audit Period, including claims for subcontract violations under Article 14 of the MLA where [HRS] was hired to perform covered work under a subcontract to [OCLV], **but excluding claims related to [HRS] as a related company**, are expressly reserved, not waived, and not released." Counterclaim at ¶ 27 [emphasis added]. Because the counterclaims arise under a separate, independent agreement, they are not preempted by Section

301. Id. at *4; see also Obiajulu v. Rite Aid Corp., No. 2:04-CV-01520-BES (LRL), 2006 BL 92171, at *6 (D. Nev. June 13, 2006) (finding that the plaintiff's fourth claim was not preempted by Section 301 because it "does not reference the CBA, nor is the analysis of [it] . . . dependent on the CBA.").

### C.  Punitive Damages Are Recoverable In Civil Conspiracy and Abuse of Process Claims.

The Trust Funds argue that the Employers/Owners' prayer for punitive damages should be dismissed because punitive damages are not available in ERISA cases. Yet this prayer for relief is not based upon a violation of ERISA. It is based upon the counterclaims of civil conspiracy and abuse of process – two claims that absolutely permit punitive damages. See Bull v. McCuskey, 96 Nev. 706, 711, 615 P.2d 957 (1980) ("In an action for the breach of an obligation not arising from contract, punitive damages may be recovered where the defendant has been guilty of oppression, fraud or malice, express or implied."); NRS 42.005(1) ("Except as otherwise provided in NRS 42.007, in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant.").

### D.  The Breach of Contract Claim Is Sufficiently Pled

The Trust Funds next argue that Employers/Owners' counterclaims should be dismissed because they are based upon the "mistaken belief" that the settlement agreement released all future claims. [Motion at 20.] Yet, this is not what the counterclaims assert at all. Instead, the counterclaims are based upon the Trust Funds' agreement not to assert that HRS and OCLV are related entities. Contrary to the Trust Funds' argument, the parties expressly agreed to waive and release future claims against HRS as a related entity. See Counterclaim at ¶ 27.

While the Trust Funds argue that the parties never intended to "insulate" the Employers/Owners from alter ego claims "for all time," [Motion at 21] this is a question of fact which

cannot be resolved on a motion to dismiss. The Trust Funds do not contest the validity of the settlement agreement, and the Employers/Owners have properly alleged a breach and damages. As such, they have satisfied their burden in pleading a breach of contract claim. See Cass, Inc. v. Prod. Pattern & Foundry Co., 3:13-CV-00701-LRH-WGC, 2015 BL 207547, *2-4 (D. Nev. June 26, 2015) (denying motion to dismiss as to contract claims). While the express language of the settlement agreement is clear and should result in liability to the Trust Funds, to the extent the Trust Funds are arguing that the language in issue – "*but excluding claims related to [HRS] as a related company,*" is ambiguous, such a dispute cannot be decided on a motion to dismiss. See P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913, 916 (Fed. Cir. 1984) (holding that in the absence of ambiguity, contract interpretation is an issue of law for the court, and may be decided on a motion to dismiss); Shelton v. Shelton, 78 P.3d 507, 510 (Nev. 2003) (A contract term is ambiguous if it is "reasonably susceptible to more than one interpretation."). Ultimately, the applicable settlement agreement was entered into by the parties and applies to the parties. If anything, the plain language of the agreement and the Trust Funds breach of the same should result in judgment in favor of the Employers/Owners.

### E. In The Unwarranted Event The Counterclaim-Defendants' Motion Is Granted, The Court Should Allow Counterclaim-Plaintiffs To Amend Their Pleadings.

While Counterclaim-Plaintiffs contend that they have sufficiently pled their causes of action, to the extent the Court disagrees, Counterclaim-Plaintiffs respectfully request the opportunity to amend their pleading to further clarify and support their causes of action. Leave to amend should be freely given when justice so requires. See Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655 , 658 (9th Cir. 1992). Given the complexities of this case and the claims made therein, allowing for such an amendment would be warranted here.

**V.    CONCLUSION.**

In view of the foregoing, the Court should deny the Counterclaim-Defendant's motion to dismiss in its entirety. The counterclaims raised by the Employers/Owners are distinct and independent from any claims that would be preempted by ERISA. Furthermore, the Employers/Owners have pleaded sufficient details to demonstrate that the Counterclaim-Defendants have indeed breached an agreement in bad faith and should be held liable for the same. Consequently, denial of the motion to dismiss is warranted here.

DATED this 22nd day of October, 2024.

Respectfully submitted,

KAMER ZUCKER ABBOTT

By:    /s/ R. Todd Creer
Gregory J. Kamer #0270
R. Todd Creer #10016
Dare E. Heisterman #14060
6325 South Jones Boulevard, Suite 300
Las Vegas, Nevada 89118
Tel: (702) 259-8640
Fax: (702) 259-8646

*Attorneys for Counterclaim-Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 2024, the undersigned employee of Kamer Zucker Abbott served a copy of the foregoing **COUNTERCLAIM-PLAINTIFFS OLYMPUS CONSTRUCTION LV, INC., PHILIP GLEN FRIEDBERG, HOSPITALITY RENOVATION SERVICES, LLC, AND MARIE JAN BOWER'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS** through the Electronic Case Filing system of the United States District Court, District of Nevada to:

Wesley J. Smith, Esq.
Kevin B. Archibald, Esq.
Dylan J. Lawter, Esq.
Christensen James & Martin, Chtd.
7440 West Sahara Avenue
Las Vegas, Nevada 89117

*Attorneys for Plaintiffs/Counterclaim-Defendants*

Kurt C. Faux, Esq.
Willi H. Siepmann, Esq.
Jordan F. Faux, Esq.
The Faux Law Group
2625 North Green Valley Parkway, #100
Henderson, Nevada 89014

*Attorneys for Defendant Great American Insurance Company*

By:   /s/R. Todd Creer
      An employee of Kamer Zucker Abbott