**CHRISTENSEN JAMES & MARTIN, CHTD.**
Daryl E. Martin (6735)
Wesley J. Smith (11871)
Dylan J. Lawter (15947)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Email: dem@cjmlv.com, wes@cjmlv.com, djl@cjmlv.com
*Attorneys for Plaintiffs Board of Trustees of the*
*Employee Painters' Trust, et al.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE EMPLOYEE PAINTERS' TRUST, et al., <br><br> Plaintiffs, <br> vs. <br><br> OLYMPUS CONSTRUCTION LV, INC., et al, <br><br> Defendants. | CASE NO.: 2:24-cv-01023-APG-NJK <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE DEFENSES** |

The trustees of the Employee Painters' Trust, et al. ("Plaintiffs" "Trusts" or "Plans"), hereby reply in support of their Motion to Strike Defenses [ECF No. 18].

## I.   INTRODUCTION / PROCEDURAL HISTORY

Plaintiffs' Motion made numerous arguments and offered various reasons to strike Defendants' boilerplate affirmative defenses. Plaintiffs' primary argument hinges on 29 U.S.C. § 1145 ("MPPAA" or "section 515 of ERISA"), which rendered all but two affirmative defenses to an ERISA collection action—illegality and fraud in the execution—legally insufficient. *MacKillop v. Lowe's Market, Inc.*, 58 F.3d 1441, 1443-44 (9th Cir. 1995). The MPPAA restricted the availability of defenses specifically "to simplify trust fund collection actions." *Southwest Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986).

Defendants do not dispute any of this. In fact, neither the *Mackillop* case nor the word "abolish" are mentioned in the Opposition [ECF No. 25] or Joinder [ECF No. 27].[1] In the

---

[1] The affirmative defenses listed by Great American are not identical to those of the other Defendants. Great American's Joinder may therefore be legally defective, in whole or part. *See United States v. Cerna*, No. CR-08-0730 WHA, 2011 U.S. Dist. LEXIS 12893, 2011 WL

-1-

Opposition, Defendants discuss motions to strike defenses only in a general sense, with essentially zero discussion of the impact of the MPPAA, which Defendants' deigned to mention only to acknowledge the elements of Plaintiffs' primary ERISA claims. Also missing from the Opposition are responses to many arguments relating to specific defenses or groups of defenses. For example, Defendants failed to respond to Plaintiffs' arguments regarding the failed attempt by HRS to plead a fraud in the execution defense (the defense is invalid because it was pleaded without the particularity required by Fed. R. Civ. P. 9(b), and because Defendants' Answers confirm that HRS understood it was executing a collective bargaining agreement). Just as the Defendants waived the defense of illegality by failing to plead it, by failing to respond to defense-specific arguments made by the Plaintiffs, the Defendants conceded in their Opposition that most of the defenses included in the boilerplate lists (including fraud in the execution) should be stricken.

In the Opposition, Defendants discussed legal standards generally,[2] but then focused on attempting to save a small list of so-called defenses. *See* ECF No. 25 at 9:14-18 and 10:19–11:17, where they argue that the following defenses should survive the Motion to Strike:

- Failure to state a claim on which relief can be granted (No. 1)[3]
- Estoppel (No. 2)
- Laches (No. 3)

---

500229, at *12 (N.D. Cal. Feb. 9, 2011) (motion to join should not "leave the [court] guessing as to the reasons why the motions sought to be joined apply"); *United States v. Harris*, 932 F.2d 1529, 1533 (5th Cir. 1991) (under Fed. R. App. P. 28(i), arguments adopted must be "equally applicable" to both the party making them and the party who joins in them).

[2] It is noteworthy that in discussing the legal standard for motions to strike defenses the Defendants chose not to grapple with the MPPAA or other issues raised in Section II.B. of Plaintiffs' Motion to Strike Defenses. Defendants cite *Banks v. Trans Union, LLC*, No. 2:21-cv-01580-CDS-EJY, 2024 BL 225387, at *2 (D. Nev. July 02, 2024) and argue, "If the court finds 'any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion.'" But there can be no such doubt here because the Ninth Circuit has plainly held that all but two affirmative defenses were abolished by the MPPAA. Furthermore, the MPPAA requires consideration of issues not presented by any other type of case—considerations that weigh heavily in favor of the relief requested by the Plaintiffs.

[3] Unless otherwise stated, numbers used to refer to defenses match those found in the Western National column of the chart appearing in Plaintiffs' Motion to Strike Defenses at pgs. 2-4.

- HRS's signature on the Master Agreement was secured through fraud (OCLV/Friedberg/HRS/Bower No. 4)
- Accord & satisfaction, release and waiver (No. 5)
- Unclean hands (No. 6)
- Plaintiffs' claims are barred by their own intentional acts and/or omissions (No. 7)
- Defendant complied with applicable agreements (No. 8)
- damages claimed by Plaintiffs resulted from acts or omissions of persons other than Defendant or its agent (No. 12)
- No agreement provides for contributions by Defendant as asserted by Plaintiff (No. 14)
- Defendants operated as separate and distinct entities (No. 15 for OCLV/Friedberg/HRS/Bower)
- Defendant is not an employer required to make contributions by not being a signatory to certain agreements or documents (No. 21)
- OCLV and HRS were excused from performing any contractual obligations owed to Plaintiffs (No. 22)
- OCLV and HRS fulfilled their duties under Nevada and federal law and performed all duties owed to Plaintiffs (No. 23)
- Plaintiffs breached their own contractual obligations to OCLV and/or HRS, and, as a result, Defendant is released or discharged from any obligations to Plaintiffs (No. 26)
- Plaintiffs' Complaint is barred in whole or in part because Plaintiff cannot satisfy the burden of proof as to damages (No. 34; OCLV/Friedberg No. 21)
- Plaintiffs' Complaint is barred because the audit expenses and attorney's fees and costs claimed by Plaintiffs were unreasonably incurred (No. 35; OCLV/Friedberg No. 22)

These so-called defenses may broadly be described as factual disputes: 1) related to the alter ego allegations made by the Plaintiffs; 2) claiming that OCLV and HRS performed the obligations stated in the painting and floorcovering collective bargaining agreements ("CBAs"); 3) related to what the Defendants characterize as "Plaintiffs' own actions and misconduct" generally; and 4) factual disputes stated in counterclaims alleging the Plaintiffs breached the terms of a settlement agreement entered into with HRS.

Binding precedents clearly hold that such purported defenses are not legally viable, not only because they were abolished by the MPPAA, but also because factual disputes do not qualify as affirmative defenses. Striking them from the Answers, as requested by the Plaintiffs, will not deprive the Defendants of the opportunity to present competing evidence regarding the elements of Plaintiffs' claims. But neither factual denials nor competing evidence are affirmative defenses. By granting the Motion to Strike Affirmative Defenses, the Court will simply be following binding Ninth Circuit precedent, which cannot reasonably be viewed as prejudicing the Defendants. In contrast, denying the Motion to Strike Defenses would work

-3-

1 further harm upon the Plaintiffs, who would then be required to litigate the validity of legally
2 insufficient affirmative defenses that Congress abolished.

## II.

## ARGUMENT

**A. The Motion to Strike must be granted as to the defenses about which the Defendants offered no argument in their Opposition.**

In the Opposition, Defendants made no arguments to preserve the following defenses:

- Plaintiffs audit demand exceeds the scope of its auditing authority (No. 9)
- Plaintiffs are not entitled to recover costs, disbursements, attorney's fees, interest, liquidated damages, or any other penalties available under ERISA § 502(g) (No. 10)
- Plaintiffs' Complaint has been brought without reasonable ground and/or to extort, harass, or oppress Defendant (No. 11)
- Defendant was not the proximate cause of any damages sustained by Plaintiffs (No. 13; Great American No. 14)
- No claim may be made against the bond(s) for any obligation incurred by an entity not named as the principal on the surety bond(s) (No. 16; Great American No. 5)
- Plaintiffs' Complaint is barred in whole or in part by the statute of frauds (No. 17)
- The NLRB possesses and the Court lacks jurisdiction to hear claims regarding jurisdictional disputes between unions over covered work (No. 18)
- Lack of consideration to form a contract (No. 19)
- Defendant has fully performed any and all of its obligations as set forth in the bond(s) (No. 24; Great American No. 11)
- Plaintiffs' Complaint is barred in whole or in part because Plaintiffs are not the beneficiaries under the bond(s) at issue (No. 27; Great American No. 15)
- Failure to mitigate damages (No. 28)
- Plaintiffs failed to give timely notice of any breach of contract (No. 29)
- Plaintiffs have failed to satisfy conditions precedent and/or conditions subsequent required before bringing an action against Defendant (No. 30; Great American 18)
- Plaintiffs' Complaint is barred in whole or in part by the applicable statute of limitations (No. 31; Great American No. 21)
- Plaintiffs' Complaint is barred in whole or in part because under the doctrines of mutual mistake, impossibility and/or impracticability (No. 32; Great American No. 25)
- Plaintiffs' claims are subject to offset (No. 33; Great American No. 27)
- Plaintiffs' Complaint is barred in whole or in part because Plaintiff cannot satisfy the burden of proof as to damages (No. 34; OCLV/Friedberg No. 21; Great American No. 28)
- Plaintiffs' Complaint is barred in whole or in part because the audit expenses and attorney's fees and costs claimed by Plaintiffs were unreasonably incurred (No. 35; OCLV/Friedberg No. 22; Great American No. 29)
- Defendant reserves its right to amend its Answer to assert any applicable, additional, or other defenses constituting an avoidance or affirmative defense at such time as the nature of Plaintiffs' claims and the facts relating to them are revealed to Defendant (No. 36; Great American No. 31)

**CHRISTENSEN JAMES & MARTIN, CHTD.**
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

By failing to present any counterarguments regarding these defenses, Defendants have conceded that Plaintiffs' Motion to Strike them is meritorious. LR 7-2(d); *see Donor Network W. v. Nev. Donor Network, Inc.*, No. 3:23-cv-00632-ART-CSD, 2024 U.S. Dist. LEXIS 161187, at *15 (D. Nev. Sep. 9, 2024); *Steinmetz v. Am. Honda Fin.*, 447 F. Supp. 3d 994, 1004 n.3 (D. Nev. 2020). The defenses listed immediately above should therefore be stricken.

### B.  Factual disputes are not affirmative defenses.

The Defendants cannot save affirmative defenses that are really just factual disputes. "An affirmative defense is any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim but asserts some legal reason why the plaintiff cannot have any recovery on that claim." *State ex rel. Plain Dealer Publ'g Co. v. City of Cleveland*, 661 N.E.2d 187, 190 (Ohio 1996). *Black's Law Dictionary* (rev. 6th ed. 1990) defines "Affirmative defense" as follows: "In pleading, matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it. A response to a plaintiff's claim which attacks the plaintiff's legal right to bring an action, as opposed to attacking the truth of the claim." A factual dispute or denial is not a defense because *"[t]he essence of an affirmative defense is that it assumes the plaintiff can prove its factual allegations…*[but] raises additional facts or legal arguments that defeat liability nonetheless." *EEOC v. Mach Mining, LLC*, 738 F.3d 171, 184 (7th Cir. 2013) (emphasis added); *see G & G Closed Circuit Events, LLC v. Nguyen*, No. 10-CV-00168-LHK, 2010 U.S. Dist. LEXIS 104980, at *5 (N.D. Cal. Sep. 23, 2010) ("[D]enials of the allegations in the Complaint or allegations that the Plaintiff cannot prove the elements of his claim are not affirmative defenses.").

As demonstrated in the Motion, most of Defendants' affirmative defenses merely deny the allegations of the Complaint. Because factual denials are not affirmative defenses, they are "immaterial" or "impertinent" for purposes of Fed. R. Civ. P. 12(f) and should be stricken. This includes Defendants' denials of the alter ego allegations of the Complaint. Striking the factual denial non-defenses listed by the Defendants in their Answers will not lessen the burdens imposed by law on the Plaintiffs. They will still be required to prove their claims and the

Defendants will still be able to challenge the Plaintiffs' evidence and to present their own relevant evidence.

### C. Counterclaims are not affirmative defenses.

Defendants argue that they have provided fair notice of their intended "defenses in their…Counterclaims." ECF No. 25 at 5:4-5. Defendants ask the Court to conflate their counterclaims (or issues raised by the counterclaims) with affirmative defenses. But counterclaims are not affirmative defenses. *See* Fed. R. Civ. P. 13(c) ("A counterclaim need not diminish or defeat the recovery sought by the opposing party [and] may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party."); *FDIC v. F.S.S.S.*, 829 F. Supp. 317, 322 n.11 (D. Alaska 1993) ("Affirmative defenses challenge the underlying liability. Counterclaims are separate claims independent of the plaintiff's underlying claim."). Again, to the extent that their counterclaims are not dismissed, the Defendants may present evidence to support them, but neither the counterclaims nor factual issues related to counterclaims qualify as affirmative defenses.

### D. The Court should strike the "failure to state a claim" defense.

Each of the Defendants, without further explanation, listed "failure to state a claim" as a defense. But "asserting that the complaint fails to state a claim is an argument that there is a defect in the plaintiff's prima facie case, which is not an affirmative defense." *J & J Sports Prods. v. Delgado*, No. 1:12-cv-001945-LJO-SKO, 2013 U.S. Dist. LEXIS 91447, at *4-5 (E.D. Cal. June 28, 2013); *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010) (striking the purported defense and ruling that failure to state a claim under Rule 12(b)(6) is more properly brought as a motion and not as an affirmative defense).

"Ordinarily, affirmative defenses...may not be raised on a motion to dismiss." *Petricevic v. Shin*, No. 20-00283 LEK-WRP, 2021 U.S. Dist. LEXIS 122014, at *10-11 (D. Haw. June 30, 2021) (quoting *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018)). The fact that Rule 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim" is

therefore a strong indication that it is not a proper "affirmative defense." But even if this Court prefers to accept at face value that it may be asserted as a defense under Rule 12(h)(2), it still must be stricken unless it is supported by an informative factual basis that provides "fair notice" to a plaintiff. *See J & J Sports Prods.*, 2013 U.S. Dist. LEXIS 91447, at *5-6 ("[A]ssuming the failure to state a claim defense is legally sufficient, the defense itself is a bare conclusion of law and provides no indication or notice to Plaintiff how the complaint fails to state a claim. As such, the defense is stricken…"). Here, the "failure to state a claim" defenses should be stricken for the same reasons.

### E. Alter ego allegations have no impact on motions to strike defenses.

Defendants claim Plaintiffs' alter ego allegations somehow take this case outside of the protections provided by the MPPAA. They claim that "courts have allowed affirmative defenses in ERISA contributions cases involving alter ego allegations because such defenses relate to the threshold issue of whether a defendant is legally bound by the terms of the CBA." ECF No. 25 at 8:10-13. Defendants cite two cases for this proposition, *Painters Joint Comm. v. J.L. Wallco, Inc.*, No. 2:10-CV-1385 JCM (PAL), 2011 U.S. Dist. LEXIS 68614 (D. Nev. June 14, 2011) ("*Wallco*"), and *Emp. Painters' Trust v. Pac. Nw. Contractors, Inc.*, Case No. C13-05018-BHS, 2013 U.S. Dist. LEXIS 59618, 2013 WL 1774628 (W.D. Wash. Apr. 25, 2013) ("*Pac. Nw.*").

*Wallco* is not persuasive because the court's ruling—that an ERISA plaintiff must prove the elements of its claim before any defenses may be ruled out—is obviously inconsistent with the Federal Rules and subjects ERISA benefit plans to extraordinary procedures. Rule 12(f) <u>requires</u> motions to strike to be filed within 21 days after service, long before a plaintiff ordinarily has any opportunity to prove any aspect of its claim. This helps ensure that when legally insufficient defenses are asserted, they may promptly be rejected so that neither litigants nor courts will be forced to expend time or resources litigating the validity of "immaterial" defenses. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) ("The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must

arise from litigating spurious issues…"). *Wallco's* suggestion that courts should artificially delay ruling on all defenses until after a case presenting alter ego issues is extensively litigated, at great expense to litigants, is contrary to Rule 1's mandate to "secure the just, speedy, and inexpensive determination of every action and proceeding."

Furthermore, *Wallco*'s insistence that a plaintiff must prove its claim before a motion to strike can properly be considered shows it misunderstood the true nature of affirmative defenses. *Wallco* assumed that a plaintiff's alter ego allegations might not be proved, which is exactly the opposite of what was legally required. *EEOC v. Mach Mining, LLC*, 738 F.3d 171, 184 (7th Cir. 2013) ("The essence of an affirmative defense is that it assumes the plaintiff can prove its factual allegations."). A proper analysis would inexorably have led the *Wallco* court to rule differently. *See, e.g., Trs. of the Auto. Mechs. Local No. 701 Union & Indus. Pension Fund v. Krumpholz*, 2012 U.S. Dist. LEXIS 51945, at *6 (N.D. Ill. Apr. 13, 2012) (striking defenses which disputed whether two entities were "a single employer" because they amounted to a "denial of the allegations…of the complaint" and did not "assume the truth…of the complaint…"). The Defendants ignored *Krumpholz* in their Opposition, conceding that another of Plaintiffs' arguments has merit. Unfortunately, the *Wallco* ruling was contrary to law because it was based on a premise that was legally incorrect, and it did not give proper effect to Congress' mandate (the MPPAA) or to binding Ninth Circuit precedent.[4]

*Krumpholz* and the other case cited by the Defendants, *Pac. Nw.*, are logical, better reasoned than *Wallco*, and most importantly, consistent with Ninth Circuit precedents. When discussing *Pac. Nw.*, Defendants claimed (falsely) that the "court denied the plaintiffs' motion to strike affirmative defenses regarding alter ego and single employer issues, stating that 'it must first be determined that the [defendants] are legally bound by the terms of the CBA.'"

---

[4] *See Saxena v. Martinez-Rodriguez*, No. 2:22-cv-02126-CDS-BNW, 2024 U.S. Dist. LEXIS 24711, at *2 (D. Nev. Feb. 13, 2024) ("An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.").

-8-

ECF 25 at 8:17-19. The court stated that adequate proof would eventually be required to prove an alter ego relationship, but, contrary to the Defendants' argument here, that did not stop the court from striking twelve of thirteen affirmative defenses[5] in response to an early and timely Rule 12(f)(2) motion. **The court declared, "it is not necessary for the Court to determine at this time that Alliance is or is not the alter ego of PNC in order to rule on the motion to strike the affirmative defenses."** 2013 U.S. Dist. LEXIS 59618 at *16. The court reasoned that such a "determination could lead to only two" possibilities—either the entities were alter egos or they were not. It then explained that if the defendants were alter egos, "the Court would strike the… affirmative defenses as required by section 515 of ERISA and as set forth in the relevant case law," but if they were not alter egos the "affirmative defenses would not apply because the… Defendants simply would not be bound by the terms of the CBA." *Id*. Because, as the court ruled, "each outcome [led] to the same result," the defenses the court struck[6] were "immaterial" under Fed. R. Civ. P. 12(f) because they could have no meaningful impact on the outcome of the case. Here, just as in *Pac. Nw.* and *Krumpholz*, the alter ego allegations of the Complaint should not delay this Court from granting Plaintiffs' Motion to Strike Defenses.

**F. The Court should prevent further prejudice by granting the Motion to Strike.**

Defendants argue, based in part on *Wallco* (distinguished above), that the Motion to Strike should be denied for lack of proof that the Plaintiffs have suffered prejudice. *Wallco* ruled that ERISA collection claimants suffer "no harm in allowing the defenses to remain in the answer until the parties have completed discovery…." 2011 U.S. Dist. LEXIS 68614, at *4. But

---

[5] The only defense that survived in *Pac. Nw.* was "lack of privity," which was asserted because the union party to the CBA was also a plaintiff. No union is a party to this action.

[6] *See* 2013 U.S. Dist. LEXIS 59618 at *16-17: "the Court strikes the following affirmative defenses as a matter of law and with no leave to amend: (1) Failure of Plaintiffs to mitigate damages; (2) Statute of Frauds; (3) Breach of contract; (4) Contributory negligence; (5) Delay by Plaintiffs/Laches; (6) Estoppel; (7) Payment; (8) Prevention of performance by Plaintiff; (9) Set off; (10) Unclean hands; (11) Waiver; and (12) Obligation to participate in arbitration and/or mediation." This Court should do the same by disallowing any amendment related to defenses that the Court finds to be "insufficient" or "immaterial" as a matter of law.

-9-

as the Plaintiffs have repeatedly shown, they have already suffered prejudice. They are entitled to the "just, speedy, and inexpensive determination" of this Case. *See Yuga Labs, Inc. v. Hickman*, No. 2:23-CV-111 JCM (NJK), 2024 U.S. Dist. LEXIS 43796, at *12 (D. Nev. Feb. 1, 2024) (denying a motion to set aside default judgment because to rule otherwise would have caused the plaintiff to suffer "prejudice" in the form of "more attorney's fees as litigation continues"). Moreover, the Plaintiffs are entitled to the protections mandated by Congress in the MPPAA, which abolished all but two affirmative defenses in cases like this. *MacKillop*, 58 F.3d at 1443-44. Therefore, Plaintiffs have the right to proceed without encumbrance from any affirmative defenses beyond those two. *See Tomason v. Stanley*, 297 F.R.D. 541, 545 (S.D. Ga. 2014) ("…where settled law clearly forecloses an affirmative defense, courts will strike that defense."); *Cork v. CC-Palo Alto, Inc.*, 818 F. App'x 595, 597 (9th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544, 1549, 194 L. Ed. 2d 635 (2016) (the violation of a right granted by statute is a form of harm or prejudice, and in some cases "a plaintiff need not allege any additional harm beyond" that which the legislature identified.).

If the Plaintiffs' Motion to Strike is denied when it is due to be granted, they will suffer further harm as they will be forced to incur fees and costs to conduct discovery and to otherwise litigate the viability of numerous affirmative defenses which, as confirmed by the Ninth Circuit, were intentionally abolished by Congress. *Sidney-Vinstein*, 697 F.2d at 885 (motions to strike "avoid the expenditure of time and money that must arise from litigating spurious issues…"). Given this backdrop, it is apparent that the Plaintiffs will be unduly harmed if they are denied the protections mandated by the MPPAA. The Court should ensure that Plaintiffs receive the benefit of those protections by granting the Motion to Strike.

**G. Plaintiffs are entitled to the relief sought.**

In briefing the Motion to Strike Defenses, the Parties have essentially asked the Court to choose between two points of view: 1) Although courts have discretion to "strike from a pleading an insufficient defense" under Rule 12(f), Defendants highlight the fact that motions to strike are generally disfavored. *See Dillon v. Corr. Corp. of Am.*, No. 2:20-cv-02319-APG-

NJK, 2021 U.S. Dist. LEXIS 272388, at *2 (D. Nev. July 19, 2021); and 2) Plaintiffs have asked the Court to focus on the fact that Congress acted with the specific intent "to simplify trust fund collection actions" (*Rozay's Transfer*, 791 F.2d at 773 (9th Cir. 1986)), and abolished all but two affirmative defenses from ERISA collection actions by enacting the MPPAA. *MacKillop*, 58 F.3d at 1443-44 (9th Cir. 1995).

Under the circumstances, the Court should find that the <u>specific federal statute</u> on which the Plaintiffs rely must be given effect over a <u>general sense of "disfavor"</u> that arises under court rules. *See HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) ("…it is a basic principle of statutory construction that a specific statute…controls over a general provision…"); *Stewart v. United States*, 106 F.2d 405, 408 (9th Cir. 1939) ("…the general is not held to supersede the specific in the absence of a definite, expressed intention.").

Court rules, no matter how well intentioned, must yield to federal statutes like the MPPAA. *See* 28 U.S.C. §§ 2071(a), 2072(b) (under the Rules Enabling Act, court rules "shall be consistent with the Acts of Congress" and they "shall not abridge…or modify any substantive right."). This is yet another argument the Defendants chose to ignore in their Opposition. No amount of disfavor under a court rule can overcome the fact that 29 U.S.C. § 1145 was enacted for a singular purpose and confers upon these Plaintiffs the right to present claims without regard to the defenses asserted in this Case.

Plaintiffs note that procedurally, the Court has two options to give effect to the MPPAA. Plaintiffs prefer to have the Motion to Strike Defenses granted under Fed. R. Civ. P. 12(f)(2). But the Court may instead issue an order "on its own" under Fed. R. Civ. P. 12(f)(1) declaring that the so-called affirmative defenses listed by the Defendants are legally insufficient. *See Bd. of Trs. of the Painters & Floorcoverers Joint Comm. v. Super Structures*, No. 2:18-cv-01364-GMN-EJY, 2020 U.S. Dist. LEXIS 223000, at *13 (D. Nev. Nov. 30, 2020) ("Because Defendant's laches claim is inapplicable as a matter of law, and the allegations in support thereof are irrelevant, the Court denies as moot Plaintiffs' Motion to Strike.").

**H.  The Court should strike Defendants' jury demand.**

For the reasons outlined in Plaintiffs' Motion to Strike, Motion to Dismiss, and Section II.A. of their Reply in Support of Motion to Dismiss, the Court should strike the jury demand.

## III.

## CONCLUSION

For the reasons stated in Plaintiffs' motion and this Reply, the Court should grant the Motion to Strike Defenses or otherwise declare that all (or substantially all) of the affirmative defenses listed in the Answers on file are inapplicable to the ERISA collection claims asserted by the Plaintiffs.

Dated this 8th day of November, 2024.

CHRISTENSEN JAMES & MARTIN, CHTD.

By: */s/ Daryl E. Martin*
  Daryl E. Martin, Esq.
  Nevada Bar No. 6735
  Email: dem@cjmlv.com
  7440 W. Sahara Avenue
  Las Vegas, Nevada 89117
  Ph: (702) 255-1718
  *Attorneys for Plaintiffs Board of Trustees of the Employee Painters' Trust, et al.*

-12-

## CERTIFICATE OF SERVICE

I am an employee of Christensen James & Martin. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE: Pursuant to Local Rule LR IC 4-1 of the United States District Court for the District of Nevada, the above-referenced document was electronically filed and served on all appearing parties through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL: By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER: By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally-recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE: By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

**CHRISTENSEN JAMES & MARTIN**

By: ___/s/ Natalie Saville___