**CHRISTENSEN JAMES & MARTIN, CHTD.**
Daryl E. Martin (6735)
Wesley J. Smith (11871)
Dylan J. Lawter (15947)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Email: dem@cjmlv.com, wes@cjmlv.com, djl@cjmlv.com
*Attorneys for Plaintiffs Board of Trustees of the*
*Employee Painters' Trust, et al.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE EMPLOYEE PAINTERS' TRUST, et al., <br><br> Plaintiffs, <br> vs. <br><br> OLYMPUS CONSTRUCTION LV, INC., et al, <br><br> Defendants. <br><br> OLYMPUS CONSTRUCTION LV, INC., et al., <br><br> Counterclaimants, <br> vs. <br><br> BOARD OF TRUSTEES OF THE EMPLOYEE PAINTERS' TRUST, et al., <br><br> Counterdefendants. | CASE NO.: 2:24-cv-01023-APG-NJK <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS** |

The Trustees of the Employee Painters' Trust, *et al.* (collectively, the "Trust Funds," "Plaintiffs" or "Counterclaim-Defendants"), acting by and through their attorneys, Christensen James & Martin, Chtd., hereby submit this Reply in Support of Plaintiffs' Motion to Dismiss [ECF No. 19] the Counterclaims filed by Olympus Construction LV, Inc. ("OCLV"), Philip Glen Friedberg ("Friedberg"), Hospitality Renovation Services, LLC ("HRS"), and Marie Jan Bower ("Bower") [ECF Nos. 11 and 13] (OCLV, Friedberg, HRS, and Bower are collectively referred to herein as "Defendants" or "Counterclaimants").

///

///

-1-

## I. INTRODUCTION

In the Motion to Dismiss [ECF No. 19], Plaintiffs made arguments and offered various reasons to dismiss all Counterclaims asserted by the Defendants [ECF Nos. 11 and 13]. In their Counterclaims, the Defendants magnify the alleged importance of a single provision of the 2017 Trust SA while ignoring many other provisions that the Plaintiffs brought to the Court's attention, including at least one provision that is expressly controlling and fatal to the Counterclaims. The Defendants make the same mistake in their Opposition [ECF No. 26]. The Defendants' attempt to game the system by focusing on one provision of a contract while ignoring (and inviting the Court to ignore) other controlling provisions is disingenuous and should not be rewarded. The Counterclaims must be dismissed.

## II. ARGUMENT

**A. Plaintiffs' Motion to Dismiss must be granted for Defendants' failure to address arguments that defeat their claims.**

In their Opposition, the Defendants do not dispute several arguments made by the Plaintiffs. The Court should grant the Motion to Dismiss based upon those undisputed arguments. LR 7-2(d); *see Donor Network W. v. Nev. Donor Network, Inc.*, No. 3:23-cv-00632-ART-CSD, 2024 U.S. Dist. LEXIS 161187, at *15 (D. Nev. Sep. 9, 2024); *Steinmetz v. Am. Honda Fin.*, 447 F. Supp. 3d 994, 1004 n.3 (D. Nev. 2020). The arguments conceded by the Defendants are briefly reiterated below.

The Defendants concede that the Court may consider the settlement agreements and CBAs attached to the Motion to Dismiss under *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The Court should consult these documents to dismiss the Counterclaims. The Defendants also failed to address the Plaintiffs' argument regarding the dismissal of their demand for a jury trial under *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 996 (9th Cir. 2000) (holding that there is no right to a jury trial under ERISA). Because the Counterclaims cannot survive the Motion to Dismiss, the demand for a jury trial must also be eradicated.

In their Opposition, the Defendants do not dispute the Plaintiffs' argument that waivers of prospective statutory federal rights are void. *Compare* Motion at 21 *with* Opposition at 11–12. The Defendants have therefore conceded that the 2017 Trust SA could not operate as a "waiver" of future claims against HRS and OCLV as related entities where ERISA claims are at issue. *Reighard v. Limbach Co.*, 158 F. Supp. 2d 730, 732 (E.D. Va. 2001) ("A covenant not to sue and a release...is not effective as to unknown, future ERISA claims."). The Trust Funds have an undeniable right under binding ERISA case law and the Painters CBA to pursue claims arising after the execution of the 2017 Trust SA. This concession alone is enough to defeat all of the Counterclaims, because the Defendants expressly seek to avoid ERISA liability. *See* ECF Nos. 11 and 13 at 13:15–19. As such, all of the Defendants' Counterclaims must be dismissed.

**B.     The 2017 Trust SA shows that all of the Defendants' Counterclaims are preempted by the LMRA.**

The Defendants repeatedly assert in their Opposition that their Counterclaims are "not preempted by the LMRA because they are not based on rights created by a CBA and are not substantially dependent on the interpretation of such an agreement." Opposition at 10:10–12; *see also* Opposition at 10:18 ("the Court will not be called upon to interpret a CBA"). However, these assertions are false. Defendants' Counterclaims are substantially dependent on the interpretation of a CBA. The 2017 Trust SA unequivocally states that it is not a modification of the Painters CBA, and that the Painters CBA is controlling in the event of a conflict. To wit, "This Agreement is not intended to be a modification of the MLA, Master Agreement or any Trust Agreement, and *the parties expressly acknowledge that the terms of the MLA, Master Agreement or any Trust Agreement shall be controlling in the event of any conflict with this Agreement*." Exhibit B at 3–4, ¶ 14 (emphasis added). Thus, the Court *must* look to the Painters CBA to determine that, to the extent paragraph 12 purports to waive any claims for alter ego (as the Defendants argue), the Preservation of Work provision of the Painters CBA controls and eradicates that conflicting provision from the 2017 Trust SA. Furthermore, in the 2017 Trust SA, and consistent with the Painters CBA, the Trust Funds

1  reserved the right to seek payment from HRS "for *any contributions owed…*for *any period of*
2  *time after the Pre-Settlement Period*." Exhibit B at ¶ 13. This obviously includes any
3  contributions owed under the Preservation of Work provision of the Painters CBA.

4        The Trust Funds generally include these "controlling in the event of a conflict"
5  provisions in settlement agreements to prevent employers from doing exactly what the
6  Defendants are attempting to do in this case. "Controlling in the event of a conflict" clauses
7  have been approved by the U.S. Supreme Court. *See, e.g.*, *Nebraska v. Wyoming*, 534 U.S. 40,
8  60 (2001). The Trust Funds enter into a host of agreements to settle cases, and such language is
9  included for the specific purpose of avoiding the consequence of any ancillary agreements
10 contradicting the express terms of a CBA or operative trust agreements.

11       The Defendants' arguments against LMRA preemption are based on two cases:
12 (i) *Brown v. Bechtel Nev. Corp.*, Case No. 2:12-cv-02129-GMN-NJK, 2013 BL 48658, 2013
13 U.S. Dist. LEXIS 23744 (D. Nev. Feb. 21, 2013), apparently in support of their argument that
14 agreements separate from CBAs are not preempted by the LMRA; and (ii) *Obiajulu v. Rite Aid*
15 *Corp.*, No. 2:04-CV-01520-BES (LRL), 2006 BL 92171, 2006 U.S. Dist. LEXIS 47656 (D.
16 Nev. June 13, 2006), where the court found there was no LMRA preemption because the
17 analysis of a particular claim was not dependent on a CBA. Contrary to Defendants' arguments,
18 these cases lend support to the Trust Funds' Motion to Dismiss.

19       In *Brown*, a dispute arose regarding a settlement agreement that terminated previous
20 litigation between the parties. 2013 U.S. Dist. LEXIS 23744, at *1–2. There is no indication in
21 *Brown* that the settlement agreement contained a provision that required the court to analyze a
22 CBA. *See id. generally*. The *Brown* case is therefore inapplicable to this Case, in which the
23 2017 Trust SA unequivocally references a CBA and states that the CBA controls in the event of
24 a conflict. In *Obiajulu*, an employer presented its employee with a settlement agreement, which
25 the employee refused to sign. 2006 U.S. Dist. LEXIS 47656, at *3. The court ruled that "[t]he
26 preemptive force of [Section 301 of the LMRA] is so powerful that it displaces entirely any
27 state cause of action for…any state claim whose outcome depends on analysis of the terms of [a
28

-4-

CBA]." *Id.* at *15. "[T]he key to determining the scope of a § 301 preemption is not based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the bargaining agreement." *Id.* Because Obiajulu was a union member asserting a claim against his employer, the court ruled that the fifth claim for relief—a civil conspiracy claim—"cannot be resolved without referring to the terms of the CBA" and dismissed that claim. *Id.* at *16. Here, just as in *Obiajulu*, LMRA preemption applies because the Defendants' Counterclaims, including but not limited to claims for breach of contract and civil conspiracy, cannot be resolved without referring to and analyzing the terms of the Painters CBA, as required by the express provision requiring such in paragraph 14 of the 2017 Trust SA.

In opposing the Plaintiffs' Motion to Dismiss, the Defendants make **no** effort to address the clear language of the 2017 Trust SA requiring any and all provisions to be tested against the Painters CBA, which both OCLV and HRS entered into with Union. *See* Exhibit B at ¶ 14. Despite whatever ambiguity may exist in Paragraph 12 of the 2017 Trust SA, Paragraph 14 is wholly unambiguous. It clearly requires that the Painters CBA must control in the event of a conflict. Exhibit B at 3–4. In other words, to the extent there is a conflict between any provision that Defendants rely upon and the Painters CBA, the Painters CBA unequivocally *must* control. Because the Painters CBA controls, it must also be consulted and interpreted by the Court, which necessarily implicates the LMRA. The LMRA preempts all of the Defendants' Counterclaims, each of which expressly reference the alleged breach of contract. The Trust Funds' Motion to Dismiss must therefore be granted.

**C.     ERISA preempts the Defendants' Counterclaims.**

The 2017 Trust SA is not "independent of any ERISA plan" as the Defendants unreasonably and falsely claim. The 2017 Trust SA unequivocally and expressly <u>incorporates</u> the Trust Agreements governing the Trusts and states that they are controlling in the event of any conflicts. *See* Exhibit B at 3–4, ¶ 14 (emphasis added). The Court would therefore be required to consult the ERISA-covered plan documents when analyzing any claims arising out of an alleged breach of the 2017 Trust SA. The Defendants' citation to *Marin General Hosp. v.*

*Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009) is inapposite. In *Marin*, the Ninth Circuit evaluated the nature of the obligations imposed by an *oral* agreement and an ERISA plan. *Marin*, 581 F.3d at 950. Here, the *written* obligations between the 2017 Trust SA and the ERISA plans are one and the same because the Painters CBA (to which the Plaintiffs are third-party beneficiaries) and Trust Agreements are expressly incorporated into the 2017 Trust SA and their terms are controlling in the event of a conflict. Despite the Defendants' claim that the Counterclaims will not require the Court to "interpret ERISA law or any ERISA plan" (Opps. at 9:17–18), paragraph 14 of the 2017 Trust SA demonstrates that ERISA plans must be consulted for adjudication of any disagreement as to its provisions.

"[I]n cases involving settlement agreements *whose enforcement requires interpretation or application of ERISA law*, courts have ruled statelaw [sic] claims preempted…" *Bricklayers & Allied Craftworkers Local 2 v. DiBernardo Tile & Marble Co.*, No. 1:08-CV-00044 (LEK/RFT), 2012 U.S. Dist. LEXIS 114391, at *7 (N.D.N.Y. Aug. 14, 2012) (citation omitted) (emphasis added). The Defendants do not dispute this statement of law. Instead, they simply fail to take the conflict provision into account (*i.e.*, they ignore paragraph 14 of the 2017 Trust SA) when citing several other inapplicable cases. ERISA preempts the Counterclaims, so the Motion to Dismiss must be granted.

**D.    The Defendants cannot recover punitive damages.**

ERISA's civil enforcement scheme does not allow for an award of punitive damages. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). To the extent that ERISA does not preempt Defendants' Counterclaims (which the Trust Funds deny), punitive damages are still not available in this case. The LMRA does not allow for an award of punitive damages. *Alday v. Raytheon Co.*, Nos. 08-16984, 08-16985, 2012 U.S. App. LEXIS 10169, at *51 (9th Cir. May 21, 2012) (citing *Moore v. Local Union 569 of Int'l Bhd. of Elec. Workers*, 989 F.2d 1534, 1542 (9th Cir. 1993); *Desert Palace, Inc. v. Local Joint Exec. Bd*., 679 F.2d 789, 794 (9th Cir. 1982)). LMRA preemption of claims for punitive damages is also confirmed in a case cited by

the Defendants. *See Obiajulu*, 2006 U.S. Dist. LEXIS 47656, at *19. Because the LMRA preempts all of the Counterclaims, the punitive damages prayer for relief must also be stricken.

Furthermore, under Nevada law, an award of punitive damages is only available where there is oppression, fraud, or malice, express or implied. NRS 42.005. Although the factual allegations are presumed true for sake of a motion to dismiss, nothing is alleged in the Counterclaims that demonstrates oppression, fraud, or malice aside from conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (factually unsupported conclusory statements are not presumed true); *see, e.g.*, ECF Nos. 11 and 13 at ¶¶ 30, 41, 46, and 54. The Defendants' counterclaims of civil conspiracy and abuse of process are nothing more than allegations that a contract breach was intentional. *See* ECF Nos. 11 and 13 at ¶¶ 43 and 50. In other words, even these supposed tort claims sound in contract and punitive damages are not available for such claims. *Rd. & Highway Builders, Ltd. Liab. Co. v. N. Nev. Rebar, Inc.*, 128 Nev. 384, 393, 284 P.3d 377, 383 (2012) (holding that punitive damages are not available in breach of contract claims, and for certain related claims to sound in tort, there must be the element of reliance or fiduciary duty). In fact, whether a contract breach was intentional is seldom relevant. *See Hunter v. Sutton*, 45 Nev. 430, 442, 195 P. 342, 788, 205 P. 785, 788 (1922) ("the motive of a defendant in breaching a contract cannot be inquired into, and the measure of the damages is the same whether it be wilful [sic] or malicious."). The Defendants should not benefit from their own misreading of a contract that includes explicit terms that contradict and even disallow their theory. The Defendants' prayer for punitive damages must therefore be stricken.

**E.      The Court should reject the Defendants' misreading of the 2017 Trust SA.**

For the purposes of this Motion, Plaintiffs do not dispute the factual allegations made by the Defendants in their Counterclaims related to the substance of paragraph 12 of the 2017 Trust SA. Disputing such allegations would of course be inappropriate in a Motion to Dismiss, because the Court must accept the facts alleged by the nonmoving party as true. *Iqbal*, 129 S. Ct. at 1949. However, legal conclusions are not presumed true nor are factually unsupported

conclusory statements. *Id.* The Plaintiffs also do not contest the validity of the 2017 Trust SA. In fact, Plaintiffs attached it to the Motion to Dismiss and rely upon it to demonstrate that the Defendants' preferred interpretation of the 2017 Trust SA is a legal conclusion that this Court need not accept. "[T]he determination of the scope and meaning of a contract is always a question of law" (*i.e.*, a legal conclusion), and this remains true "whether that construction is to be arrived at from a mere reading of the contract itself, or from such reading aided by extrinsic evidence." *Daniels v. Specialized Loan Servicing, Ltd. Liab. Co.*, No. 2:22-cv-06776-MCS-PD, 2023 U.S. Dist. LEXIS 117428, at *14 (C.D. Cal. Feb. 6, 2023) (quoting *In re Thomson's Est.*, 165 Cal. 290, 296, 131 P. 1045 (1913), and citing *Iqbal*, 556 U.S. at 678)).

In their Opposition, the Defendants cite *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed. Cir. 1984), to show that "in the absence of ambiguity, contract interpretation is an issue of law for the court, and may be decided on a motion to dismiss." Opposition at 12:9–10. Consistent with this precedent, the Plaintiffs openly invite the Court to view the 2017 Trust SA and the Painters CBA and definitely rule that Defendants' preferred interpretation of the 2017 Trust SA is preposterous. *See also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (documents referenced in a pleading may be considered in connection with a motion to dismiss because incorporation-by-reference doctrine is intended to prevent claimants from omitting portions of documents that doom their claims); *Gutierrez v. Circle K Corp.*, No. 2:15-cv-01557-APG-PAL, 2016 U.S. Dist. LEXIS 114792, at *8 (D. Nev. Aug. 1, 2016) (recommending dismissal because "it [was] clear that" an affirmative defense (statute of limitations) appeared on the face of the complaint) (recommendation accepted and case dismissed by 2016 U.S. Dist. LEXIS 114790, at *1 (D. Nev. Aug. 26, 2016)).

The Court should rule that to the extent there is a conflict, the CBA clearly allows the Plaintiffs to prosecute this action against the Defendants, and that the 2017 Trust SA does not bar them from doing so. There are no disputes of fact here. Plaintiffs' Motion to Dismiss may

be decided in the Plaintiffs' favor based upon the pleadings and the documents on which the disputed counterclaims expressly depend.

At most, Paragraph 12 of the 2017 Trust SA excludes the relevant Trust Funds' ability to claim HRS is a related company with OCLV for any period of time prior to the final date the 2017 Trust SA was signed, June 27, 2017. *See* Exhibit B at 4. This is consistent with case law indicating that agreements purporting to release employers from unknown, future ERISA claims (which would effectively grant employers license to violate ERISA with impunity) may not be enforced. *See Reighard*, 158 F. Supp. 2d at 732–33. For this reason, the Audit Period in this case begins in August 2017. The Trust Funds have not asserted any claims arising prior to June 27, 2017.

The Trust Funds' reading of the 2017 Trust SA is consistent with other express terms of the 2017 Trust SA, in which the Trust Funds released only past claims and expressly reserved the right to seek payment from HRS "for *any contributions owed…*for *any period of time after the Pre-Settlement Period*," which is defined in Paragraph 9 as the period of time prior to the execution of the 2017 Trust SA. Exhibit B at ¶¶ 9, 13 (emphasis added). As alleged in the Complaint, contributions may be owed under the Preservation of Work clause found in Article 15 of the Painters CBA, and the CBA is controlling in the event of a conflict with the 2017 Trust SA, according to the express terms of Paragraph 14 of the 2017 Trust SA. In other words, the 2017 Trust SA cannot rationally be read to prohibit the claims asserted by the Plaintiffs in the Complaint. A corollary to this statement is also true—the Defendants cannot rationally allege that Plaintiffs have breached the terms of the 2017 Trust SA. The Defendants cannot sustain their Counterclaims.

### F.  The Court should not grant leave to amend because it would be futile.

Upon dismissal of the Counterclaims here, the Court should not grant the Defendants' request for leave to amend. Leave to amend is improper where it would be futile. "If no amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendment futile." *Cal. State Grange v. Carolina Cas. Ins. Co.*, No. 22-16169, 2023

U.S. App. LEXIS 30078, at *8 (9th Cir. Nov. 13, 2023) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538–39 (9th Cir. 1989)). In *Cal. State Grange*, the Ninth Circuit affirmed that leave to amend was not warranted because "no additional *facts* could have been alleged" that would have resulted in a different outcome. *Id.* at *8–9. The Defendants' only stated justification for seeking leave to amend is that there are "complexities" in the claims made in this case, without articulating any additional allegations that could be asserted. Opposition at 12:23–24. At the same time, the Defendants argue that the language of the 2017 Trust SA is so clear that the liability in the Counterclaims is a foregone conclusion. *Id.* at 12:5–6. Thus, it is clear that there are no other relevant facts to be pleaded, making leave a futile exercise.

   The disputed counterclaims all hinge on the legal conclusion that the Plaintiffs breached the terms of the 2017 Trust SA by asserting that HRS is an alter ego of OCLV. No amendment can change this fact. Amendment would be futile in this case because the 2017 Trust SA is clear and unambiguous in at least four ways. First, paragraph 7 states that the terms and conditions of the 2017 Trust SA are "not to be construed as the admission by the Trust Funds of a lack of a joint or single employer relationship between [OCLV] and HRS." Second, paragraph 11 expressly defines what was fully released—the claims arising out of, or relating in any way to, the facts alleged in the Audit, which Audit Period was defined as January 1, 2016 through June 30, 2016. In other words, even if the 2017 Trust SA could "be construed as the admission by the Trust Funds" that OCLV and HRS had no joint or single employer relationship, this would at most preclude the Plaintiffs from asserting claims relating to unpaid contributions that should have been paid for the month of June 2016 or earlier, and no claims for the month of June 2016 or earlier have been made in this Case. Third, in paragraph 13 of the 2017 Trust SA, the Trust Funds reserved the right to seek payment from HRS "for any contributions owed…for any period of time after the Pre-Settlement Period." The Claims asserted by the Trusts (which relate only to the August 2017 work month or later) comply with this provision. Fourth and finally, paragraph 14 expressly states that the 2017 Trust SA should be construed in a manner

1  consistent with the controlling terms of the Painters CBA in the event of a conflict. The
2  controlling Painters CBA contains a Preservation of Work provision which makes the Painters
3  CBA (including the collection provisions for trust funds) applicable to all Covered Work
4  performed by the employees of all companies under the same ownership or control as the
5  signatory employer. Exhibit C, Art. 15. The Defendants ask the Court to interpret a single
6  phrase in Paragraph 12 of the 2017 Trust SA in a manner that would make Paragraphs 7, 11, 13,
7  and 14 meaningless, even though they were included to ensure that the Trust Funds could later
8  assert claims for subsequent actions of the Defendants, which is precisely what the Trust Funds
9  did by filing the Complaint. The Defendants' Counterclaims must be dismissed and they should
10 not be granted leave to amend.

**G.     Conclusion**

For the above reasons, the Court should promptly enter an order dismissing the Defendants' Counterclaims.

Dated this 8th day of November, 2024.

CHRISTENSEN JAMES & MARTIN, CHTD.

By: /s/ Dylan J. Lawter
Dylan J. Lawter, Esq.
Nevada Bar No. 15947
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
*Attorneys for Plaintiffs Board of Trustees of the Employee Painters' Trust, et al.*

CERTIFICATE OF SERVICE

I am an employee of Christensen James & Martin. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE:  Pursuant to Local Rule LR IC 4-1 of the United States District Court for the District of Nevada, the above-referenced document was electronically filed and served on all appearing parties through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL:  By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER:  By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally-recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE: By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

**CHRISTENSEN JAMES & MARTIN**

By:  */s/ Natalie Saville*